PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,

Plaintiff,

v.

KALSHIEX LLC,

Defendant.

Case No.: 26-cv-6550

## NOTICE OF REMOVAL

Defendant KalshiEX LLC ("Kalshi") hereby removes the above-captioned action from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1331, 1441, and 1442. Subject matter jurisdiction is present under 28 U.S.C. §§ 1331 and 1442.

By filing this Notice of Removal, Kalshi does not waive any defenses it has to this action, whether in state or federal court, including, but not limited to, improper service of process and/or lack of personal jurisdiction. Kalshi reserves the right to amend or supplement this Notice of Removal.

In support of its Notice of Removal, Kalshi states as follows:

## I.  BACKGROUND

### A.  Kalshi and Federally Regulated Prediction Markets

1. Kalshi is a financial services company that operates a federally regulated derivatives exchange and prediction market on which users can buy and sell financial products known as "event contracts." Event contracts allow users to take "yes" or "no" positions on the outcome of specified events, such as which candidate will win an election or whether the

seasonally adjusted unemployment rate reported by the Bureau of Labor Statistics will exceed a certain percentage.  Kalshi also offers event contracts based on sporting, cultural, electoral, and other events.  Event contracts are a type of "swap" within the meaning of the Commodity Exchange Act of 1936, 7 U.S.C. § 1 et seq. ("CEA").  *See* 7 U.S.C. § 1a(47)(A)(ii) (defining "swap" to include "any agreement, contract, or transaction . . . that provides for any . . . payment[] or delivery . . . that is dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence"); *KalshiEX, LLC v. Flaherty* (*Flaherty II*), 172 F.4th 220, 226 (3d Cir. 2026) ("'[S]wap' includes event contracts.").

2.  Kalshi's exchange operates as a designated contract market ("DCM") pursuant to an order of the Commodity Futures Trading Commission ("CFTC").[1]  Under the CEA, the CFTC has exclusive jurisdiction to regulate transactions, including swap transactions, on DCMs.  *See* 7 U.S.C. § 2(a)(1)(A); *see also Flaherty II*, 172 F.4th at 226 ("The [CEA] preempts state laws that directly interfere with swaps traded on DCMs. Kalshi's [event contracts] are swaps traded on a CFTC-licensed DCM, so the CFTC has exclusive jurisdiction."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 386 (1982) (with the CEA, "the Commission was given exclusive jurisdiction over commodity futures trading").

3.  Through this Action, New York seeks to radically upend and undermine the structure put into place by Congress in the CEA.  Rather than respect the exclusive federal jurisdiction of the CFTC, New York instead seeks to place itself in the position of a nationwide derivatives regulator, demanding that Kalshi be prohibited from offering swaps nationwide, across

---

[1] *See* CFTC, *CFTC Designates KalshiEX as a Contract Market*, Release No. 8302-20 (Nov. 4, 2020), https://www.cftc.gov/PressRoom/PressReleases/8302-20; Order, *In re KalshiEX LLC for Designation as a Contract Market* (Nov. 3, 2020), https://www.cftc.gov/filings/documents/2020/orgkexkalshidesignation201103.pdf.

all subject matter, without first obtaining the blessing of the New York State Gaming Commission.

4. New York's Action thus presents both a clear and disputed federal question—whether a state can turn the CEA into a dead letter by barring the operation of a federally regulated DCM by alleging claims that necessarily raise federal law—and an issue implicating the power of a federal officer, since it would undermine the CFTC's grant of a property right (DCM designation) to Kalshi. Both are grounds for removal. Specifically, New York's Complaint accuses Kalshi of violating the federal Interstate Wire Act of 1961 (the "Wire Act") and offering "unlawful" gambling—federal questions necessitating removal. Finally, New York's Complaint was artfully, and inappropriately, drafted to avoid naming the CFTC, which is a necessary party. That is a further ground for removal.

**B. The Complaint in this Action**

5. On July 31, 2026, Letitia James, in her capacity as Attorney General of the State of New York, on behalf of the People of the State of New York, filed a Complaint against Kalshi in the Supreme Court of the State of New York, County of New York. New York filed this Complaint together with an application for a temporary restraining order without notice, even though the State is already litigating this exact controversy—the State's authority to enforce its gaming laws against Kalshi's federally regulated sports event contracts—in federal court. *See KalshiEX LLC v. Williams* (*Williams*), No. 1:25-cv-8846 (S.D.N.Y.), appeal docketed, No. 26-1835 (2d Cir.) (*Williams II*). In that proceeding, the U.S. District Court for the Southern District of New York denied Kalshi's motion for a preliminary injunction against enforcement of these same state gaming laws on July 7, 2026, *Williams*, Dkt. No. 106, denied Kalshi's motion for an injunction pending appeal on July 27, 2026, *Williams*, Dkt. No. 113, and thereafter, the Second Circuit denied Kalshi's request for temporary administrative relief and referred its emergency motion for an injunction pending appeal to a three-judge panel on July 29, 2026. *Williams II*, Dkt. No. 32.

Copies of the State's Complaint and motion papers are attached hereto as Exhibits A-H. No other process, pleadings, or orders have been filed in this action to Kalshi's knowledge.

6. New York purports to state a claim against Kalshi under New York Executive Law § 63(12) for facilitating access to federally regulated event contracts subject to the CFTC's exclusive jurisdiction.

7. New York claims that Kalshi is "engaged in repeated and persistent illegal acts" because the company is supposedly promoting "unlawful gambling activity" and "unauthorized sports wagering" without complying with federal and state gambling laws. Ex. A at 2-3. Specifically, New York alleges that Kalshi is violating the federal Wire Act, 18 U.S.C. § 1084(a); New York State Constitution Article I, Section 9; New York Penal Law §§ 225.05, 225.10, 225.20; and New York Racing, Pari-Mutuel Wagering and Breeding Law §§ 1367, 1367-a. *Id.*

8. As relief, New York seeks an order and judgment (1) permanently enjoining Kalshi from operating a business that offers event contracts "***within or from*** New York, or to persons in New York, without being licensed by the New York State Gaming Commission"; (2) "permanently enjoining [Kalshi] and its principals, agents, and employees from violating" the federal Wire Act and state gambling laws; (3) "directing [Kalshi] to produce an accounting of all bets placed, monies lost by customers in connection with its gambling business, and monies paid to [Kalshi] in connection with its gambling business"; (4) "directing [Kalshi] to pay restitution, disgorgement, damages, and penalties"; (5) "directing [Kalshi] to pay a penalty of three times the amount of [Kalshi's] gain" from facilitating alleged gambling; (6) "directing [Kalshi] to pay a penalty of $100,000 for each offer or attempt to offer sports wagering or mobile sports wagering in New York without authorization"; (7) "granting costs to New York of $2,000"; and (8) granting any other relief that the New York state court deems proper. Ex. A at 3-4.

9. To be clear, Plaintiff's request for relief is not limited to New York or to the offering of any specified categories of event contracts. *First*, New York seeks to prohibit Kalshi from operating a business "within or from New York," which is Kalshi's principal place of business. *Id.* at 29. *Second*, New York seeks to enjoin Kalshi from offering event contracts "relating to sports, culture, elections and other events," without definition or limit on "other events." Since Kalshi is in the business of offering event contracts, "other events" captures the entirety of Kalshi's offerings: in other words, despite the CEA's clear text and designation of "exclusive jurisdiction" to the CFTC, New York seeks to shut down (and impose billions of dollars in monetary penalties) for Kalshi's nationwide operations. *Id.* at 29-30.

## C. Kalshi and New York Are Already Litigating Identical Issues in Federal Court

10. This Action raises federal-law questions that are identical to those Kalshi, the CFTC, the United States, and other states have been litigating in federal courts nationwide for months—including in this very Court and several other district courts in this Circuit. *See, e.g.*, *KalshiEX LLC v. Williams*, No. 1:25-cv-8846 (S.D.N.Y.), appeal docketed, No. 26-1835 (2d Cir.); *United States v. New York*, No. 26-cv-3404 (S.D.N.Y. Apr. 24, 2026); *United States v. Connecticut*, No. 26-cv-498 (D. Conn. Apr. 2, 2026); *see also KalshiEX LLC v. Martin*, No. 25-1892 (4th Cir.); *KalshiEX LLC v. Schuler*, No. 26-3196 (6th Cir.); *KalshiEX LLC v. Orgel*, No. 26-5235 (6th Cir.); *KalshiEX, LLC v. Assad*, No. 25-7516 (9th Cir.); Order at 1, *KalshiEX LLC v. Schuler*, No. 26-3196 (6th Cir. Apr. 24, 2026), Dkt. No. 26-2 (noting that "Kalshi has raised serious questions on the merits" and "courts have reached conflicting conclusions"; denying Kalshi's request for relief "[a]t this early stage"). Most directly, Kalshi has already sued the Gaming Commission and its Executive Director, Robert Williams, in federal court to enjoin enforcement of the very same state gaming laws at issue in the State's Complaint here. *KalshiEX LLC v. Williams*, No. 1:25-cv-8846 (S.D.N.Y.) (Torres, J.), appeal docketed, No. 26-1835 (2d Cir.). That

litigation concerns the identical core question—whether the Gaming Commission may enforce New York's gambling laws against Kalshi's contracts, or whether the CFTC's exclusive jurisdiction over designated contract markets preempts that enforcement—and remains pending in this Court before Judge Torres.

11. Courts across the country continue to actively adjudicate the federal-law issues presented by the Action. The Third Circuit—the only court of appeals to have decided the question—held that the CEA "preempts otherwise applicable state laws that purport to regulate sports-related event contracts on CFTC-licensed DCMs," and affirmed a preliminary injunction barring New Jersey from enforcing its gambling laws against Kalshi. *See Flaherty II*, 172 F.4th at 228, 230, 232. In addition to Kalshi's recent appeal in the Second Circuit, appeals raising the same or similar issues remain pending in the Fourth, Sixth, and Ninth Circuits. *See, e.g.*, *KalshiEX LLC v. Williams*, No. 26-1835 (2d Cir.); *KalshiEX LLC v. Martin*, No. 25-1892 (4th Cir.); *KalshiEX LLC v. Schuler*, No. 26-3196 (6th Cir.); *KalshiEX LLC v. Orgel*, No. 26-5235 (6th Cir.); *KalshiEX LLC v. Assad*, No. 25-7516 (9th Cir.). District courts have recently found that the CEA preempts otherwise applicable state laws that purport to regulate sports-related event contracts on CFTC-licensed DCMs. *See KalshiEX LLC v. Orgel*, 2026 WL 474869, at *7 (M.D. Tenn. Feb. 19, 2026), appeal docketed, No. 26-5235 (6th Cir. Mar. 23, 2026); *KalshiEX LLC v. Johnson*, 2026 WL 1223373, at *3 (D. Ariz. May 5, 2026) (granting the CFTC a preliminary injunction barring enforcement of materially identical state gambling laws against Kalshi); *KalshiEX LLC v. Flaherty*, 2025 WL 1218313, at *6 (D.N.J. Apr. 28, 2025), *aff'd*, 172 F.4th 220 (3d Cir. 2026). And just four days before New York filed this Complaint, the District of Minnesota enjoined enforcement of a Minnesota law regulating event contracts as unlawful "wager[s]," rejecting arguments similar to those New York advances here. *See United States v. Minnesota*, 2026 WL

2150211, at *5, *18 (D. Minn. July 27, 2026).

12. The CFTC and the U.S. Department of Justice ("DOJ") also recently filed suit in eight states to enjoin those states from enforcing state laws against DCMs on preemption grounds, intervened in an action against the state of Rhode Island, and submitted amicus briefs in multiple appellate courts making the same points. *See generally* Compl., *United States v. Arizona*, No. 2:26-cv-02246 (D. Ariz. Apr. 2, 2026), Dkt. No. 1; Compl., *United States v. Connecticut*, No. 3:26-cv-00498 (D. Conn. Apr. 2, 2026), Dkt. No. 1; Compl., *United States v. Illinois*, No. 1:26-cv-3659 (N.D. Ill. Apr. 2, 2026), Dkt. No. 1; Compl., *United States v. New York*, No. 1:26-cv-3404 (S.D.N.Y. Apr. 24, 2026) ("NY Compl."), Dkt. No. 1; Compl., *United States v. Wisconsin*, No. 2:26-cv-749 (E.D. Wis. Apr. 28, 2026), Dkt. No. 1; Compl., *United States v. Minnesota*, No. 0:26-cv-2661 (D. Minn. May 19, 2026), Dkt. No. 1; Compl., *United States v. New Mexico*, No. 26-cv-1912 (D.N.M. June 12, 2026), Dkt. No. 1; Compl., *United States v. Kentucky*, No. 3:26-cv-00049 (E.D. Ky. June 23, 2026), Dkt. No. 1; Intervenor Compl., *KalshiEX LLC v. Furcolo*, No. 1:26-cv-00327 (D.R.I. June 26, 2026), Dkt. No. 37; *see also* Amicus Brief of CFTC at 19, 21, *N. Am. Derivatives Exch., Inc. v. Nevada,* No. 25-7187 (9th Cir. Feb. 17, 2026), Dkt. No. 38.2 ("CFTC CA9 Amicus Br.") (confirming that the CEA's exclusive jurisdiction provision "preempts application of state gambling laws to event contracts trad[ed] on DCMs" and that sports event contracts fall "comfortably" within the CFTC's exclusive jurisdiction); Amicus Brief of CFTC, *KalshiEX LLC v. Schuler*, No. 26-3196 (6th Cir. May 12, 2026), Dkt. No. 31; Amicus Brief of CFTC, *Commonwealth v. KalshiEX LLC*, No. SJC-13906 (Mass. Apr. 24, 2026), Dkt. No. 38. Recently, a federal court granted a preliminary injunction enjoining Arizona state regulators, at the request of the CFTC and DOJ, from proceeding with any criminal or civil actions to enforce their preempted state gaming laws against DCMs. *KalshiEX LLC v. Johnson*, 2:26-cv-01715, Dkt. 96

(D. Ariz. May 5, 2026).

13. Plaintiff's rush to file this Action ignores that whether the CEA preempts state gambling regulations "raise[s] serious questions," *KalshiEX, LLC v. Hendrick*, 2025 WL 3286282, at *12 (D. Nev. Nov. 24, 2025), appeal filed, No. 25-7516 (9th Cir. Nov. 28, 2025), which have divided the federal courts. *See Flaherty II*, 172 F.4th at 231 (affirming preliminary injunction in Kalshi's favor and holding state gambling laws preempted); *KalshiEX LLC v. Johnson*, 2026 WL 1223373, at *8 (D. Ariz. May 5, 2026) (enjoining state enforcement action against Kalshi because Kalshi and the CFTC "are likely to succeed on their claim that the CEA preempts [state]'s enforcement of its gambling laws against operators of DCMs that offer event contracts"); *KalshiEX LLC v. Flaherty*, 2025 WL 1218313, at *6-8 (D.N.J. Apr. 28, 2025) (holding state law preempted and granting preliminary injunction in Kalshi's favor); *Blue Lake Rancheria v. Kalshi Inc.*, 2025 WL 3141202, at *7 (N.D. Cal. Nov. 10, 2025) (rejecting argument that Kalshi's event contracts are unlawful gambling); *KalshiEX LLC v. Orgel*, 2026 WL 474869, at *7 (M.D. Tenn. Feb. 19, 2026) (finding "that Kalshi is likely to succeed on the merits because sports event contracts are 'swaps' and conflict preemption applies."); *United States v. Minnesota*, 2026 WL 2150211, at *15 ("Plaintiffs have shown that the CEA's grant of exclusive jurisdiction over transactions involving swaps likely preempts across-the-board enforcement of the Minnesota prediction market statute against Kalshi."); *but see Hendrick*, 2025 WL 3286282, at *14 (dissolving preliminary injunction); *KalshiEX LLC v. Schuler*, 2026 WL 657004, at *10 (S.D. Ohio Mar. 9, 2026) (denying preliminary injunction).

## II. REMOVAL IS PROPER PURSUANT TO 28 U.S.C. § 1441

14. Under 28 U.S.C. § 1441, any civil action filed in state court over which a federal court has original jurisdiction may be removed to the federal district court for the district in which

the state court action is pending. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims require the adjudication of federal-law issues that are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005).

15. ***Federal law is necessarily raised***. New York alleges that Kalshi has violated New York gambling laws by, among other things, operating an unlicensed platform through which its customers may "risk or stake something of value upon the outcome of a future contingent event not under the bettor's control or influence." Ex. A at 2. In addition, and importantly, New York alleges that Kalshi has violated the federal Wire Act by using wire communication facilities "for the transmission in interstate commerce of (1) bets or wagers, (2) information assisting in the placing thereof on a sporting event or contest, or (3) of a wire communication confirming payments resulting from bets or wagers." 18 U.S.C. § 1084(a); *see, e.g.*, Ex. A at 28-29 (Eighth Cause of Action based on "Violations of the Federal Interstate Wire Act"). New York seeks to enjoin Kalshi from offering event contracts "relating to sports, culture, elections and other events." Ex. A at 29. And the geographic scope of the relief Plaintiff seeks is not limited to New York. *Id.* at 30. Plaintiff seeks a monetary penalty "for each offering or attempt to offer sports wager or mobile sports wagering ***within or from*** New York." *Id.* Plaintiff's action, if successful, would pose a fundamental threat to the CFTC's exclusive jurisdiction under the CEA, risks creating a patchwork of state regulation that the CEA is designed to avoid, and risks invalidating the definition of "swap" in the CEA. New York cannot establish these claims without the resolution of disputed questions of federal law.

16.     To begin, New York's purported state-law claims each hinge on the proper construction of the federal CEA because each of the state-law claims, which ultimately prohibit some form of gambling or wagering, must be read in light of federal law's requirements. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015) (federal law must prevail "when state and federal law clash"). Here, as the Third Circuit has already recognized, the CEA plainly preempts any state efforts to regulate the event contracts that Kalshi offers its customers—which range from sports to the weather to elections and geopolitics—because that statute grants the CFTC "exclusive jurisdiction" over transactions involving swaps that are listed and traded on federally registered exchanges. *See Flaherty II*, 172 F.4th at 225-26; *see also* 7 U.S.C. § 2(a)(1)(A); *Leist v. Simplot*, 638 F.2d 283, 322 ("The federal government has been vitally concerned with trading in futures since 1922; indeed, the courts have held that s 2(a)(1) of the CEA preempts the application of state law."). Any construction of the state laws cited by New York must be read in light of this command, and thus issues of federal law are necessarily raised by these claims.

17.     Further, in order to prove its claims under Executive Law § 63(12), Plaintiff will need to establish that Kalshi engaged in "unlawful" behavior within the meaning of Article 225 of New York's Penal Law. *See* Penal Law § 225.00(12). But Plaintiff cannot establish that Kalshi's event contracts are unlawful because they are authorized and regulated by federal law.

18.     New York's allegation that Kalshi violated the federal Wire Act also necessarily raises issues of federal law. That is true even though New York presses this theory of liability pursuant to New York Executive Law § 63(12). As the Second Circuit has recognized, "[a] state-law claim necessarily raises federal questions where the claim is affirmatively premised on a violation of federal law." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d

308, 315 (2d Cir. 2016) (citation omitted). The resolution of New York's claim thus inescapably turns on application of the federal Wire Act.

19. ***Federal law is disputed***. The federal legal issues in this action are substantially similar to those actively in dispute in federal courts in New York and across the country. *See supra* ¶¶ 10–13. Indeed, Kalshi has been litigating these precise issues in this District since October 2025. *See KalshiEX LLC v. Williams*, No. 1:25-cv-08846-AT (S.D.N.Y.). Ultimately, whether trading event contracts on a federally regulated DCM is conduct subject to New York's gambling and licensing laws is "the central point of dispute" in this action. *Gunn*, 568 U.S. at 259.

20. This prong is also satisfied with respect to New York's allegation that Kalshi violated the federal Wire Act. New York expressly alleges that Kalshi has committed "repeated and persistent illegal acts" because Kalshi has, among other things, purportedly violated the federal Wire Act. Ex. A at 2-3. Kalshi strongly disputes New York's contention. Kalshi's event contracts are not "bets" or "wagers" within the meaning of federal law, 31 U.S.C § 5362(1)(E)(ii), and even if they were, the federal Wire Act includes a "safe harbor provision for bets placed to and from states" where that activity "is lawful." *W. Flagler Assocs., Ltd. v. Haaland*, 71 F.4th 1059, 1069 (D.C. Cir. 2023). Thus, the applicability of the federal Wire Act is squarely disputed.

21. ***The federal question is substantial***. A federal question is "substantial" when its answer is important to the "federal system as a whole." *Gunn*, 568 U.S. at 260. Here, New York's Complaint alleges that federally registered derivatives markets must obtain New York gambling licenses to facilitate access to event contracts in the State. That claim plainly raises "substantial" federal-law questions—namely, the scope of the CFTC's "exclusive jurisdiction" to regulate swaps traded on federally designated exchanges and the States' authority to override that federal regulation. Indeed, the CFTC's recent lawsuits challenging state gambling regulators' attempts to

11

encroach on the Commission's exclusive jurisdiction by regulating event contracts demonstrate that these issues are critically important to the broader federal system. *See, e.g.*, Compl. at 2, *United States v. Connecticut*, 3:26-cv-00498 (D. Conn. Apr. 2, 2026) ("Connecticut's attempt to shut down federally regulated DCMs and an FCM intrudes on the exclusive federal scheme Congress designed to oversee national swaps markets."). It is hard to imagine a clearer example of a federal question than a state seeking to unilaterally shut down the nationwide operations of a federally regulated derivatives exchange (imposing billions of dollars in penalties along the way) by alleging violations of federal law.

22. Moreover, New York alleges that by facilitating access to event contracts, Kalshi is violating the federal Wire Act. Ex. A at 3. For Plaintiff to succeed on its claims, the Court must adopt a narrow interpretation of the CEA's grant of exclusive jurisdiction to the CFTC, in contravention of the CEA's plain text, case law interpreting it, and the CFTC's own position, as clearly expressed in numerous pending litigations. *See Gunn*, 568 U.S. at 261 (explaining that a question is substantial where, for example, it calls into doubt the validity of a federal statute).

23. ***The federal questions are capable of resolution without disrupting the federal-state balance.*** This Court is best positioned to resolve the issue of whether Kalshi's business is authorized by federal law and, therefore, subject to exclusive federal regulation, and whether a federally registered DCM's full adherence to the CEA's comprehensive regulatory regime can violate the federal Wire Act. *See In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 445 (S.D.N.Y. 2017) (explaining that Congress amended the CEA to "establish a comprehensive new regulatory framework for swaps" and vested the CFTC "with exclusive jurisdiction to implement that framework" (cleaned up)); *see also Flaherty II*, 172 F.4th at 231 ("Congress gave the CFTC exclusive jurisdiction over trades on DCMs."); *Merrill Lynch, Pierce, Fenner & Smith,*

*Inc. v. Curran*, 456 U.S. 353, 355-56, 386 (1982) (the CFTC has "exclusive jurisdiction over commodity futures trading"). Because the event contracts at issue are swaps and are subject to exclusive federal regulation, they cannot be regulated under state gambling laws. *Flaherty II*, 172 F.4th at 225-30. Such a resolution by this Court, therefore, will not disrupt the federal-state balance but will instead reinforce the harmonious application of federal and state laws consistent with the Supremacy Clause. U.S. Const. art. VI, cl. 2.

### III. REMOVAL IS PROPER PURSUANT TO 28 U.S.C. § 1442(a)(2)

24. Removal is proper pursuant to 28 U.S.C. § 1442(a)(2), which authorizes removal of a state action directed against "[a] property holder whose title is derived from any . . . officer [of the United States or of any agency thereof], where such action . . . affects the validity of any law of the United States." The federal-officer removal statute is "not narrow or limited." *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014) (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)); *see also Colorado v. Symes*, 286 U.S. 510, 517 (1932) (holding that the federal-officer removal statute should "be liberally construed" to give full effect to its purposes). This action is removable under this provision because Kalshi's designation as a DCM under the CEA constitutes property derived from the CFTC, and this action directly affects that property right and the validity of the CEA.

25. ***Kalshi is a property holder with title derived from the CFTC.*** On November 3, 2020, the CFTC approved Kalshi's application for designation as a DCM pursuant to the CEA. *See* CFTC Designation Order, KalshiEX LLC (Nov. 3, 2020), https://www.cftc.gov/sites/default/files/filings/documents/2020/orgkexkalshidesignation201103.pdf; *supra* n.1. Although property is not defined in the removal statute, property is generally understood to include "[a]ny external thing over which the rights of possession, use, and enjoyment are exercised" and "every kind of valuable right and interest that can be made the subject of ownership." Property, Black's Law

Dictionary (12th ed. 2024). A government license grants a property right if the license cannot be revoked before the end of its term without cause. *See Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009) (there is a property interest in a license if it can be "suspended only upon a satisfactory showing" of misconduct); *Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005) (property interests exist where law imposes "substantive predicates" that limit the decision-making power of government officials).

26. Kalshi's designation as a DCM creates a clearly defined property right: it enables Kalshi to provide services for the trading or processing of swaps. 7 U.S.C. § 7b-3(a)(1) ("No person may operate a facility for the trading or processing of swaps unless the facility is registered as a . . . [DCM] under this section."); *see also* 17 C.F.R. § 38.3 (setting forth requirements and procedures for registration as a DCM); NY Compl. ¶ 31 ("The CEA requires that . . . commodity derivative transactions [ ] be conducted on exchanges designated by, or registered with, the CFTC.").

27. Kalshi's designation as a DCM also reflects exclusive possession or control. The rights granted are restricted to Kalshi unless transferred by the holder. *See* 7 U.S.C. § 7b-3(a)(1); 17 C.F.R. § 38.3(d)(1) (providing for "transfer of [a DCM's] designation from its current legal entity to a new legal entity"); *Davis v. Blige*, 505 F.3d 90, 98 (2d Cir. 2007) ("The right to sell and transfer personal property is an inseparable incident of the property."); *Citizens State Bank of Barstow, Tex. v. Vidal*, 114 F.2d 380, 383 (10th Cir. 1940) (holding that essential ingredients of property are whether it was "subject to ownership," "subject to transfer," and whether there was "exclusive possession and enjoyment"); *Shackleford v. United States*, 262 F.3d 1028, 1032 (9th Cir. 2001) ("The right to transfer is one of the most essential sticks in the bundle of rights that are commonly characterized as property." (citation omitted)).

28. Finally, Kalshi's designation establishes that it has a legitimate claim of exclusivity over that designation. *See* 17 C.F.R. §§ 38.3(d)(1), 39.3(a)(1); *see also* Title, Black's Law Dictionary (12th ed. 2024) (defining "title" as "the legal link between a person who owns property and the property itself").

29. As a registered entity, Kalshi's designation as a DCM also comes with procedural protections typical of property rights. *See* 7 U.S.C. § 1a(40) (defining registered entity). For example, the DCM designation cannot be suspended or revoked by the CFTC without cause, and even then, may be done only after providing Kalshi with notice, a hearing, and an opportunity to appeal to federal court. 7 U.S.C. § 7b ("The failure of a registered entity to comply with any provision of this chapter . . . shall be cause [for suspension or revocation] . . . ." (emphasis added)); 7 U.S.C. § 8(b) (describing process required before suspending or revoking a designation as a contract market). Those requirements reinforce that Kalshi has a property interest in its designation as a contract market. *See, e.g., Spinelli*, 579 F.3d at 169; *Kapps*, 404 F.3d at 113; *M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1311 (10th Cir. 2018) (holding property right existed where statutory factors limited discretion in making determinations); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) (holding employee has property interest where statute and regulations place "substantive restrictions" on ability to change or terminate employment); *see also Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980) ("A property interest may be created if 'procedural' requirements are intended to operate as a significant substantive restriction on the basis for an agency's actions.").

30. ***Plaintiff's action affects the validity of the CEA.*** Section 1442 is intended to protect litigants "from state-court proceedings that may reflect local prejudice against unpopular federal laws or federal officials." *Doe v. Integris Health, Inc.*, 123 F.4th 1189, 1192 (10th Cir.

2024) (emphasis added) (cleaned up); *Mays v. City of Flint, Mich.*, 871 F.3d 437, 443 (6th Cir. 2017) ("Concerns about local prejudice against unpopular laws or federal officials . . . underlie the federal-officer removal statute." (citation modified)); *New York v. Tanella*, 239 F. Supp. 2d 291, 296 (E.D.N.Y. 2003); *see Arizona v. Manypenny*, 451 U.S. 232, 242 (1981). Plaintiff's action is designed to override the clear language and comprehensive regulatory scheme found in the CEA, in favor of its preferred application of state gambling laws onto trading on federally regulated DCMs. *See Carney v. Washington*, 551 F. Supp. 3d 1042, 1054 (W.D. Wash. 2021) (permitting Section 1442(a)(2) removal where "Plaintiff's suit seeks to circumvent" a federal regulatory structure).

31.     Indeed, through the Action, New York seeks to prevent Kalshi from offering ***any event contracts*** for trade on its DCM, ***anywhere in the United States***. *See* Ex. A at 29 (requesting injunction barring Kalshi from operating a business "within or from New York" that offers event contracts "without being licensed by the New York State Gaming Commission[.]").

32.     Plaintiff's lawsuit is therefore directly in conflict with, and were it to be successful, would entirely undermine the validity of the CEA. The CEA provides for ***exclusive*** federal regulation of transactions on DCMs to avoid a patchwork of state regulation. *See* 7 U.S.C. § 2(a)(1)(A); *Flaherty II*, 172 F.4th at 230 ("Congress created the CFTC and amended the Act to do away with the patchwork of state regulations and bring futures trading on DCMs under the exclusive jurisdiction of the CFTC."); *Leist*, 638 F.2d at 322 ("the courts have held that s 2(a)(1) of the CEA preempts the application of state law"); *see also* H.R. Rep. No. 93-975, at 79 (1974) ("This bill will put all exchanges . . . under the same set of rules[.]"); Mem. in Supp. of Pls.' Mot. for TRO ("CFTC TRO Br.") at 2, 3-4, *United States v. New York*, No. 1:26-cv-3404, Dkt. No. 119 (S.D.N.Y. July 30, 2026) (New York's enforcement actions "would essentially nullify the CEA as

to swaps traded on CFTC-regulated exchanges within New York" and threaten to subject DCMs to "a patchwork of 50 state regulations"—which is "precisely what Congress sought to avoid with the CEA"); CFTC CA9 Amicus Br. at 2. The CFTC confirmed these points in its amicus brief in the Ninth Circuit, *id.* at 2, and in eight lawsuits against states that have attempted to regulate event contracts traded on CFTC-regulated designated contract markets. *See* NY Compl. ¶ 46 ("Congress recognized the need for uniform, nationwide regulation of futures and options markets because concurrent regulation by the states or other federal regulators such as the Securities and Exchange Commission could lead to 'total chaos.'"); *see also supra* ¶ 12.

33.     As an initial matter, Kalshi's event contracts easily "fit within the [CEA]'s definition of 'swaps' subject to the CFTC's jurisdiction." *Flaherty II*, 172 F.4th at 228; *see* CFTC CA9 Amicus Br. at 14-18 (explaining that event contracts are "swaps" under the "plain language" of the CEA). Because they are "swaps under the [CEA]," event contracts are "properly" regulated as "trading on a DCM (a form of futures trading) rather than as gambling (a broader and traditionally state-regulated field)." *Flaherty II*, 172 F.4th at 229. Given this precise delineation of federal and state spheres, placing all of Kalshi's event contracts under the direct regulation of the New York State Gaming Commission—as New York seeks to do here—would create "a clash between a constitutional exercise of Congress's legislative power and conflicting state law." *Flaherty II*, 172 F.4th at 228 (citing *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 479 (2018)); *see also* NY Compl. ¶ 6 ("Prompted by the evolution of national financial markets and repeated conflicts with state law, Congress enacted the CEA, granting the CFTC exclusive jurisdiction to regulate those markets and enacting a comprehensive federal regulatory framework that preempts state laws that attempt to regulate the operation of, or transactions on, CFTC-regulated exchanges."); *id.* ¶ 74 (state enforcement action directly "conflicts" with the "exclusive

governance" over event contracts that Congress granted to the CFTC); U.S. Const. art. VI, cl. 2; *see also Flaherty II*, 172 F.4th at 228-29 (CEA field preempts application of state law to Kalshi).

34. Indeed, allowing New York to apply its gambling laws against Kalshi would "subvert" the CEA, *see, e.g.*, NY Compl. ¶ 11, and "directly conflict[] with the full purposes and objectives" of Congress. *Flaherty II*, 172 F.4th at 230; *see also* CFTC TRO Br. at 1, 5. Enforcement of New York's gambling laws "would create an obstacle to executing the [CEA] because such enforcement would prohibit Kalshi, which operates a licensed DCM under the exclusive jurisdiction of the CFTC, from offering its . . . event contracts" in—or, as the Complaint seeks, *from*—New York. *Flaherty II*, 172 F.4th at 230. This type of piecemeal "state regulation is exactly the patchwork that Congress replaced wholecloth by creating the CFTC." *Id.* Furthermore, compliance with state-specific prohibitions on event contracts would be "impossible" for DCMs, because these prohibitions conflict with the "federal mandate to provide impartial national access." NY Compl. ¶ 78; *see also* CFTC CA9 Amicus Br. at 26-27.

35. It cannot be disputed that through this Action—which seeks to shut Kalshi down nationwide—New York seeks to fundamentally "subvert" the "exclusive jurisdiction" of the CFTC over DCMs. *See, e.g.*, CFTC TRO Br. at 2, 6 (suits like New York's Action "will irreparably harm the CFTC and the markets that it regulates" and ("[i]mmediate relief is warranted to ensure that the CFTC can carry out its statutory mandate."); NY Compl. ¶ 11; *see also* CFTC CA9 Amicus Br. at 2 (state enforcement actions constitute "fundamental threat to Congress's statutory design"). For nearly a century, Congress has occupied the field as to "the regulation of trading on a DCM." *Flaherty II*, 172 F.4th at 229; *Leist*, 638 F.2d at 322. That comprehensive regulatory scheme "has left no room" for supplementary state regulation, as Plaintiff seeks here. *Id.* at 228 (citations omitted).

36. In sum, this action affects the validity of the CEA in several ways. This action would (i) create an obstacle to the accomplishment of Congress's objectives as set forth in the CEA; (ii) pose a "fundamental threat" to the CFTC's exclusive jurisdiction under the CEA; (iii) risk creating a patchwork of state regulation that the CEA is designed to avoid; and (iv) risk invalidating the definition of "swap" in the CEA. *See* NY Compl. ¶ 66 (listing reasons in explaining why New York's enforcement would affect the validity of the CEA). These effects would "subvert federal law" and fundamentally affect the validity of the CEA. *Id.* ¶ 12; *see also Carney*, 551 F. Supp. 3d at 1054 (finding state law claim tests validity of federal laws because it would "evade them or otherwise frustrate their aims").

## IV. NEW YORK CANNOT DEFEAT FEDERAL OFFICER REMOVAL PURSUANT TO 28 U.S.C. § 1442(a)(1) THROUGH ARTFUL PLEADING

37. Removal is also proper due to New York's artful pleading. *See Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 271 (2d Cir. 2005) ("The artful-pleading doctrine . . . rests on the principle that a plaintiff may not defeat federal subject-matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law."). Joinder of the CFTC—a necessary party here—would create removal jurisdiction under 28 U.S.C. § 1442(a)(1). Plaintiff's strategic failure to join the CFTC in this action cannot allow it to defeat jurisdiction. *Allstate Interiors, Inc. v. Carpenters*, 2010 WL 3894915, at *3 (S.D.N.Y. Sept. 10, 2010) (holding that a plaintiff may not defeat removal by "artful pleading"); *People of Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122, 138 (2d Cir. 2023) (artful pleading doctrine applies where congress expressly provides for removal of particular state actions).

38. New York seeks injunctive relief under Executive Law § 63(12). But New York Civil Practice Law and Rules ("CPLR") § 1001(a) is clear that such relief requires naming as parties any person "who ought to be parties if complete relief is to be accorded . . . or who might

be inequitably affected by a judgment in this action."  New York is undoubtedly aware that the CFTC has claimed a substantial interest in this exact issue.  In its own complaint against New York, the CFTC asserts that "the federal Commodity Exchange Act which provides the CFTC with 'exclusive jurisdiction' over transactions on [DCMs] preempts New York statutes that purport to prohibit, limit, or condition the listing or trading of event contract swaps on [DCMs]."  Compl. ¶ 82, *United States v. New York*, No. 26-cv-3404 (S.D.N.Y. Apr. 24, 2026), Dkt. No. 1.  And shortly before New York filed its Complaint against Kalshi, the CFTC filed an Emergency Motion for Temporary Restraining Order in this district making clear that an action such as the one New York filed irreparably harms the federal government and "directly hinder[s] the CFTC's exclusive authority to regulate its markets."  CFTC TRO Br. at 6-7.

39.      Nevertheless, Plaintiff failed to name CFTC as a party.  Had it done so, as required by CPLR § 1001(a), there would be yet another basis for removal pursuant to the federal officer removal statute.  *See* 28 U.S.C. § 1442(a)(1); *Chevron USA Inc. v. Plaquemines Parish*, 2026 WL 1040461, at *6 (2026).  Plaintiff "may not defeat federal subject-matter jurisdiction by 'artfully pleading' [its] complaint."  *Sullivan*, 424 F.3d at 271 (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983) ("[I]t is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.")).

## V.   KALSHI MEETS THE OTHER PROCEDURAL REQUIREMENTS FOR REMOVAL

40.      Removal is timely.  New York filed its Complaint on July 31, 2026, and Kalshi filed its Notice of Removal on the same day.  Kalshi has not yet been served with the Complaint.  28 U.S.C. §§ 1446(b)(1), (c)(1); *see Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

41.      Venue is proper pursuant to 28 U.S.C. §§ 112, 1441(a), 1442, and 1446(a) because the United States District Court for the Southern District of New York is the federal judicial district embracing the Supreme Court of the State of New York, County of New York, where the Complaint was filed.

42.      In accordance with 28 U.S.C. § 1446(d), written notice of this Notice of Removal will be promptly provided to New York and filed with the Supreme Court of the State of New York, County of New York.

43.      No previous application has been made for the relief requested in this Notice of Removal.

## **CONCLUSION**

WHEREFORE, Kalshi respectfully requests that the Action be removed from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York and that this Court accept jurisdiction. If any question arises as to the propriety of removal, Kalshi respectfully requests the opportunity to present oral argument.

Dated:  New York, New York
        July 31, 2026

**MILBANK LLP**

*/s/ Andrew L. Porter*

Grant R. Mainland
Andrew L. Porter
Matthew J. Laroche
Nicole D. Valente
55 Hudson Yards
New York, NY 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219
GMainland@milbank.com
APorter@milbank.com
MLaroche@milbank.com
NValente@milbank.com

Joshua B. Sterling (*pro hac vice* forthcoming)
William E. Havemann (*pro hac vice* forthcoming)
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-835-7500
Facsimile: 202-263-7586
JSterling@milbank.com
WHavemann@milbank.com

*Attorneys for Defendant KalshiEX LLC*
