# Exhibit A

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 1    Case 1:26-cv-06550    Document 1-1    Filed 07/31/26    Page 2 of 33

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 07/31/2026

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x
PEOPLE OF THE STATE OF NEW YORK,
by LETITIA JAMES, Attorney General
of the State of New York,

                Petitioner,

         - against -

KALSHIEX LLC,

                Respondent.
------------------------------------------------------------------x

**VERIFIED PETITION**

Index No.

Petitioner, the People of the State of New York, by its attorney, Letitia James, Attorney General of the State of New York ("OAG" or "Petitioner"), alleges upon the records and documents contained in the files of the offices of OAG:

**NATURE OF THE ACTION**

1.    Petitioner brings this action pursuant to New York Executive Law ("Executive Law") § 63(12).

2.    Gambling is illegal in New York with certain limited exceptions.

3.    New York allows certain gambling businesses to operate once licensed by the New York State Gaming Commission.

4.    Respondent KalshiEX LLC ("Kalshi" or "Respondent") operates as a business a website and mobile device application offering a "prediction market," which allow bettors to gamble on a variety of sports and other events.

5.    Respondent first launched its "prediction market" in July 2021, announcing that the public could "now buy 'Yes' or 'No' positions on whether an event will happen, from 'Will the Tokyo Olympics be canceled', to 'Will more Americans get vaccinated this week than last week?'"

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)        INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1    Case 1:26-cv-06550    Document 1-1    Filed 07/31/26    Page 3 of 33
RECEIVED NYSCEF: 07/31/2026

6.      On January 23, 2025, Respondent announced the launch of sports "trading." Respondent encouraged the public to "view live sports (and bet)" on its platform. Respondent advertised that it offered "[l]egal sports markets, accessible to Americans in all 50 states" and encouraged bettors to bet on sports such as "[b]et on the NFL, Legal in 50 states."

7.      For example, Respondent has offered bettors the ability to wager on whether the Green Bay Packers would win a football game against the New York Giants or who would win the February 8, 2026, Super Bowl or college basketball games, such as the March 20, 2026, game between Hofstra University and University of Alabama.

8.      Respondent has reported a $22 billion valuation of its gambling business and an annualized transaction volume of $178 billion, but Respondent seeks to avoid the legal and financial consequences of New York's close regulation of gambling by offering what is quintessentially wagering under the guise of "event contracts" on a "prediction market."

9.      Respondent accepts wagers from members of the public as a gambling business in New York in flagrant disregard of New York's State Constitution, penal laws, and other statutes.

10.     Respondent is not licensed with the New York State Gaming Commission in any capacity.

11.     OAG consequently seeks an order from this Court finding that Respondent has engaged in repeated and persistent illegality.

12.     Specifically, Respondent has engaged in repeated and persistent illegal acts under Executive Law § 63(12), including: (a) violating New York State Constitution Article I, Section 9 (NY CLS Const Art I, § 9) by operating a platform that enables bettors to risk or stake something of value upon the outcome of a future contingent event not under the bettor's control or influence, upon an agreement or understanding that the bettor will receive something of value in the event of

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1    Case 1:26-cv-06550    Document 1-1    Filed 07/31/26    Page 4 of 33    RECEIVED NYSCEF: 07/31/2026

a certain outcome; (b) violating New York Penal Law § 225.05 by knowingly advancing and profiting from unlawful gambling activity, and New York Penal Law § 225.10 by receiving and accepting in any one day more than five bets totaling more than $5,000; (c) violating New York Penal Law § 225.20 by, with knowledge of the contents thereof, possessing any writing, paper, instrument or article of a kind commonly used in the operation or promotion of a bookmaking scheme or enterprise and constituting, reflecting or representing more than five bets totaling more than $5,000; (d) violating Section 1367(16)(a) of the New York Racing, Pari-Mutuel Wagering and Breeding Law (hereinafter "Racing Law") by knowingly offering or attempting to offer unauthorized sports wagering or mobile sports wagering in New York; (e) violating Racing Law § 1367-a(2)(a) by administering, managing, or otherwise making available a mobile sports wagering platform to persons located in New York without a license; (f) violating Racing Law § 1367-a(4)(b) by directly or indirectly operating an unlicensed sports wagering platform in New York and by advertising or promoting the unlicensed platform to persons located in New York; and (g) violating the Federal Interstate Wire Act, 18 U.S.C. § 1084(a) ("Wire Act"), by its use of wire communication facilities for the transmission in interstate commerce of (1) bets or wagers, (2) information assisting in the placing thereof on a sporting event or contest, or (3) of a wire communication confirming payments resulting from bets or wagers.

13.    Petitioner seeks an order and judgment: (a) permanently enjoining Respondent from continuing to operate a gambling business in New York without being licensed by the New York State Gaming Commission; (b) permanently enjoining Respondent and its principals, agents, and employees from violating the Constitution and laws of the State of New York, including Executive Law § 63(12), Penal Law §§ 225.05, 225.10, 225.20, Racing Law §§ 1367(16)(a), 1367-a(2)(a), 1367-a(4)(b), and 18 U.S.C. § 1084(a); (c) directing Respondent to produce an accounting

3

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 1    Case 1:26-cv-06550    Document 1-1    Filed 07/31/26    Page 5 of 33    INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 07/31/2026

of all bets placed, monies lost by customers in connection with its gambling business, and monies paid to Respondent in connection with its gambling business; (d) directing Respondent to pay restitution, disgorgement, damages, and penalties; (e) pursuant to Penal Law § 80.10, directing Respondent to pay a penalty of three times the amount of Respondent's gain from the illegal practices alleged herein; (f) pursuant to Racing Law § 1367(16)(a), directing Respondent to pay a penalty of $100,000 for each offer or attempt to offer sports wagering or mobile sports wagering in New York without authorization; (g) pursuant to CPLR § 8303(a)(6), granting costs to New York of $2,000; and (h) granting such other and further relief as the Court deems just and proper.

## PARTIES

14.    Petitioner is the People of the State of New York, by its attorney, Letitia James, Attorney General of the State of New York.  The State of New York has an interest in upholding the laws of the State, and OAG is charged with enforcing those laws.  OAG brings this action on behalf of the People of the State of New York pursuant to, among other authorities, Executive Law § 63(12).

15.    KalshiEX LLC is a Delaware limited liability company with its principal place of business in New York, New York.  Kalshi through its gambling platform promotes and accepts and receives wagers on all types of events, including sports, elections, and culture.

## JURISDICTION AND VENUE

16.    Petitioner brings this special proceeding pursuant to Executive Law § 63(12) to enjoin Respondent's illegal business practices.  Petitioner also seeks an accounting, restitution, disgorgement, damages, civil penalties, and costs, as authorized by law, to be paid to New York.

17.    Executive Law § 63(12) authorizes OAG to apply for an order enjoining the continuation of repeated fraudulent or illegal acts in the carrying on, conducting or transacting of

4

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

business affecting the interests of the public within New York. Executive Law § 63(12) expressly authorizes OAG to make such application by "action or proceeding." Executive Law § 63(12) also empowers OAG to seek restitution, disgorgement, damages, injunctive relief, and costs when any person or business entity has engaged in repeated fraudulent or illegal acts or has otherwise demonstrated persistent fraud or illegality in the carrying on, conducting or transacting of business.

18.     The Court has jurisdiction over the subject matter of this action, personal jurisdiction over the Respondent, and authority to grant the relief requested pursuant to Executive Law § 63(12).

19.     Pursuant to CPLR § 503 venue is proper in New York County because OAG's New York office is located in New York County and Respondent's headquarters is located in New York County.

**FACTS**

**I.     New York Closely Regulates Gambling**

20.     New York has policed gambling within its borders for over 250 years, since 1771. *See Saratoga County Chamber of Commerce, Inc. v Pataki*, 100 NY2d 801, 825-830 (2003) (Smith, J., concurring in part) (history of New York's anti-gaming laws).

21.      The New York Constitution prohibits gambling in all forms not specifically enumerated in Article I. The New York Constitution states:

> [E]xcept as hereinafter provided, no lottery or the sale of lottery tickets, pool-selling, book-making, or any other kind of gambling, except lotteries operated by the state . . . , except pari-mutuel betting on horse races . . . , and except casino gambling at no more than seven facilities . . . shall hereafter be authorized or allowed within this state; and the legislature shall pass appropriate laws to prevent offenses against any of the provisions of this section.

NY CLS Const Art I, § 9.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

22.    New York's Penal Law similarly has long recognized crimes for promoting gambling activity, Penal Law §§ 225.05, 225.10, and crimes for possession of gambling records, Penal Law §§ 225.15, 225.20.

23.    Gambling is specifically defined under New York Penal Law.  A person "engages in gambling when he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome." Penal Law § 225.00(2).

24.    In 2019, following the U.S. Supreme Court's recognition of states' rights to authorize and regulate sports wagering within their borders, *see Murphy v NCAA,* 584 US 453 (2018), New York enacted a comprehensive regulatory regime for mobile sports wagering, *see* Racing Law §§ 1367, 1367-a.

25.    The New York State Gaming Commission has general jurisdiction over all gaming activities within New York and over the corporations, associations, and persons engaged therein, including, specifically, the regulation of sports wagering.  Racing Law §§ 104(1), (24).  New York's nine mobile sports licensees are subject to significant statutory and regulatory requirements under Section 1367-a of the Racing Law.  Mobile sports wagers made through virtual or electronic means must be made through mobile sports wagering licensees from a location within the state and transmitted to and accepted by electronic equipment located at a licensed commercial casino gaming facility in New York.  *See* Racing Law §§ 1367(2)(d), 1367-a(2)(d).

26.    Under the Racing Law, sports wagering is defined as wagering on sporting events or any portion thereof, or on the individual performance statistics of athletes participating in a sport event, or combination of sporting events, by any system or method of wagering.  Racing Law § 1367(1)(x).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

27.    New York prohibits sports wagering by minors.  Racing Law § 1367(2)(d).  New York's Racing Law defines "minors" as anyone under the age of 21.  Racing Law § 1367(1)(j). The Racing Law prohibits any mobile sports wagering licensee from permitting sports wagering by anyone they know, or should have known, to be a prohibited sports bettor.  Racing Law §1367-a(4)(d).  The Racing Law further states that "[a]s a condition of licensure, each mobile sports wagering operator shall . . . prohibit minors from participating in any sports wagering pursuant to rules and regulations promulgated by the commission."  Racing Law § 1367-a(4)(a)(iii).

28.    New York also prohibits sports wagering on events in which New York college teams participate, and even duly licensed mobile sports wagering licensees are prohibited from offering such wagering.  New York's Racing Law defines a "prohibited sports event" to include "a sport or athletic event in which any New York college team participates regardless of where the event takes place."  Racing Law §1367(1)(s).  The Racing Law prohibits any mobile sports wagering licensee from offering any sports wagering based on any prohibited sports event.  Racing Law § 1367-a(4)(c). New York's Racing Law states that "[a]s a condition of licensure, each mobile sports wagering operator shall . . . ensure no sports wagering shall be based on a prohibited sports event."  Racing Law § 1367-a(4)(a)(xi).

29.    New York receives significant tax revenue from licensed casinos and mobile sports wagering licensees, the latter of which are taxed at a rate of approximately 51% of gross revenues. Tomer Aff. at ¶ 2, Ex. 1 at 4 (New York State Gaming Commission website).[1]  Sports wagering revenue taxes are primarily used for public school funding as well as sports programs for underserved youth and problem gambling education and treatment.  *Id.*  In 2024, mobile sports

---

[1] References herein to "Tomer Aff." refer to the Affirmation of Kenneth Brent Tomer filed in support of this Petition and its accompanying exhibits ("Ex.").  "Metz Aff." refer to the Affirmation of Brian Metz filed in support of this Petition and its accompanying exhibits.

7

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

wagering operators generated approximately $2 billion in gross gaming revenue, paying more than $1 billion in state taxes. Tomer Aff. at ¶ 2, Ex. 2 at 12 (Annual Report).

**II.      New York State Gaming Commission Issues Cease and Desist Against Respondent**

30.      On October 24, 2025, the New York State Gaming Commission demanded that Respondent cease and desist from "illegally operating, advertising, promoting, administering, managing, or otherwise making available an unlicensed mobile sports wagering platform in New York State . . . ." Tomer Aff. at ¶ 15, Ex. 17B.

31.      Instead of ceasing its operations, on October 27, 2025, Respondent sued the New York State Gaming Commission and its Commissioners, among others, in the U.S. District Court for the Southern District of New York seeking to enjoin the New York State Gaming Commission from enforcing its cease and desist demand. *See* Compl., *KalshiEX LLC v. Williams et al.*, 25-cv-08846-AT (S.D.N.Y. Oct. 27, 2025).

32.      On October 28, 2025, the New York State Gaming Commission agreed to refrain from undertaking enforcement action against Respondent regarding any conduct described in the cease and desist pending the ruling on Respondent's injunction request in that case. *Id.*, Dkt. No. 34.

33.      On July 7, 2026, the court denied Respondent's motion for preliminary injunction, *KalshiEX LLC v. Williams,* No. 25-cv-08846-AT, 2026 U.S. Dist. LEXIS 149977, at *31 (July 7, 2026)*, corrected in part by* Order, Dkt. No. 109 (July 13, 2026), *appeal docketed* No. 26-1835 (2d. Cir. July 8, 2026), and on July 27, 2026, the court denied Respondent's motion for an injunction pending appeal, *see* Order, Dkt. No. 113, *KalshiEX LLC v. Williams et al.*, 25-cv-08846-AT (S.D.N.Y. July 27, 2027).

8

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

### III.    Respondent's Unlicensed Gambling Platform

#### A.    Respondent Promotes Gambling

34.    On July 26, 2021, Respondent announced the launch of a "prediction market," which, through Respondent's oversight and operation, has grown to allow its bettors to place wagers on all types of events, including sports, politics, and culture, from Respondent's website, kalshi.com, and its associated mobile device application (collectively, the "Platform"). Tomer Aff. at ¶ 3, Ex. 3 (news release). Respondent's principal place of business is in New York. Tomer Aff. at ¶ 3, Ex. 4 at ¶ 13 (Declaration of Richard Heaslip).

35.    Since launch, Respondent repeatedly has advertised and solicited gambling on its Platform to persons located in New York and elsewhere via the internet, including through social media sites such as X.com, Instagram, and YouTube. For example, on October 30, 2024, although unlicensed gambling operations are illegal in New York, Respondent posted to X.com that it is "legal in all 50 states." Tomer Aff. at ¶ 4, Ex. 5 (X.com post).

36.    Respondent has persistently advertised sports betting on its platform since at least January 23, 2025. *See, e.g.*, Tomer Aff. at ¶ 4, Ex. 6 (X.com post). This includes advertising directed at New Yorkers. For example, Respondent issued an advertisement on Instagram which stated, "Hey New York . . . Bet on the NFL, Legal in all 50 states." Tomer Aff. at ¶ 4, Ex. 7 (news article).

37.    Respondent also, for example, posted numerous advertisements on X.com leading up to the February 8, 2026, Super Bowl between the New England Patriots and Seattle Seahawks. Tomer Aff. at ¶ 5, Exs. 8A, 8B, 8C (X.com posts).

38.    As an inducement to participate in its gambling Platform, Respondent has offered various promotions. For example, in advance of the college basketball playoffs, Respondent

9

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 1    Case 1:26-cv-06550    Document 1-1    Filed 07/31/26    Page 11 of 33    INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 07/31/2026

offered $1 Billion for a perfect bracket and $1 Million in guaranteed prizes. Tomer Aff. at ¶ 6 Ex. 9 (X.com post).

39.      Respondent also offers referral awards, whereby bettors can share a link via social networks or directly with others and receive a reward if another joins Kalshi, completes the identity verification process, and meets a threshold requirement. Tomer Aff. at ¶ 7, Ex. 10 (Referral Program FAQ).

40.      Respondent additionally advertises and promotes betting on sports events in which New York professional and college teams participate. For example, on March 19, 2026, Respondent posted on X.com a series of solicitations to bet on the Siena University vs. Duke University college basketball game. Tomer Aff. at ¶ 8, Exs. 11A-C (X.com posts).

**B.      Overview of Respondent's Platform**

41.      Respondent, through its Platform, allows bettors in New York and elsewhere, to place bets on the outcomes of future contingent events for which the outcome is uncertain and outside the control of the bettor. Tomer Aff. at ¶ 10.

42.      Respondent does so by offering for sale through its Platform contracts on events such as the sports events listed below. Tomer Aff. at ¶ 11, Exs. 12 (website capture), 13 (mobile device application capture).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1  Case 1:26-cv-06550  Document 1-1  Filed 07/31/26  Page 12 of 33  RECEIVED NYSCEF: 07/31/2026



43. Beyond sports-related events, Respondent also offers wagering on election and culture events such as "Which party will win the U.S. Senate?" or "Big Brother Season 28 Winner." Tomer Aff. at ¶ 12, Exs. 14, 15 (website captures).

44. The contracts allow a bettor to take a "Yes" or "No" position on whether a future, real-life event will occur by purchasing a "Yes" or "No" contract with prices in cents corresponding roughly to probability percentages. Tomer Aff. at ¶ 13, Ex. 16 (What Is Kalshi? A

11

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Beginner's Guide). If the bettor's predicted event occurs, the contracts provide for Respondent to pay the bettor $1.00; if it does not occur, the bettor receives no payment. *Id.*

45.    Each contract is a bet.

46.    In each case, the bettor's return is determined by an outcome or future contingent event outside their control or influence.

47.    For example, on the afternoon of November 12, 2025, a user could buy a "No" contract on Respondent's Platform for $0.25 that would pay out $1 if the Green Bay Packers football team lost to the New York Giants in a professional football game held on November 16, 2025. Metz Aff. at ¶ 10 and Ex. 1 (screenshot).

48.    Respondent charges the bettor a fee for placing wagers.

49.    Respondent has repeatedly and persistently offered wagering on professional and college sports events through its Platform since at least January 23, 2025. Tomer Aff. at ¶ 14, Ex. 6 (X.com post).

50.    The sports events for which Respondent makes wagering available include, but are not limited to, professional and college basketball games, professional and college football games, professional hockey games, and professional tennis matches. Metz Aff. at ¶ 12 and Exs. 4A-D (screenshots).

51.    The sports events for which Respondent makes wagering available also include sports or athletic events in which New York college teams participate. For example, Respondent, through its Platform, offered sports wagering on the March 19, 2026, college basketball game between Siena University and Duke University and the March 20, 2026, college basketball game between Hofstra University and University of Alabama. Metz Aff. at ¶¶ 13-14 and Exs. 5, 6 (screenshots).

12

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

52. Respondent also offers point spread and point total bets on sports events, such as wagers over whether the University of Alabama will defeat Hofstra University in a college basketball game by over 10.5 points. Metz Aff. Ex 2A (observed point spread wager). Respondent further offers bettors the ability to bet a "combo," also known as a parlay, whereby bettors can combine individual bets to receive a larger payout if all combined bets are successful. Metz Aff. at ¶ 13 and Ex. 5 (screenshot).

53. Respondent offers sports wagering and mobile sports wagering through its Platform by electronic means including a mobile device application and an internet website accessible via a mobile device or computer. Metz Aff. at ¶¶ 5, 12-14 and accompanying exhibits.

54. Respondent is not licensed by the New York State Gaming Commission in any capacity. Tomer Aff. at ¶ 15, Exs. 1, 17A (Gaming Commission website captures), 17B (cease and desist demand).

### C.   Opening an Account on Respondent's Platform

55. Bettors located in New York are able to access the Platform by opening an account through Respondent's website or mobile application. Metz Aff. at ¶¶ 2-6.

56. When opening an account, Respondent may require a bettor to enter certain personal information, including a home address and date of birth. Metz. Aff. ¶ 6.

57. Respondent may require a bettor to acknowledge and agree to certain documents, including Respondent's Member Agreement and Rulebook. Metz Aff. at ¶ 15, Tomer Aff. at ¶¶ 16, 19, Exs. 18 (Member Agreement), 20 (Rulebook).

58. Respondent permits bettors under the age of 21, but at least 18 years of age to open an account. Tomer Aff. at ¶ 16, Ex. 18 at VI (Member Agreement).

13

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

59. Once a bettor has an account with Respondent, the bettor can access the Platform, deposit funds, and place wagers through electronic means including the use of the internet or a mobile device application. Metz Aff. at ¶ 5.

**D.      Betting on Respondent's Platform**

60. Respondent allows bettors to place wagers from New York and elsewhere via its Platform. Metz Aff. at ¶¶ 3, 26.

61. A bettor enters wagers on Respondent's Platform by staking or risking money that the bettor gives to Respondent, which Respondent accepts or receives, for the bettor to place the wager.

62. A bettor pays a fee to Respondent for each wager entered. The fee is paid at the same time the bettor places the wager. The amount of the fee varies.

63. Respondent debits bettor accounts for each wager placed.

64. Respondent credits bettor accounts for successful wagers, paying $1.00 on each successful "event contract" purchased.

65. For example, on and before April 6, 2026, Respondent offered a contract on who would win the NCAA men's basketball game between University of Connecticut and University of Michigan that occurred on that date. As of approximately 10:15 am EST on April 6, 2026, a bettor could place a "yes" wager that Connecticut would win for an average price of $0.285 per wager. Each wager would pay the bettor $1.00 if Connecticut won the game or nothing if Connecticut did not win. Metz Aff. at ¶ 16 and Exs. 7A (screenshot); 7B (video).

66. In the above example, on April 6, 2026, a bettor in New York with a New York-based account placed on Respondent's Platform four "Yes" wagers for Connecticut to win the game for a total of $1.14 including fees. Respondent accepted and received the wagers.

14

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1    Case 1:26-cv-06550    Document 1-1    Filed 07/31/26    Page 16 of 33    RECEIVED NYSCEF: 07/31/2026

Respondent charged the bettor a fee of $0.06 for placing the four wagers. Respondent debited the bettor's account $1.14. Metz Aff. at ¶ 17 and Exs. 7B (video), 8 (written confirmation). Because Connecticut did not win the game, the bettor received no payout. Metz Aff. at ¶ 17.

67.     In another example, on and before July 9, 2026, Respondent offered a contract on the winner of "Big Brother Season 28," the popular reality television competition show. As of approximately 3:15 pm EST, a bettor could place a "Yes" wager that contestant Yash Patel would win Big Brother Season 28 at an average price of $0.09 per wager. Each wager would pay the bettor $1.00 if Yash Patel won Big Brother, or nothing if Patel did not win. Metz Aff. at ¶ 20 and Ex. 9 (screenshot).

68.     In the above example, on July 9, 2026, a bettor in New York with a New York-based account placed on Respondent's Platform 10 "Yes" wagers for Yash Patel to win Big Brother Season 28 for a cost of $0.96, including fees. Respondent accepted and received the wagers. Respondent charged the bettor a fee of $0.06 for placing the wagers. Respondent debited the bettor's account $0.96. Metz Aff. at ¶ 21 and Ex. 10 (written confirmation).

69.     In another example, on and before June 17, 2026, Respondent offered a contract on "NY-13 Democratic Nominee." As of approximately 2:00 pm EST, a bettor could place "Yes" wagers that any of eight candidates would win the primary election. Each wager would pay the bettor $1 if the chosen candidate won the primary election. Metz Aff. at ¶ 24 and Ex. 11 (screenshot).

70.     Respondent does not prohibit bettors between the ages of 18 and 21 from placing wagers on its Platform. Tomer Aff. at ¶ 16, Ex. 18 at VI (Member Agreement).

71.     Respondent accepts and receives bets and wagers in New York from bettors located in other states and provides information on its contracts from New York to bettors

15

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 1    Case 1:26-cv-06550    Document 1-1    Filed 07/31/26    Page 17 of 33

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 07/31/2026

located in other states, including communications concerning winning bets and wagers entitling the recipient to payment.  Metz Aff. at ¶¶ 26-27 and Exs. 14 & 15 (written confirmations).

### E.    Respondent's Bookmaking Activity

72.    Respondent engages in bookmaking in that it unlawfully accepts bets from members of the public, as a business, upon the outcomes of future contingent events.

73.    Respondent's website shows dozens of contracts that had over $5,000 in transaction volume, including over $5,000 in transaction volume for professional and college sports contracts. *See, e.g.*, Metz Aff. at ¶ 28 and Exs. 16A-B (screenshots), Tomer Aff. at ¶ 9 and Ex. 12 (screenshot).

74.    Respondent has reported a $22 billion valuation of its gambling business and an annualized transaction volume of $178 billion.  Tomer Aff. at ¶ 27, Ex. 28 (Press Release).

75.    Respondent's trade data also reflects that Respondent has received or accepted in one day more than five bets totaling more than $5,000 in wagering.  Tomer Aff. at ¶ 18 & Ex. 19 (trade data excerpt).

### F.    Respondent's Possession of Gambling Records

76.    Respondent provides bettors a written confirmation on Respondent's website after their wagers have been placed, including confirming the event wagered upon, the bettor's wager, the number of wagers placed, the amount wagered, the fees charged, and the date and time of the bet.  Metz Aff. at ¶ 29 and Ex. 8 (screenshot of written confirmation).

77.    Respondent also provides bettors access to electronic records of their bets on Respondent's Platform.  Respondent maintains and provides information on open wagers that have been placed (including, for example, identifying the event wagered upon, the bettor's wager, and the payout if the bettor wins) and historic wagers that have been completed (including identifying

16

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 1    Case 1:26-cv-06550    Document 1-1    Filed 07/31/26    Page 18 of 33    INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 07/31/2026

the event wagered upon, the bettor's wager, the amount wagered, and payouts on successful wagers). Metz Aff. at ¶ 30 and Exs. 17A-B (screenshots).

78.     Respondent has agreed to maintain a record of all bets. Tomer Aff. at ¶ 19, Ex. 20 (Rulebook at 2.14).

79.     Respondent makes available on its website daily "trade data" that reflects electronic records of contracts wagered on a daily basis, including the time and date of each transaction, the contract wagered upon, the price per wager, and the quantity of wagers placed. Tomer Aff. ¶ 18 and Ex. 19 (trade data excerpt).

80.     Respondent's confirmations, electronic records, and trade data are each a writing, paper, instrument or article of a kind commonly used in the operation and promotion of a bookmaking scheme or enterprise.

81.     Respondent's records reflect or represent more than five bets totaling more than $5,000. Metz Aff. at ¶ 28 and Exs. 16A-B (screenshots), Tomer Aff. Ex. 12 (screenshot); Tomer Aff. ¶ 18 and Ex. 19 (trade data excerpt).

*     *     *

82.     As described above, what Respondent offers through its Platform is quintessentially gambling: it allows a bettor to stake or risk money upon the outcome of a contest of chance or a future contingent event not under the bettor's control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome.

83.     The outcome of Respondent's contracts depends to a material degree upon an element of chance, which in fact predominates over any skill of the bettor, notwithstanding that the skill of the bettor may also be a factor.

17

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

84.    Respondent engages in conduct that materially aids gambling activity, including through the creation of its Platform; by offering its Platform in New York and to New Yorkers and others; by soliciting and inducing persons to participate in gambling activity; by providing a means for gambling activity to occur; and by managing, administering, or controlling sports wagering on its Platform.

**IV.    Respondent's Unlicensed Gambling Platform Causes Harm to New York**

85.    Respondent harms New York by offering wagers on its Platform.

86.    As an unlicensed gambling business, Respondent operates without implementing required consumer protections and internal controls that are part of New York's strict regulation of licensed gambling.   These protections include allocating resources to develop and fund programs to combat problem gambling, procedures to prevent underage gambling, restrictions to prevent predatory or deceptive advertising, procedures to identify bettors battling a gambling addiction, and guardrails to allow consumers to exclude themselves from the platform.   *See generally* 9 NYCRR §§ 5300-5330.45.

87.    New York State regulators prioritize consumer protection, implementing detailed measures for responsible gaming, age verification, and problem gambling prevention.  Tomer Aff. at ¶ 20, Ex. 21, at 3-4, 7-8 (New York State Gaming Commission and Office of Addition Services and Supports report).   For example, because sports wagering is prohibited for individuals under 21, licensed operators must have strict procedures to verify the age and identity of bettors.   9 NYCRR §§ 5329.8; 5329.19; 5330.10(d)(5).   Licensed operators must also verify the locations of bettors.   9 NYCRR § 5330.44.   Moreover, the state restricts advertising, marketing, and promoting mobile sports wagering to underage persons, including prohibiting advertising set on college campuses, depicting students, and other restrictions.   Racing Law §1367-a(4)(e); 9 NYCRR §§

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

5329.37; 5330.45.  Ads must display clear information and provide easy access to resources like 1-877-8-HOPENY.  9 NYCRR §§ 5325.6, 5329.37, 5330.34.

88.    These and other numerous safety regulatory mechanisms not enumerated here exist for vital reasons.  A report by the New York State Office of Addiction Services and Supports identified ages 18-24 as a "high-risk population" for gambling addictions.  Tomer Aff. at ¶ 21, Ex. 22 at 3, Table 1 (New York State Office of Addiction Services and Supports, Addiction Data Bulletin, No. 2025-06 (Apr. 2025)).  Between 2000 and 2024, 1-877-8-HOPENY received more than 14,000 helpline calls.  *See id.* at 2, Fig. 1.  "As of 2022, mobile sports betting surpassed casino gambling as the primary reason for gambling-related helpline calls made by New Yorkers."  *Id.* at 1.

89.    Gambling may cause harm to a bettor's financial, emotional, and physical health. The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM 5-TR) recognizes gambling disorder as a persistent and recurring pattern of problematic gambling behavior leading to significant distress or impairment.  *Id.* at 1.  Gambling disorder is the only behavioral addiction (as opposed to chemical substance use disorders) identified in DSM-5-TR.  American Psychiatric Association, Internet Gaming, https://www.psychiatry.org/patients-families/internet-gaming, (last visited, April 19, 2026).

90.    The disorder includes symptoms such as a need to gamble with increasing amounts of money to achieve desired excitement; unsuccessful attempts to stop or control gambling; chasing losses; and lying to conceal the extent of gambling involvement.  Tomer Aff. ¶ 23, Ex. 22 at 1.

91.    The National Council on Problem Gambling's review of gambling addiction studies shows that "[t]he rate of gambling problems among sports bettors is at least twice as high as among

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

gamblers in general" and that when sports wagering takes place online, the rate of problems is even higher. Tomer Aff. at ¶ 24, Ex. 23 at 1 (Nat'l Council on Problem Gambling, A Review of Sports Wagering & Gambling Addiction Studies Executive Summary).

92. The effects of gambling addiction can be devastating. A review of studies analyzing the links between gambling addiction and suicide noted that studies have consistently found that gambling addiction increases the likelihood of suicidality. Tomer Aff. at ¶ 25, Ex. 24 (GamblingHarm.org article). Further, "legalized sports betting amplifies emotional cues, as evidenced by increased [intimate partner violence] when a fan's home team unexpectedly loses." Tomer Aff. at ¶ 25, Ex. 25 at 18 (Emily Arnesen & Kyutaro Matsuzawa, Sports Betting Legalization Amplifies Emotional Cues & Intimate Partner Violence (Oct. 30, 2025)).

93. Prediction markets also create significant risks to the financial well-being of consumers. The financial industry has begun issuing reports of increased financial risks associated with prediction markets, including the "overextension of credit and rising loan defaults." Tomer Aff. at ¶ 26, Ex. 26 (Forbes.com article). An economic research study also found: "The legalization of sports betting has far-reaching consequences for household financial health. It increases credit card balances, reduces available credit, increases lottery play, and decreases net investments in financial markets. These effects are particularly pronounced among financially constrained households." Tomer Aff. at ¶ 26, Ex. 27 at 30 (Scott R. Baker *et al.,* Gambling Away Stability: Sports Betting's Impact on Vulnerable Households (Nov. 2024)).

94. Ultimately, it is these types of harms that the New York Constitution and gambling laws were intended to prevent in New York. Respondent is nonetheless subverting New York's express regime by facilitating gambling in New York without required responsible gambling features mandated for licensed sports wagering operations, and without any oversight by the New

20

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 1

Case 1:26-cv-06550    Document 1-1    Filed 07/31/26    Page 22 of 33

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 07/31/2026

York State Gaming Commission, exposing New Yorkers to gambling addiction with few, if any, safeguards.

## CONCLUSION

95. Respondent, by operating an unlicensed gambling platform as a business, has engaged in repeated and persistent violations of the New York Constitution, New York Penal Law, the Racing Law, and the Wire Act.

96. OAG seeks an order and judgment: (a) permanently enjoining Respondent from continuing to operate a gambling business in New York without being licensed by the New York State Gaming Commission; (b) permanently enjoining Respondent and its principals, agents, and employees from violating the Constitution and laws of the State of New York, including Executive Law § 63(12), Penal Law §§ 225.05, 225.10, 225.20, Racing Law §§ 1367(16)(a), 1367-a(2)(a), 1367-a(4)(b), and 18 U.S.C. § 1084(a); (c) directing Respondent to produce an accounting of total bets placed, monies lost by customers in connection with its gambling business, and gains received by Respondent in connection with its gambling business; (d) directing Respondent to pay restitution, disgorgement and damages; (e) pursuant to Penal Law § 80.10, directing Respondent to pay a penalty of three times the amount of Respondent's gain from the illegal practices alleged herein; (f) pursuant to Racing Law § 1367(16)(a), directing Respondent to pay a penalty of $100,000 for each offering or attempt to offer sports wagering or mobile sports wagering in New York without authorization; (g) pursuant to CPLR § 8303(a)(6), granting costs to New York of $2,000; and (h) granting such other and further relief as the Court deems just and proper.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 1    Case 1:26-cv-06550    Document 1-1    Filed 07/31/26    Page 23 of 33

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 07/31/2026

## EVIDENCE

97.    The Affirmation of K. Brent Tomer sworn to on July 31, 2026, filed herewith and exhibits thereto, summarizes Respondent's illegal business practices.

98.    The Affirmation of Brian Metz, sworn to on July 14, 2026, filed herewith and exhibits thereto, summarizes Respondent's illegal business practices.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

*Pursuant to Executive Law § 63(12) (Repeated and Persistent Illegality)*
*Violations of New York State Constitution Article I, Section 9*

99.    The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

100.    The acts and practices alleged herein constitute conduct proscribed by Executive Law § 63(12) in that Respondent engaged in repeated illegal acts by violating Article I, Section 9 of the New York State Constitution.

101.    Article I, Section 9 of the New York State Constitution prohibits "lotter[ies] or the sale of lottery tickets, pool-selling, book-making, or any other kind of gambling," with certain exceptions.

102.    As set forth above, Respondent violates Article I, Section 9 of the New York State Constitution by operating its gambling Platform.

103.    Respondent's Platform does not fall within any of the exceptions to the gambling prohibition set forth in Article I, Section 9 of New York's Constitution.

104.    By its actions in violation of Article I, Section 9 of the New York State Constitution, Respondent has engaged in repeated and persistent illegal conduct in violation of Executive Law § 63(12).

22

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

## SECOND CAUSE OF ACTION

*Pursuant to Executive Law § 63(12) (Repeated and Persistent Illegality)*
*Violations of New York Penal Law § 225.10*

105.   The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

106.   The acts and practices alleged herein constitute conduct proscribed by Executive Law § 63(12) in that Respondent engaged in repeated illegal acts by violating Penal Law § 225.10.

107.   Penal Law § 225.10 prohibits any person from promoting gambling in the first degree by knowingly advancing or profiting from unlawful gambling activity by engaging in bookmaking to the extent that he receives or accepts in any one day more than five bets totaling more than five thousand dollars.

108.   As set forth above, Respondent violates Penal Law § 225.10 by knowingly advancing and profiting from unlawful gambling activity by receiving and accepting in any one day, and indeed on many days, more than five bets totaling more than five thousand dollars.

109.   By its actions in violation of Penal Law § 225.10, Respondent has engaged in repeated and persistent illegal conduct in violation of Executive Law § 63(12).

## THIRD CAUSE OF ACTION

*Pursuant to Executive Law § 63(12) (Repeated and Persistent Illegality)*
*Violations of New York Penal Law § 225.05*

110.   The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

111.   The acts and practices alleged herein constitute conduct proscribed by Executive Law § 63(12) in that Respondent engaged in repeated illegal acts by violating Penal Law § 225.05.

23

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1    Case 1:26-cv-06550    Document 1-1    Filed 07/31/26    Page 25 of 33

RECEIVED NYSCEF: 07/31/2026

112.    Penal Law § 225.05 prohibits any person from promoting gambling in the second degree by knowingly advancing or profiting from unlawful gambling activity.

113.    As set forth above, Respondent violates Penal Law § 225.05 by knowingly advancing or profiting from unlawful gambling activity.

114.    By its actions in violation of Penal Law § 225.05, Respondent has engaged in repeated and persistent illegal conduct in violation of Executive Law § 63(12).

## FOURTH CAUSE OF ACTION

*Pursuant to Executive Law § 63(12) (Repeated and Persistent Illegality)*
*Violations of New York Penal Law § 225.20*

115.    The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

116.    The acts and practices alleged herein constitute conduct proscribed by Executive Law § 63(12) in that Respondent engaged in repeated illegal acts by violating Penal Law § 225.20.

117.    Penal Law § 225.20 prohibits any person from possessing gambling records in the first degree when, with knowledge of the contents thereof, he possesses any writing, paper, instrument or article of a kind commonly used in the operation or promotion of a bookmaking scheme or enterprise, and constituting, reflecting or representing more than five bets totaling more than five thousand dollars.

118.    As set forth above, Respondent violates Penal Law § 225.20 by, with knowledge of the contents thereof, possessing any writing, paper, instrument or article of a kind commonly used in the operation or promotion of a bookmaking scheme or enterprise and constituting, reflecting or representing more than five bets totaling more than five thousand dollars.

119.    To wit, Respondent maintains email confirmations, electronic records, and trade data reflecting or representing more than five bets totaling more than five thousand dollars.

24

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 1    Case 1:26-cv-06550    Document 1-1    Filed 07/31/26    Page 26 of 33

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 07/31/2026

120.     By its actions in violation of Penal Law § 225.20, Respondent has engaged in repeated and persistent illegal conduct in violation of Executive Law § 63(12).

## FIFTH CAUSE OF ACTION

*Pursuant to Executive Law § 63(12) (Repeated and Persistent Illegality)*
*Violations of Racing Law § 1367(16)(a)*

121.     The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

122.     The acts and practices alleged herein constitute conduct proscribed by Executive Law § 63(12) in that Respondent engaged in repeated illegal acts by violating Section 1367(16)(a) of the Racing Law.

123.     Section 1367(1)(x) of the Racing Law defines sports wagering to mean "wagering on sporting events or any portion thereof . . . by any system or method of wagering, including but not limited to . . . electronic communications through internet websites accessed via a mobile device or computer and mobile device applications . . . ."

124.     Section 1367 of the Racing Law makes it a violation for any person, firm, corporation, association, agent, or employee, who is not authorized to offer sports wagering under Sections 1367 or 1367-a of the Racing Law, to offer or attempt to offer sports wagering or mobile sports wagering in New York.  Racing Law § 1367(16)(a).

125.     Respondent is not licensed with the New York State Gaming Commission in any capacity and is not otherwise authorized to offer sports wagering under Sections 1367 or 1367-a of the Racing Law in New York.

126.     As set forth above, Respondent knowingly offers or attempts to offer sports wagering or mobile sports wagering in New York.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

127. By its actions in violation of Section 1367(16)(a) of the Racing Law, Respondent has engaged in repeated and persistent illegal conduct, in violation of Executive Law § 63(12).

## SIXTH CAUSE OF ACTION

*Pursuant to Executive Law § 63(12) (Repeated and Persistent Illegality)*
*Violations of Racing Law § 1367-a(2)(a)*

128. The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

129. The acts and practices alleged herein constitute conduct proscribed by Executive Law § 63(12) in that Respondent engaged in repeated illegal acts by violating Section 1367-a(2)(a) of the Racing Law.

130. Section 1367-a(2)(a) of the Racing Law prohibits any entity from "administer[ing], manag[ing], or otherwise mak[ing] available a mobile sports wagering platform to persons located in New York state" unless the entity is licensed with the New York State Gaming Commission.

131. Respondent is not licensed with the New York State Gaming Commission in any capacity.

132. As set forth above, Respondent is administering, managing, or otherwise making available a mobile sports wagering platform to persons located in New York.

133. Respondent's conduct in violation of Section 1367-a(2)(a) includes making available and offering sports wagering based on prohibited sports events, which is prohibited.

134. Respondent's conduct in violation of Section 1367-a(2)(a) includes making available and permitting sports wagering by persons Respondent knew, or should have known, to be a prohibited sports bettor, to wit, minors between the ages of 18 and 21, which is prohibited.

135. By its actions in violation of Section 1367-a(2)(a), Respondent has engaged in repeated and persistent illegal conduct, in violation of Executive Law § 63(12).

26

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

## SEVENTH CAUSE OF ACTION

*Pursuant to Executive Law § 63(12) (Repeated and Persistent Illegality)*
*Violations of Racing Law § 1367-a(4)(b)*

136.    The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

137.    The acts and practices alleged herein constitute conduct proscribed by Executive Law § 63(12), in that Respondent engaged in repeated illegal acts by violating Section 1367-a(4)(b) of the Racing Law.

138.    Section 1367-a(4)(b) of the Racing Law prohibits any entity from "directly or indirectly operat[ing] an unlicensed sports wagering platform in the state of New York."

139.    Section 1367-a(4)(b) of the Racing Law also prohibits any entity from "advertis[ing] or promot[ing] such unlicensed platform to persons located in the state of New York."

140.    Respondent is not licensed with the New York State Gaming Commission in any capacity.

141.    As set forth above, Respondent has been directly or indirectly operating a sports wagering platform in New York since at least January 23, 2025.

142.    As set forth above, Respondent advertises or promotes its unlicensed sports wagering platform to persons located in New York.

143.    By virtue of its conduct alleged above, Respondent has engaged in repeated and persistent violations of Section 1367-a(4)(b) by operating an unlicensed sports wagering platform in the state of New York, in violation of Executive Law § 63(12).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 1     Case 1:26-cv-06550     Document 1-1     Filed 07/31/26     Page 29 of 33     INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 07/31/2026

144. By virtue of its conduct alleged above, Respondent has engaged in repeated and persistent violations of Section 1367-a(4)(b) by advertising or promoting such unlicensed platform to persons located in the state of New York, in violation of Executive Law § 63(12).

145. By virtue of its conduct alleged above, Respondent has engaged in repeated and persistent violations of Section 1367-a(4)(b) by advertis[ing] or promot[ing] such unlicensed platform to persons located in the state of New York."

## EIGHTH CAUSE OF ACTION
*Pursuant to Executive Law § 63(12) (Repeated and Persistent Illegality)*
*Violations of The Federal Interstate Wire Act, 18 U.S.C. § 1084(a)*

146. The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

147. The acts and practices alleged herein constitute conduct proscribed by Executive Law § 63(12), in that Respondent engaged in repeated illegal acts by violating the Federal Interstate Wire Act, 18 U.S.C. § 1084(a).

148. The Federal Interstate Wire Act, 18 U.S.C. § 1084(a), prohibits those engaged in the business of betting or wagering from knowing use of a wire communication facility for the transmission in interstate commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers.

149. By virtue of its conduct alleged above, Respondent has engaged in the business of betting or wagering and has knowingly used a wire communication facility, namely, the internet, to transmit in interstate commerce bets or wagers or information assisting in the placing of bets or wagers on sporting events or contests, and has transmitted wire communications which

28

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

entitled the recipients to receive money or credit as a result of bets or wagers in violation of 18 U.S.C. § 1084(a).

150.    Respondent's violations of 18 U.S.C. § 1084(a) constitute repeated and persistent illegal conduct in violation of Executive Law § 63(12).

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner respectfully demands that the Court issue an order and judgment against Respondent as follows:

A. Permanently enjoining Respondent and its principals, agents, and employees from operating an unlawful gambling business, or otherwise advancing gambling activity, or profiting from gambling activity, within or from New York or to persons in New York, without being licensed by the New York State Gaming Commission including, but not limited to, by:

  a. operating a business that offers contracts relating to sports, culture, elections, and other events without obtaining all the required licenses from the New York State Gaming Commission;

  b. permitting wagering by persons under the age of 21 in connection with any contract on those events; and

  c. advertising, promoting, marketing, or soliciting participation (including promoting or advertising in college or university-owned news assets (*e.g.*, school newspapers, radio, telecasts) or on college or university campuses), in connection with any contract on those events;

B. Permanently enjoining Respondent and its principals, agents, and employees from violating the New York State Constitution Article 1, Section 9; Penal Law §§ 225.05,

29

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

225.10, and 225.20; Racing, Pari-Mutuel Wagering and Breeding Law §§ 1367(16)(a), 1367-a(2)(a), 1367-a(4)(b); the Wire Act, 18 U.S.C. § 1084(a); and Executive Law § 63(12)

C. Directing Respondent to produce an accounting identifying each of its customers and itemizing bets placed by customers, monies lost by customers, and gains received by Respondent in connection with or as a result of the violations of law alleged herein;

D. Directing Respondent to make full restitution to customers who have engaged in betting on Respondent's platform;

E. Directing Respondent to pay damages caused, directly or indirectly, by the repeated and persistent illegality complained of herein;

F. Directing Respondent to disgorge all amounts obtained in connection with or as a result of the violations of law alleged herein;

G. Directing Respondent to pay a penalty of three times the amount of its gain from the violations of law alleged herein, pursuant to Penal Law § 80.10;

H. Directing Respondent to pay a penalty of one hundred thousand dollars ($100,000) for each offering or attempt to offer sports wagering or mobile sports wagering within or from New York without authorization, pursuant to Racing Law § 1367(16)(a);

I. Directing Respondent to pay prejudgment interest;

J. Awarding costs to Petitioner of two thousand dollars ($2,000) pursuant to CPLR § 8303(a)(6);

K. Authorizing Petitioner to docket as a money judgment any order issued by the Court on this motion fixing the amount of money owed by Respondent, including restitution, disgorgement, damages, penalties and costs, pursuant to CPLR § 2222; and

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)     INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1    Case 1:26-cv-06550    Document 1-1    Filed 07/31/26    Page 32 of 33    RECEIVED NYSCEF: 07/31/2026

          L.  Granting such other and further relief as the Court deems just and proper.

Dated:  New York, New York
          July 31, 2026

LETITIA JAMES
Attorney General of the State of New York


By:  *s/ K. Brent Tomer*
    K. Brent Tomer
    Assistant Attorney General
    28 Liberty Street
    New York, New York 10005
    Tel.: (212) 416-8081

    Alejandra de Urioste
    Assistant Attorney General

    Nina Varindani
    Assistant Attorney General

    Tanya Trakht
    Senior Enforcement Counsel

    Kenneth Haim
    Deputy Bureau Chief

    Shamiso Maswoswe
    Chief of the Investor Protection Bureau

    *Counsel for the People of the State of New York*

31

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 1

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 07/31/2026

Case 1:26-cv-06550   Document 1-1   Filed 07/31/26   Page 33 of 33

# VERIFICATION

1. I, K. Brent Tomer, Esq., am an Assistant Attorney General in the office of Letitia James, Attorney General of the State of New York, and I am duly authorized to make this verification.

2. I affirm this 31st day of July, 2026, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, except as to matters alleged on information and belief and as to those matters I believe it to be true, and I understand that this document may be filed in an action or proceeding in a court of law.

3. The reason this verification is not made by Petitioner is that Petitioner is a body politic. The Attorney General is Petitioner's statutory representative.

_____
K. Brent Tomer

32

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.