# Exhibit B

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2    Case 1:26-cv-06550    Document 1-2    Filed 07/31/26    Page 2 of 50

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 07/31/2026

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------------x

PEOPLE OF THE STATE OF NEW YORK,
by LETITIA JAMES, Attorney General
of the State of New York,

          Petitioner,

      - against -

KALSHIEX LLC,

          Respondent.

Index No.

-----------------------------------------------------------------------x

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF THE VERIFIED PETITION AND ORDER TO SHOW CAUSE

LETITIA JAMES
Attorney General of the State of New York
28 Liberty Street
New York, NY 10005

*Of Counsel*:

K. BRENT TOMER
Assistant Attorney General

ALEJANDRA DE URIOSTE
Assistant Attorney General

NINA VARINDANI
Assistant Attorney General

TANYA TRAKHT
Senior Enforcement Counsel

KENNETH J. HAIM
Deputy Bureau Chief

SHAMISO MASWOSWE
Chief, Investor Protection Bureau

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2     Case 1:26-cv-06550     Document 1-2     Filed 07/31/26     Page 3 of 50

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 07/31/2026

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iv

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND .............................................................................................................. 4

STATEMENT OF FACTS ............................................................................................... 4

    I.   New York Closely Regulates Gambling ................................................................. 4

    II.  Respondent Operates an Unlicensed Gambling Platform .................................... 7

        A.  Respondent Promotes Gambling ................................................................ 7

        B.  Overview of Respondent's Platform .......................................................... 8

        C.  Opening an Account on Respondent's Platform ........................................ 9

        D.  Betting on Respondent's Platform .......................................................... 10

        E.  Respondent's Bookmaking Activity ........................................................ 11

        F.  Respondent's Possession of Gambling Records ...................................... 12

    III. Respondent's Unlicensed Gambling Platform Causes Harm to New York ....... 12

ARGUMENT .................................................................................................................. 15

    I.   Executive Law § 63(12) Enables the Attorney General to Achieve Prompt and
       Comprehensive Relief .......................................................................................... 15

    II.  Respondent Engaged in Repeated and Persistent Illegality in Violation of Executive
       Law § 63(12) ........................................................................................................ 16

        A.  Respondent Violates New York State Constitution Article I, Section 9 ..... 17

        B.  Respondent Violates New York Penal Law ............................................ 19

            1.  Respondent's Business Involves Unlawful Gambling ......................... 19

            2.  Respondent Is Promoting Gambling in the Second Degree .................. 22

            3.  Respondent Is Promoting Gambling in the First Degree ..................... 23

            4.  Respondent Possesses Gambling Records in the First Degree ............. 24

        C.  Respondent Violated New York Racing, Pari-Mutuel Wagering and Breeding
           Law ......................................................................................................... 25

            1.  Respondent Offers and Attempts to Offer Sports Wagering or Mobile Sports
               Wagering in New York in Violation of Racing Law § 1367(16)(a) ..... 26

            2.  Respondent Administers, Manages, and Makes Available an Unlicensed
               Mobile Sports Wagering Platform to Persons Located in New York in
               Violation of Racing Law § 1367-a(2)(a) ............................................ 27

            3.  Respondent Operates an Unlicensed Sports Wagering Platform in New York
               in Violation of Racing Law § 1367-a(4)(b) ........................................ 28

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 2    Case 1:26-cv-06550    Document 1-2    Filed 07/31/26    Page 4 of 50

INDEX NO. UNASSIGNED
RECEIVED NYSCEF: 07/31/2026

4.  Respondent Promotes an Unlicensed Sports Wagering Platform to Persons in New York in Violation of Racing Law § 1367-a(4)(b) ..........................................28

D.  Respondent Violated the Wire Act, 18 USC § 1084(a) ....................................29

III. The Court Should Grant OAG's Request for Temporary and Preliminary Injunctive Relief..............................................................................................................31

A.  OAG Has Demonstrated Likelihood of Success on the Merits ..................................32

B.  Irreparable Harm to New York Will Result if Preliminary Injunctive Relief is Denied ...........................................................................................................33

C.  The Balance of Equities Favors Preliminary Relief .....................................................34

IV. The Court Should Order a Permanent Injunction, an Accounting, Restitution, Disgorgement, Damages, Penalties, and Costs...............................................................35

A.  The Court Should Order Permanent Injunctive Relief .................................................35

B.  The Court Should Order Respondent to Provide an Accounting...................................36

C.  The Court Should Order Respondent to Pay Restitution, Disgorgement, Damages, and Penalties ..............................................................................................................37

D.  The Court Should Award OAG Costs ...........................................................................38

CONCLUSION...........................................................................................................................39

iii

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

# TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*City of New York v Smart Apts. LLC*,
    39 Misc 3d 221 (Sup Ct, NY County 2013) ...............................................................34

*Commonwealth v Kalshiex, LLC*,
    2026 Mass. Super. LEXIS 2 (Jan. 20, 2026, No. 2584CV02525) ..............................3

*Freedom Discount Corp. v Korn*,
    28 AD2d 517, 279 NYS2d 774 (1st Dept 1967)........................................................16

*FTC v Warner Communications, Inc.*,
    742 F2d 1156 (9th Cir 1984) ...................................................................................34

*KalshiEX LLC v Martin*,
    793 F Supp 3d 667 (D Md 2025),  ......................................................................3, 30

*KalshiEX LLC v Orgel*,
    2026 US Dist LEXIS 33927 (MD Tenn Feb. 19, 2026, No. 3:26-cv-00034)..............3

*KalshiEX, LLC v Flaherty*,
    2026 US App LEXIS 9948 (3d Cir Apr. 6, 2026, No. 25-1922) ...............................3

*Kalshiex, LLC v Schuler*,
    2026 US Dist LEXIS 47876 (SD Ohio Mar. 9, 2026, No. 2:25-CV-1165)..............3

*Kalshiex, LLC v Williams*,
    2026 US Dist LEXIS 149977 (SDNY July 7, 2026, No. 25-cv-8846)...............3, 4

*Matter of Council of City of NY v Bloomberg*,
    6 NY3d 380 (2006) .................................................................................................15

*Matter of Pace-o-matic, Inc. v NY State Liq. Auth.*,
    72 AD3d 1144 (3d Dept 2010) ...............................................................................20

*Matter of People of the State of NY v Applied Card Sys., Inc.*,
    11 NY3d 105 (2008) ...............................................................................................37

*Matter of State of New York v Ford Motor Co.*,
    136 AD2d 154 (3rd Dept 1988)...............................................................................37

*Matter of State of New York v Maiorano*,
    189 AD2d 766 (2d Dept 1993) ...............................................................................37

*Matter of State of New York v Midland Equities of NY, Inc.*,
    117 Misc 2d 203, 458 NYS2d 126 (Sup Ct, NY County 1982) ...............................38

iv

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 2   Case 1:26-cv-06550   Document 1-2   Filed 07/31/26   Page 6 of 50   RECEIVED NYSCEF: 07/31/2026

*Matter of State of New York v Scottish-American Assn.*,
52 AD2d 528 (1st Dept 1976)........................................................................38

*Meyers Bros. Parking Sys., Inc. v Sherman*,
87 AD2d 562 (1st Dept 1982), *affd* 57 NY2d 653 (1982).......................................38

*Murphy v NCAA*,
584 US 453 (2018)..............................................................................5, 30

*New York v Feldman*,
210 F Supp 2d 294 (SDNY 2002) ................................................................37

*New York v Puff Bar*,
2026 US Dist LEXIS 71233 (SDNY Mar. 31, 2026, No. 25-CV-01445
(MMG))........................................................................................16

*People by Abrams v Apple Health & Sports Clubs, Ltd.*,
174 AD2d 438 (1st Dept 1991), *affd* 80 NY2d 803 (1992)................................31

*People by Abrams v Ford Motor Co.*,
74 NY2d 495 (1989)............................................................................36

*People by James v Scores*,
79 Misc 3d 1118 (Sup Ct, Dutchess County 2023) ......................................36

*People by Koppell v Empyre Inground Pools*,
227 AD2d 731 (3d Dept 1996)............................................................17, 36

*People by Lefkowitz v Daro Chartours, Inc.*,
72 AD2d 872 (3d Dept 1979) ........................................................16, 36, 38

*People v Abortion Info. Agency, Inc.*,
69 Misc 2d 825, 323 NYS2d 597 (Sup Ct, NY County 1971), *affd* 37 AD2d
142 (1st Dept 1971) ........................................................................31

*People v Apple Health & Sports Clubs*,
206 AD2d 266 (1st Dept 1994)..............................................................16

*People v B. C. Assoc., Inc.*,
22 Misc 2d 43, 194 NYS2d 353 (Sup Ct, NY County 1959) ................................15

*People v Brady*,
189 AD2d 884 (2d Dept 1993) ..............................................................25

*People v Castro*,
143 Misc 2d 766 (Sup Ct, NY County 1989) ................................................34

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

*People v Court Reporting Inst.*,
240 AD2d 413 (2d Dept 1997) ..................................................................................31

*People v Dell, Inc.*,
21 Misc 3d 1110(A), 873 NYS2d 236 (Sup Ct, Albany County 2008).......................35

*People v Empire Prop. Solutions., LLC*,
2012 NY Slip Op 30346(U), 2012 NY Misc LEXIS 652 (Sup Ct, Nassau
County Jan. 27, 2012) .................................................................................................31

*People v Fanduel, Inc.*,
2015 NY Slip Op 32332(U), 2015 NY Misc LEXIS 4521 (Sup Ct, NY County
Dec. 11, 2015)........................................................................................................ passim

*People v Federated Radio Corp.*,
244 NY 33 (1926) .......................................................................................................15

*People v Gagnon Bus Co., Inc.*,
30 Misc 3d 1225(A), 2011 NY Slip Op 50206(U) (Sup Ct, Queens County
Jan. 18, 2011) .............................................................................................................15

*People v Giordano*,
87 NY2d 441 (1995) ...................................................................................................22

*People v Greenberg*,
27 NY3d 490 (2016) ........................................................................................15, 34, 35

*People v Greenberg*,
43 Misc 3d 1229(A), 993 NYS2d 645 (Sup Ct, NY County 2014), *affd* 127
AD3d 529 (1st Dept 2015)...........................................................................................37

*People v Greenberg*,
95 AD3d 474 (1st Dept 2012), affd 21 NY3d 439 (2013)...........................................15

*People v Lloyd*,
2016 NY Misc LEXIS 10773 (Sup Ct, Erie County Feb. 1, 2016, No.
800723/2016) ..............................................................................................................31

*People v Princess Prestige Co.*,
42 NY2d 104 (1977) ..............................................................................................35, 37

*People v P.U. Travel, Inc.*,
2003 NY Misc LEXIS 2010 (Sup Ct, NY County June 19, 2003)..................................15, 31

*People v Remedial Educ., Inc.*,
70 Misc 2d 1068 (Sup Ct, NY County 1972) ............................................................31

vi.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

*People v Saksniit*,
69 Misc 2d 554 (Sup Ct, NY County 1972) ...............................................................31

*People v Sec. Elite Group, Inc.*,
2019 NY Slip Op 33068(U), 2019 NY Misc LEXIS 5556 (Sup Ct, NY County
Oct. 15, 2019) ..................................................................................................31, 36

*People v Telehublink Corp.*,
301 AD2d 1006 (3d Dept 2003) ...............................................................................37

*People v Terry Buick, Inc.*,
137 Misc 2d 290, 520 NYS2d 497 (Sup Ct, Dutchess County 1987) ......................31

*People v Therapeutic Hypnosis*,
83 Misc 2d 1068 (Sup Ct, Albany County 1975) .....................................................38

*People v Turner*,
165 Misc 2d 222 (Crim Ct, New York County 1995) ...............................................20

*People v Veleanu*,
89 AD3d 950 (2d Dept 2011) ...................................................................................36

*People v Wilco Energy Corp.*,
284 AD2d 469 (2d Dept 2001) .................................................................................16

*People v World Interactive Gaming Corp.*,
185 Misc 2d 852 (Sup Ct, NY County 1999) ..................................................... passim

*QCX LLC v. Nessel*,
2026 U.S. Dist. LEXIS 147923 (W.D. Mich. Jun. 17, 2026, No. 26-cv-710)...........3

*Saratoga County Chamber of Commerce v Pataki*,
100 NY2d 801 (2003) .................................................................................................4

*United States v Cohen*,
260 F3d 68 (2d Cir 2001)....................................................................................29, 30

*United States v Lyons*,
740 F3d 702 (1st Cir 2014).......................................................................................29

*White v Cuomo*,
38 NY3d 209 (2022) .............................................................................................17, 18

**CONSTITUTIONS**

NY Const Art I, § 9................................................................................................. passim

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)     INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 2     Case 1:26-cv-06550     Document 1-2     Filed 07/31/26     Page 9 of 50     RECEIVED NYSCEF: 07/31/2026

## FEDERAL STATUTES

7 USC
§1 ............................................................................................................................3

18 USC
§ 1084(a) ............................................................................................... passim
§ 1084(b) ............................................................................................................29

## STATE STATUTES

### *CPLR*

Article 4 ..............................................................................................................15
§409 ....................................................................................................................15
§ 410 ....................................................................................................................15
§ 8303(a)(6) .........................................................................................................38

### *Executive Law*

§ 63(12) ................................................................................................. passim

### *Penal Law*

Article 225 ...................................................................................................16, 18
§ 15.20(2) ............................................................................................................22
§ 80.10 .................................................................................................................38
§ 80.10(1)(e) ........................................................................................................38
§ 225.00(1) ...........................................................................................................21
§ 225.00(2) .........................................................................................2, 5, 20, 21
§ 225.00(4) ...........................................................................................................22
§ 225.00(5) ...........................................................................................................23
§ 225.00(6) ...........................................................................................................20
§ 225.00(9) ...........................................................................................................24
§ 225.05 ................................................................................................... passim
§ 225.10 ................................................................................................... passim
§ 225.15 .........................................................................................................5, 16, 25
§ 225.20 ................................................................................................... passim
§ 225.35(1) ...........................................................................................................25

### *Racing, Pari-Mutuel Wagering and Breeding Law*

§ 104(1) .................................................................................................................5
§ 104(24) ...............................................................................................................5
§ 1367 ..............................................................................................................5, 25
§ 1367(1) ..............................................................................................................27
§ 1367(1)(j) ......................................................................................................6, 33
§ 1367(1)(k) ..........................................................................................................27

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

§ 1367(1)(s) ........................................................................................................................6

§ 1367(1)(t) ......................................................................................................................26

§ 1367(1)(x) ..................................................................................................................5, 26

§ 1367(2)(d) ....................................................................................................................5, 6

§ 1367(16)(a) ............................................................................................................. passim

§ 1367-a ...................................................................................................................5, 26, 27

§ 1367-a(1)(a) ..................................................................................................................27

§ 1367-a(2)(a) ........................................................................................................... passim

§ 1367-a(2)(d) ....................................................................................................................5

§ 1367-a(4)(a)(iii) ..............................................................................................................6

§ 1367-a(4)(a)(xi) ..............................................................................................................6

§ 1367-a(4)(b) ........................................................................................................... passim

§ 1367-a(4)(c) ..............................................................................................................6, 33

§ 1367-a(4)(d) ....................................................................................................................6

§ 1367-a(4)(e) ............................................................................................................13, 33

**RULES**

***9 NYCRR***

§§ 5300-5330.45 ...............................................................................................................13

§ 5325.6 ............................................................................................................................13

§ 5329.19 .....................................................................................................................13, 33

§ 5329.37 .............................................................................................................13, 16, 33

§ 5329.8 .......................................................................................................................13, 33

§ 5330.10(d)(5) ...........................................................................................................13, 33

§ 5330.34 ..........................................................................................................................13

§ 5330.44 .....................................................................................................................13, 33

§ 5330.45 .............................................................................................................13, 16, 33

***22 NYCRR § 202.8-b*** .............................................................................................. 39, 40

**MISCELLANEOUS AUTHORITIES**

David D. Siegel & Patrick M. Connors, *New York Practice* § 547 (6th ed 2018) .........................15

Robert S. Lyons, *On Any given Sunday: A Life of Bert Bell* (Temple Univ. Press 2010) ........................................................................................................................18

ix

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 07/31/2026

Case 1:26-cv-06550    Document 1-2    Filed 07/31/26    Page 11 of 50

Petitioner People of the State of New York by its attorney Letitia James, Attorney General of the State of New York ("OAG" or "Petitioner"), submits this Memorandum of Law in support of the Verified Petition and its Order to Show Cause. OAG moves the Court for a temporary restraining order ("TRO") and a preliminary and permanent injunction to immediately halt the ongoing illegal activities of KalshiEX LLC ("Respondent" or "Kalshi"), a Delaware limited liability company engaged in operating an unlicensed gambling platform as a business in New York. Respondent continues to engage in and offer wagering, including sports wagering and mobile sports wagering without the requisite licensure in violation of Executive Law § 63(12); NY CLS Const Art I, § 9; New York Penal Law §§ 225.05, 225.10, and 225.20; New York Racing, Pari-Mutuel Wagering and Breeding Law §§ 1367(16)(a), 1367-a(2)(a), and 1367-a(4)(b) (hereinafter "Racing Law"); and the Federal Interstate Wire Act, 18 USC § 1084(a) (hereinafter "the Wire Act").

OAG submits this Memorandum of Law and the accompanying Affirmation of Kenneth Brent Tomer dated July 31, 2026, with exhibits;[1] the accompanying Affirmation of Brian Metz dated July 14, 2026, with exhibits; and the accompanying Affirmation of Emergency of Shamiso Maswoswe dated July 31, 2026, in support of the Verified Petition and Petitioner's request for a TRO.

## PRELIMINARY STATEMENT

The New York State Constitution prohibits gambling, with limited exceptions. The reasoning behind this is simple: gambling is addictive, especially to minors and other vulnerable New Yorkers. The consequences of gambling can have devastating impacts on individuals and their families and communities both financially and psychologically.

---

[1] References herein to "Tomer Aff." refer to the Affirmation of Kenneth Brent Tomer filed in support of this Petition and its accompanying exhibits ("Ex."). References herein to "Metz Aff." refer to the Affirmation of Brian Metz filed in support of this Petition and its accompanying exhibits.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 2    Case 1:26-cv-06550    Document 1-2    Filed 07/31/26    Page 12 of 50    RECEIVED NYSCEF: 07/31/2026

New York has a long history of policing gambling within its borders. New York allows certain gambling businesses, including mobile sports operators, to operate once licensed by the New York State Gaming Commission. Licensed mobile sports wagering operators are subject to stringent requirements, including prohibiting underage gambling and betting on sporting events involving New York college teams, and implementing safeguards to protect consumers and institute internal controls. Additionally, New York taxes sports wagering revenue at 51% and uses it to fund New York public schools, sports programs for underserved youth, and problem gambling education and treatment.

Respondent first launched its prediction market in July 2021, announcing that the public could "now buy 'Yes' or 'No' positions on whether an event will happen, from 'Will the Tokyo Olympics be canceled', to 'Will more Americans get vaccinated this week than last week?'" On January 23, 2025, Respondent announced the launch of sports "trading." Respondent encouraged the public to "view live sports (and bet)" on its unlicensed gambling platform (the "Platform"). Respondent advertised that it offered "[l]egal sports markets, accessible to Americans in all 50 states," although unlicensed gambling operations are illegal in New York. The Platform invites bettors from all over the country, including New York, to gamble away their hard-earned money betting on sports, culture, and election events, such as whether the Green Bay Packers will win a football game against the New York Giants or who will win this season of the reality show Big Brother, and which candidate will win a primary election. Respondent's business comes at the expense of individuals most vulnerable to gambling addiction, specifically those between the ages of 18 and 21 and those lured by the possibility of easy money but unprepared to sustain the losses.

Under New York law, a person "engages in gambling when he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome." Penal Law § 225.00(2). Respondent is enabling gambling in New York in blatant violation of New York laws designed to limit the potential harms of gambling

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

through carefully crafted legislation, strict enforcement, and making resources known and available to those who suffer from gambling addiction.

Respondent attempts to evade New York laws by offering what is quintessentially gambling under the guise of "event contracts" on a "prediction market." But Respondent's sports, culture, and election contracts fit squarely into the definition of gambling, and Respondent should not be allowed to avoid the legal and financial consequences of operating a gambling business in New York.[2]

Respondent is breaking New York law and monetizing it into a business reportedly valued at $22 billion with an annualized transaction volume of $178 billion. *See* Tomer Aff. ¶ 27, Ex. 28 (Press Release). As a result, OAG requests that the Court issue a TRO to immediately prevent Respondent from continuing to operate an unlawful gambling business in New York without being licensed by the New York State Gaming Commission, along with other relief. OAG is entitled to

---

[2] Respondent has recently argued in litigation across the country that all state regulation of gambling is preempted by the Commodity Exchange Act, 7 USCS § 1, *et seq.* ("CEA"). The majority of courts that have considered this argument have rejected it, including, most recently, the U.S. District Court for the Southern District of New York in an action by Respondent seeking to enjoin the New York State Gaming Commission from enforcing New York gambling laws against it. *See KalshiEX LLC v. Williams*, No. 25-cv-8846, 2026 US Dist LEXIS 149977 (SDNY July 7, 2026) (denying preliminary injunction), *corrected in part by* Order, Dkt. No. 109 (July 13, 2026), *appeal docketed* No. 26-1835 (2d. Cir. July 8, 2026); *see also QCX LLC v. Nessel*, No. 1:26-cv-710, 2026 U.S. Dist. LEXIS 147923, at *34-46 (WD Mich Jun. 17, 2026) (holding no express field, or implied preemption of state gambling law by the CEA); *KalshiEX LLC v Martin*, 793 F Supp 3d 667 (D Md 2025), *appeal docketed* No. 25-1892 (4th Cir Aug. 6, 2025) (holding that the CEA does not reflect a clear and manifest congressional intent to occupy the field of sports gambling regulation, particularly given the strong presumption against preemption in areas of traditional state police power); *Kalshiex, LLC v Schuler*, 2026 US Dist LEXIS 47876, at *15-24 (SD Ohio Mar. 9, 2026, No. 2:25-CV-1165) (finding no preemption of state sports-gambling laws); *Commonwealth of Massachusetts v Kalshiex, LLC*, No. 2584CV02525, 2026 Mass Super LEXIS 2, at *12-20 (Mass Super Jan. 20, 2026) (finding no field or conflict preemption of state sports gambling law by CEA), *appeal docketed*, No. SJC-13906 (Mar. 5, 2026). *But see KalshiEX LLC v Flaherty*, No. 25-1922, 2026 US App LEXIS 9948 (3d Cir Apr. 6, 2026) (holding that New Jersey regulation of sports-related event contracts on a CFTC-licensed DCM is both field and conflict preempted by the CEA); *see also KalshiEX LLC v Orgel*, No. 3:26-cv-00034, 2026 US Dist LEXIS 33927, at *27 (MD Tenn Feb. 19, 2026), (holding that conflict preemption applies because "application of state law would directly affect trading on or the operation of a futures market.'"). Should Respondent assert this defense here OAG will, of course, respond at the appropriate time.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

this preliminary relief as it has a strong likelihood of success on the merits and the balance of the equities and public interest weigh strongly in its favor.

## BACKGROUND

On October 24, 2026, the New York State Gaming Commission demanded that Respondent cease and desist from "illegally operating, advertising, promoting, administering, managing, or otherwise making available an unlicensed mobile sports wagering platform in New York State . . . ." Tomer Aff. at ¶ 15, Ex. 17B (cease and desist demand). Instead of ceasing its operations, on October 27, 2025, Respondent sued the New York State Gaming Commission and its Commissioners in the U.S. District Court for the Southern District of New York seeking to enjoin the New York State Gaming Commission from enforcing its cease and desist demand. *See* Compl., *KalshiEX LLC v. Williams et al.*, 25-cv-08846-AT (S.D.N.Y. Oct. 27, 2025), Dkt No. 1. On October 28, 2025, the New York State Gaming Commission agreed to refrain from undertaking enforcement action against Respondent regarding any conduct described in the cease and desist pending the ruling on Respondent's injunction in that case. *Id.*, Dkt. No. 34. On July 7, 2026, the court denied Respondent's motion for preliminary injunction, *KalshiEX LLC v. Williams,* No. 25-cv-08846-AT, 2026 U.S. Dist. LEXIS 149977, at *31 (July 7, 2026)*, *corrected in part by* Order, Dkt. No. 109 (July 13, 2026), *appeal docketed* No. 26-1835 (2d. Cir. July 8, 2026), and on July 27, 2026, the court denied Respondent's motion for an injunction pending appeal, *see* Order, Dkt. No. 113, *KalshiEX LLC v. Williams et al.*, 25-cv-08846-AT (S.D.N.Y. July 27, 2027).

## STATEMENT OF FACTS

### I.  New York Closely Regulates Gambling

New York has policed gambling for over 250 years, since 1771. *See Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 825-830 (2003)* (Smith, J., concurring in part) (providing history of New York's anti-gaming laws). The New York Constitution prohibits gambling in all forms not specifically enumerated. The New York Constitution states:

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

[E]xcept as hereinafter provided, no lottery or the sale of lottery tickets, pool-selling, book-making, or any other kind of gambling, except lotteries operated by the state . . . , except pari-mutuel betting on horse races . . . , and except casino gambling at no more than seven facilities . . . shall hereafter be authorized or allowed within this state; and the legislature shall pass appropriate laws to prevent offenses against any of the provisions of this section.

NY CLS Const Art I, § 9.  New York's Penal Law similarly has long recognized crimes for promoting gambling activity, Penal Law §§ 225.05, 225.10, and crimes for possession of gambling records, Penal Law §§ 225.15, 225.20.  Gambling is broadly defined under New York Penal Law. A person "engages in gambling when he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome."  Penal Law § 225.00(2).

In 2019, following the U.S. Supreme Court's recognition of states' rights to authorize and regulate sports wagering within their borders, see Murphy v National Collegiate Athletic Assn, 584 US 453 (2018), New York enacted a comprehensive regulatory regime for mobile sports wagering, see Racing Law §§ 1367, 1367-a.  The New York State Gaming Commission has general jurisdiction over all gaming activities within New York and over the corporations, associations and persons engaged therein, including, specifically, the regulation of sports wagering.  Racing Law §§ 104(1), (24).  New York's nine mobile sports licensees are subject to significant statutory and regulatory requirements under Section 1367-a of the Racing Law.  Mobile sports wagers made through virtual or electronic means must be made through mobile sports wagering licensees from a location within the state and transmitted to and accepted by electronic equipment located at a licensed commercial casino gaming facility in the state.  See Racing Law §§ 1367(2)(d), 1367-a(2)(d).

Under the Racing Law, sports wagering is defined as wagering on sporting events or any portion thereof, or on the individual performance statistics of athletes participating in a sport event, or combination of sporting events, by any system or method of wagering.  Racing Law

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

§ 1367(1)(x). New York prohibits sports wagering by minors. Racing Law § 1367(2)(d). New York's Racing Law defines "minors" as anyone under the age of 21. Racing Law § 1367(1)(j). The Racing Law prohibits any mobile sports wagering licensee from permitting sports wagering by anyone they know, or should have known, to be a prohibited sports bettor. Racing Law § 1367-a(4)(d). The Racing Law further states that "[a]s a condition of licensure, each mobile sports wagering operator shall . . . prohibit minors from participating in any sports wagering pursuant to rules and regulations promulgated by the commission." Racing Law § 1367-a(4)(a)(iii).

New York also prohibits sports wagering on events in which New York college teams participate, and even duly licensed mobile sports wagering licensees are prohibited from offering such wagering. New York's Racing Law defines a "prohibited sports event" to include "a sport or athletic event in which any New York college team participates regardless of where the event takes place." Racing Law § 1367(1)(s). The Racing Law prohibits any mobile sports wagering licensee from offering any sports wagering based on any prohibited sports event. Racing Law § 1367-a(4)(c). The Racing Law further states that "[a]s a condition of licensure, each mobile sports wagering operator shall . . . ensure no sports wagering shall be based on a prohibited sports event." Racing Law § 1367-a(4)(a)(xi).

New York receives significant tax revenue from licensed casinos and mobile sports wagering licensees, the latter of which are taxed at a rate of approximately 51% of gross revenues. *See* Tomer Aff. at ¶ 2, Ex. 1 at 4 (New York State Gaming Commission website). Sports wagering revenue taxes are primarily used for public school funding as well as sports programs for underserved youth and problem gambling education and treatment. *Id.* In 2024, mobile sports wagering operators generated approximately $2 billion in gross gaming revenue, paying more than $1 billion in state taxes. Tomer Aff. at ¶ 2, Ex. 2 at 12 (New York State Gaming Commission 2024 Annual Report).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

## II. Respondent Operates an Unlicensed Gambling Platform

### A. Respondent Promotes Gambling

On July 26, 2021, Respondent announced the launch of a "prediction market," which through Respondent's oversight and operation, has grown to allow its bettors to place wagers on all types of events, including sports, politics, and culture, from Respondent's website, www.kalshi.com, and its associated mobile device application (collectively, the "Platform"). Tomer Aff. at ¶ 3, Ex. 3 (news release). Respondent's principal place of business is in New York. Tomer Aff. ¶ 3, Ex. 4 at ¶ 13 (Declaration of Richard Heaslip). Since launch, Respondent repeatedly has advertised and solicited gambling on its Platform to persons located in New York and elsewhere via the internet, including through social media sites such as X.com, Instagram, and YouTube. For example, on October 30, 2024, although unlicensed gambling operations are illegal in New York, Respondent posted to X.com that it is "legal in all 50 states." Tomer Aff. at ¶ 4, Ex. 5 (X.com post).

Respondent has also persistently advertised sports betting on its platform since at least January 23, 2025. Tomer Aff. at ¶ 4, Ex. 6 (X.com post). This includes advertising directed at New Yorkers. For example, Respondent issued an advertisement on Instagram which stated, "Hey New York . . . Bet on the NFL, Legal in all 50 states." Tomer Aff. at ¶ 4, Ex. 7 (news article). Respondent also, for example, posted numerous advertisements on X.com leading up to the February 8, 2026, Super Bowl between the New England Patriots and Seattle Seahawks. Tomer Aff. at ¶ 5, Exs. 8A-C (X.com posts). As an inducement to participate in its gambling Platform, Respondent has offered various promotions. For example, in advance of the college basketball playoffs, Respondent offered $1 billion for a perfect bracket and $1 million in guaranteed prizes. Tomer Aff. at ¶ 6, Ex. 9 (X.com post). Respondent also offers referral awards, whereby bettors can share a link via social networks or directly with others and receive a reward if another joins Kalshi, completes the identity verification process, and meets a threshold requirement. Tomer Aff. at ¶ 7, Ex. 10 (Referral Program FAQ).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Respondent also advertises and promotes betting on contracts it offers on professional and college sports events in which New York teams participate. For example, on March 19, 2026, Respondent posted on X.com a series of solicitations to bet on the Siena University vs. Duke University college basketball game. Tomer Aff. at ¶ 8, Exs. 11A-C (X.com posts).

### B.   Overview of Respondent's Platform

Respondent, through its Platform, allows bettors in New York to place bets on the outcomes of future contingent events for which the outcome is uncertain and outside the control of the bettor. Respondent does so by offering for sale through its Platform contracts on the outcome of future contingent events such as sports events. Tomer Aff. at ¶ 10 Exs. 12 (website capture), 13 (mobile device application capture). Beyond sports-related events, Respondent also offers wagering on election and culture events such as "Which party will win the U.S. Senate?" or "Big Brother Season 28 Winner." Tomer Aff. at ¶ 12, Exs. 14, 15 (website captures).

The contracts allow a bettor to take a "Yes" or "No" position on whether a future, real-life event will occur by purchasing a "Yes" or "No" contract with prices in cents corresponding roughly to probability percentages. Tomer Aff. at ¶ 13, Ex. 16 (What Is Kalshi? A Beginner's Guide). If the bettor's predicted event occurs, the contracts provide for Respondent to pay the bettor $1.00; if it does not occur, the bettor receives no payment. *Id*.

Each such contract is a bet. In each case, the bettor's return is determined by an outcome or future contingent event outside their control or influence. For example, on the afternoon of November 12, 2025, a user could buy a "No" contract on Respondent's Platform for $0.25 that would pay out $1.00 if the Green Bay Packers football team lost to the New York Giants in a professional football game held on November 16, 2025. Metz Aff. at ¶ 10 and Ex. 1 (screenshot). Respondent charges the bettor a fee for placing wagers.

Respondent has repeatedly and persistently offered wagering on professional and college sports events through its Platform since at least January 23, 2025. Tomer Aff. at ¶ 14, Ex. 6 (X.com post). The sports events for which Respondent makes wagering available include, but are not

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

limited to, professional and college basketball games, professional and college football games, professional hockey games, and professional tennis matches. Metz Aff. at ¶ 12 and Exs. 4A-D (screenshots). The sports events for which Respondent makes wagering available also include sports or athletic events in which New York college teams participate. For example, Respondent, through its Platform, offered sports wagering on the March 19, 2026, college basketball game between Siena University vs. Duke University and the March 20, 2026, college basketball game between Hofstra University and University of Alabama. Metz Aff. at ¶¶ 13, 14 and Exs. 5 (screenshot), 6 (screenshot). Respondent also offers point spread and point total bets on sports events, such as wagers over whether the University of Alabama will defeat Hofstra University in a college basketball game by over 10.5 points. Metz Aff. Ex. 2A (observed point spread wager). Respondent further offers bettors the ability to bet a "combo," also known as a parlay, whereby bettors can combine individual bets to receive a larger payout if all combined bets are successful. Metz Aff. at ¶ 13 and Ex. 5 (screenshot). Respondent is not licensed by the New York State Gaming Commission in any capacity. Tomer Aff. at ¶ 15, Exs. 1, 17A (Gaming Commission website captures), 17B (cease and desist demand).

### C. Opening an Account on Respondent's Platform

Bettors located in New York are able to access the Platform by opening an account through Respondent's website or mobile application. Metz Aff. at ¶¶ 2-6. When opening an account, Respondent may require a bettor to enter certain personal information, including a home address and date of birth. Metz. Aff. ¶ 6. Respondent may require a bettor to acknowledge and agree to certain documents, including Respondent's Member Agreement and Rulebook. Metz Aff. at ¶ 15; Tomer Aff. Exs. 18 (Member Agreement), 20 (Rulebook). Respondent permits bettors under the age of twenty-one, but at least eighteen years of age to open an account. Tomer Aff. at ¶ 16, Ex. 18 at VI (Member Agreement). Once a bettor has an account with Respondent, the bettor can access the Platform, deposit funds, and place wagers through electronic means, including the use of the internet or a mobile device application. Metz Aff. at ¶ 5.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

9

### D.     Betting on Respondent's Platform

Respondent allows bettors to place wagers from New York and elsewhere via Respondent's website and its mobile device application. Metz Aff. ¶¶ 3, 26-27. A bettor enters wagers on Respondent's Platform by staking or risking money the bettor gives to Respondent, which Respondent accepts or receives, for the bettor to place the wager. A bettor generally pays a fee to Respondent for each wager entered.

Respondent debits bettor accounts for each wager placed. Respondent credits bettor accounts for successful wagers, paying $1.00 on each successful "event contract" purchased. For example, on and before April 6, 2026, Respondent offered a contract on who would win the NCAA men's basketball game between University of Connecticut and University of Michigan that occurred on that date. As of approximately 10:15 am EST on April 6, 2026, a bettor could place a "yes" wager that Connecticut would win for an average price of $0.285 per wager. Each wager would pay the bettor $1.00 if Connecticut won the game or nothing if Connecticut did not win. Metz Aff. at ¶ 16 and Exs. 7A (screenshot); 7B (video).

In the above example, on April 6, 2026, a bettor in New York with a New York-based account placed on Respondent's Platform four "Yes" wagers for Connecticut to win the game for a total of $1.14 including fees. Respondent accepted and received the wagers. Respondent charged the bettor a fee of $0.06 for placing the four wagers. Respondent debited the bettor's account $1.14. Metz Aff. at ¶ 17 and Exs. 7B (video), 8 (written confirmation). Because Connecticut did not win the game, the bettor received no payout. Metz Aff. at ¶ 17.

In another example, on and before July 9, 2026, Respondent offered a contract on the winner of "Big Brother Season 28," the popular reality television competition. As of approximately 3:15 pm EST, a bettor could place a "Yes" wager that contestant Yash Patel would win Big Brother Season 28 at an average price of $0.09 per wager. Each wager would pay the bettor $1.00 if Yash Patel won Big Brother, or nothing if Patel did not win. Metz Aff. at ¶ 20 and Ex. 9 (screenshot).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

In the above example, on July 9, 2026, a bettor in New York with a New York-based account placed on Respondent's Platform ten "Yes" wagers for Yash Patel to win Big Brother Season 28 for a cost of $0.96, including fees. Respondent accepted and received the wagers. Respondent charged the bettor a fee of $0.06 for placing the wagers. Respondent debited the bettor's account $0.96. Metz Aff. at ¶ 21 and Ex. 10 (written confirmation).

In another example, on and before June 17, 2026, Respondent offered a contract on "NY-13 Democratic Nominee." As of approximately 2:00 pm EST on that day, a bettor could place "Yes" wagers that any of eight candidates would win the primary election. Each wager would pay the bettor $1.00 if the chosen candidate won the primary election. Metz Aff. at ¶ 24 and Ex. 11 (screenshot). Respondent does not prohibit bettors between the ages of 18 and 21 from placing wagers on its Platform. Tomer Aff. at ¶ 16, Ex. 18 at VI. (Member Agreement) ("You are of the age of majority in Your state of residence"). Respondent accepts bets and wagers in New York from bettors located in other states and provides information on its contracts from New York to bettors located in other states, including communications concerning winning bets and wagers entitling the recipient to payment. Metz Aff. at ¶¶ 26-27 and Exs. 14-15 (written confirmations).

### E.     Respondent's Bookmaking Activity

Respondent engages in bookmaking in that it unlawfully accepts bets from members of the public, as a business, upon the outcomes of future contingent events. Since at least January 23, 2025, Respondent has repeatedly received or accepted in one day more than five bets totaling more than $5,000, including over $5,000 in trading volume for professional and college sports contracts.

This is evidenced by Respondent's website which shows dozens of contracts that had over $5,000 in transaction volume, including over $5,000 in transaction volume for professional and college sports contracts. *See, e.g.*, Metz Aff. at ¶ 28 and Exs. 16A-B (screenshots), Tomer Aff. at ¶ 9 and Ex. 12 (screenshot). Respondent's publicly available trade data also reflects that Respondent has received or accepted in one day more than five bets totaling more than $5,000 in wagering. Tomer Aff. ¶ 18 & Ex. 19 (trade data excerpt).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 2

Case 1:26-cv-06550    Document 1-2    Filed 07/31/26    Page 22 of 50

RECEIVED NYSCEF: 07/31/2026

### F.      Respondent's Possession of Gambling Records

Respondent possesses numerous gambling records.  Respondent provides bettors a written confirmation on Respondent's website after their wagers have been placed, including confirming the event wagered upon, the bettor's wager, the number of wagers placed, the amount wagered, the fees charged, and the date and time of the bet.  Metz Aff. at ¶ 29 & Ex. 8 (written confirmation).

Respondent also provides bettors access through Respondent's Platform to electronic records of their bets on Respondent's Platform.  Respondent maintains and provides information on open wagers that have been placed (including, for example, identifying the event wagered upon, the bettor's wager, and the payout if the bettor wins) and historic wagers that have been completed (including identifying the event wagered upon, the bettor's wager, the amount wagered, and payouts on successful wagers).  Metz Aff. at ¶ 30 and Exs. 17A-B (screenshots).  Further, Respondent has agreed to maintain a record of all bets.  Tomer Aff. at ¶ 19, Ex. 20 (Rulebook at 2.14).

Respondent makes available on its website daily "trade data" that reflects electronic records of contracts wagered on a daily basis, including the time and date of each transaction, the contract wagered upon, the price per wager, and the quantity of wagers placed.  Tomer Aff. ¶ 18 and Ex. 19 (trade data excerpt).  Respondent's records reflect or represent more than five bets totaling more than five thousand dollars.  Metz Aff. at ¶ 28 and Exs. 16A-B (screenshots), Tomer Aff. Ex. 12 (screenshot); Tomer Aff. ¶ 18 and Ex. 19 (trade data excerpt).

### III.      Respondent's Unlicensed Gambling Platform Causes Harm to New York

Respondent harms New York by offering wagers on its Platform.  As an unlicensed gambling business, Respondent operates its gambling platform without implementing required consumer protections and internal controls that are part of New York's strict regulation of licensed gambling.  These protections include allocating resources to develop and fund programs to combat

12

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

problem gambling, procedures to prevent underage gambling, restrictions to prevent predatory or deceptive advertising, procedures to identify customers battling a gambling addiction, and guardrails to allow consumers to exclude themselves from the Platform. *See generally* 9 NYCRR §§ 5300-5330.45.

New York State regulators prioritize consumer protection, implementing detailed measures for responsible gaming, age verification, and problem gambling prevention. *See* Tomer Aff. ¶ 20, Ex. 21, at 3-4, 7-8 (New York State Gaming Commission and Office of Addiction Services and Supports report). For example, sports wagering is prohibited for individuals under 21 and licensed operators must have strict procedures to verify the age and identity of bettors. 9 NYCRR §§ 5329.8, 5329.19, 5330.10(d)(5). Licensed operators must also verify the locations of bettors. 9 NYCRR § 5330.44. Moreover, the state restricts advertising, marketing, and promoting mobile sports wagering to underage persons, including prohibiting advertising set on college campuses, depicting students, and other restrictions. Racing Law § 1367-a(4)(e); 9 NYCRR §§ 5329.37, 5330.45. Ads must display clear information and provide easy access to resources like 1-877-8-HOPENY. 9 NYCRR §§ 5325.6, 5329.37, 5330.34.

These and other numerous safety regulatory mechanisms not enumerated here exist for vital reasons. A report by the New York State Office of Addiction Services and Supports identifies ages 18-24 as a "high-risk population" for gambling addictions. Tomer Aff. at ¶ 21, Ex. 22 at 3, Table 1 (New York State Office of Addiction Services and Supports, Addiction Data Bulletin, No. 2025-06 (Apr. 2025)). Between 2000 and 2024, 1-877-8-HOPENY received more than 14,000 helpline calls. *See id.* at 2, Fig. 1. "As of 2022, mobile sports betting surpassed casino gambling as the primary reason for gambling-related helpline calls made by New Yorkers." *Id.* at 1.

Gambling may also cause harm to a bettor's financial, emotional, and physical health. The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM 5-TR") recognizes gambling disorder as a persistent and recurring pattern of problematic gambling behavior leading to significant distress or impairment. *Id.* at 1. Gambling disorder is the only behavioral addiction (as opposed to chemical substance use disorders) identified in DSM-5-TR.

13

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 2

Case 1:26-cv-06550     Document 1-2     Filed 07/31/26     Page 24 of 50

RECEIVED NYSCEF: 07/31/2026

American Psychiatric Association, Internet Gaming, https://www.psychiatry.org/patients-families/internet-gaming, (last visited, April 19, 2026).

The disorder includes symptoms such as a need to gamble with increasing amounts of money to achieve desired excitement; unsuccessful attempts to stop or control gambling; chasing losses; and lying to conceal the extent of gambling involvement.  Tomer Aff. at ¶ 23, Ex. 22 at 1.

The National Council on Problem Gambling's review of gambling addiction studies shows that "[t]he rate of gambling problems among sports bettors is at least twice as high as among gamblers in general" and that when sports wagering takes place online, the rate of problems is even higher.  Tomer Aff. at ¶ 24, Ex. 23 at 1 (Nat'l Council on Problem Gambling, A Review of Sports Wagering & Gambling Addiction Studies Executive Summary).

The effects of gambling addiction can be devastating.  A review of studies analyzing the links between gambling addiction and suicide noted that studies have consistently found that gambling addiction increases the likelihood of suicidality.  Tomer Aff. at ¶ 25, Ex. 24 (GamblingHarm.org article).  Further, "legalized sports betting amplifies emotional cues, as evidenced by increased [intimate partner violence] when a fan's home team unexpectedly loses." Tomer Aff. at ¶ 25, Ex. 25 at 18 (Emily Arnesen & Kyutaro Matsuzawa, Sports Betting Legalization Amplifies Emotional Cues & Intimate Partner Violence (Oct. 30, 2025)).

Prediction markets also create significant risks to the financial well-being of consumers. The financial industry has begun issuing reports of increased financial risks associated with prediction markets, including the "overextension of credit and rising loan defaults."  Tomer Aff. at ¶ 26, Ex. 26 (Forbes.com article).  An economic research study also found: "The legalization of sports betting has far-reaching consequences for household financial health.  It increases credit card balances, reduces available credit, increases lottery play, and decreases net investments in financial markets.  These effects are particularly pronounced among financially constrained households." Tomer Aff. at ¶ 26, Ex. 27 at 30 (Scott R. Baker *et al.,* Gambling Away Stability: Sports Betting's Impact on Vulnerable Households (Oct. 21, 2024)).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Ultimately, it is each of these types of harms that the New York Constitution and gambling laws were intended to prevent in New York. Respondent is nonetheless subverting New York's express regime by facilitating gambling in New York without required responsible gambling features mandated for licensed sports wagering operations and without any oversight by the New York State Gaming Commission, which is exposing New Yorkers to gambling addiction and financial risk with few, if any, safeguards.

## ARGUMENT

### I. Executive Law § 63(12) Enables the Attorney General to Achieve Prompt and Comprehensive Relief

New York Executive Law § 63(12) empowers OAG to bring a special proceeding for injunctive relief, restitution, and damages whenever a person or business engages in "repeated or persistent fraud or illegality." Executive Law § 63(12). Section 63(12) is a remedial statute, *People v Greenberg*, 27 NY3d 490, 497 (2016), and as such it is to be "liberally construed" in order to achieve its intended purpose, *People v. Greenberg*, 95 AD3d 474, 483 (1st Dept 2012), *affd* 21 NY3d 439 (2013) (quoting *People v Federated Radio Corp.*, 244 NY 33, 38 (1926)).

A CPLR Article 4 special proceeding, as authorized under § 63(12), is "plenary as an action, culminating in a judgment, but is brought on with the ease, speed and economy of a mere motion." The "Special Proceeding," Described, Siegel, N.Y. Prac. § 547 (6th ed.). The legislative purpose for allowing a special proceeding under § 63(12) is to further the public interest by giving OAG expeditious means to enjoin fraudulent or illegal activity. *See e.g., People v B. C. Assocs.*, 194 NYS2d 353, 356-58 (Sup Ct, NY County 1959).

A special proceeding goes right to the merits. The Court is required to make a summary determination upon all the pleadings, papers and admissions to the extent that no triable issues of fact are raised. CPLR 409. To the extent that triable issues of fact are raised, then they must be tried "forthwith." CPLR 410. "[T]he respondents have the burden of establishing a triable issue of fact." *People v P.U. Travel, Inc.*, 2003 NY Misc LEXIS 2010, at *12 (Sup Ct, NY County June

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 2    Case 1:26-cv-06550    Document 1-2    Filed 07/31/26    Page 26 of 50    RECEIVED NYSCEF: 07/31/2026

19, 2003).  General denials or conclusory allegations do not meet this burden.  *People v Daro Chartours*, 72 AD2d 872, 872 (3d Dept 1979).  It is the very purpose of a special proceeding to provide a summary remedy, "so summary, indeed, as to dispense with the need or occasion for the application of summary judgment."  *Matter of Council of City of NY v Bloomberg*, 6 NY3d 380, 401 (2006).  A court may grant a summary determination for liability while reserving the issue of damages for an immediate trial.  *People v Gagnon Bus Co., Inc.*, 2011 NY Misc LEXIS 442, 8-9 (Sup Ct, Queens County 2011) (granting summary determination for liability and injunctive relief, and ordering a hearing to determine restitution, damages, and civil penalties).

II.    **Respondent Engaged in Repeated and Persistent Illegality in Violation of Executive Law § 63(12)**

Executive Law § 63(12) gives OAG the power to bring an action against any person or entity that engages in "repeated fraudulent or illegal acts" or "otherwise demonstrate[s] persistent fraud or illegality in the carrying on . . . or transaction of business."  Here, OAG brings claims for repeated illegality.

Courts have consistently found that a violation of state, federal, or local law constitutes illegality within the meaning of Executive Law § 63(12).  *People v Puff Bar*, 25-cv-01445, 2026 US Dist LEXIS 71233, at *17 (SDNY Mar. 31, 2026) ("Any conduct which violates State or Federal law or regulation is actionable under Executive Law § 63(12).");  *see also People v Fanduel, Inc.*, 2015 NY Slip Op 32332(U), *4 (Sup Ct, NY County 2015) (§ 63(12) action involving violations of NY CLS Const Art I, § 9 and Penal Law §§ 225.05, 225.10, 225.15, and 225.20, among others); *People v World Interactive Gaming Corp.*, 185 Misc 2d 852, 860-61 (Sup Ct, NY County 1999) (§ 63(12) action involving violations of Penal Law Article 225 and the Wire Act, 18 USC § 1084(a), among others); *People v Apple Health & Sports Clubs Ltd., Inc.*, 206 AD2d 266, 267 (1st Dept 1994) (violations of laws relating to health clubs); *Freedom Disc. Corp. v Korn*, 279 NYS2d 774, 775 (1st Dept 1967) (action involving use of Executive Law § 63(12) to enforce violations of the Penal Law).

16

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

The illegality must be repeated or persistent, each of which is defined in the statute. "Repeated" is defined as "repetition of any separate and distinct . . . illegal act or conduct which affects more than one person." Executive Law § 63(12); *People v Wilco Energy Corp*, 284 AD2d 469 (2d Dept 2001); *People v Empyre Inground Pools, Inc.*, 227 AD2d 731, 733 (3d Dept 1996). "Persistent" is defined as "continuance or carrying on of any … illegal act or conduct." Executive Law § 63(12).

Respondent's repeated violations of NY CLS Const Art I, § 9, New York Penal Law §§ 225.05, 225.10, and 225.20, Racing Law §§ 1367(16)(a), 1367-a(2)(a), and 1367-a(4)(b), and 18 USC § 1084(a), described in detail below, constitute repeated and persistent illegalities redressable under Executive Law § 63(12). *See World Interactive Gaming Corp.*, 185 Misc 2d at 861-65.

**A.**     **Respondent Violates New York State Constitution Article I, Section 9**

The New York Constitution prohibits gambling in all forms not specifically enumerated. The New York Constitution states:

> [E]xcept as hereinafter provided, no lottery or the sale of lottery tickets, pool-selling, book-making, or any other kind of gambling, except lotteries operated by the state . . . , except pari-mutuel betting on horse races . . . , and except casino gambling at no more than seven facilities . . . shall hereafter be authorized or allowed within this state; and the legislature shall pass appropriate laws to prevent offenses against any of the provisions of this section.

NY CLS Const Art I, § 9. In *White v. Cuomo*, the New York Court of Appeals held that the prohibition on "any other kind of gambling" under Article I, Section 9 includes either (1) "the risking of value through bets or wagers on contests of skill where the pool of wagered value is awarded upon some future event outside the wagerer's influence or control" or (2) "the staking of value on a game in which the element of chance predominates over the element of skill." 38 NY3d 209, 228 (2022). Respondent's unlicensed gambling Platform violates NY CLS Const Art I, § 9 under both definitions of gambling.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)     INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 2     Case 1:26-cv-06550     Document 1-2     Filed 07/31/26     Page 28 of 50     RECEIVED NYSCEF: 07/31/2026

Respondent's Platform squarely facilitates "the risking of value through bets or wagers on contests of skill where the pool of wagered value is awarded upon some future event outside the wagerer's influence or control." *White*, 38 NY3d at 228. Bettors on Respondent's Platform stake something of value, namely money, when they place their wagers for "Yes" or "No" on particular outcomes. *See* Metz Aff. ¶¶ 8-9; *see also, e.g.*, Metz Aff. Ex 6 (example sports bet where the screenshot shows Yes/No options). The sports wagers, for example, are regarding contests of skill, such as professional and college games. Metz Aff. ¶ 12 & Exs. 4A-D. And, the pool of wagered value on each contract is awarded based on a future, real life contingent event, such as whether the Green Bay Packers would win a professional football game against the New York Giants. Tomer Aff. Ex. 16 (news release) ("Kalshi [is] a platform that allows traders to buy and sell contracts on the outcomes of real-world events . . . . When you purchase a contract, you're essentially buying a position on a specific outcome. If your prediction proves correct when the event resolves, each contract pays out one dollar."); Metz Aff. ¶ 10 & Ex. 1 (example sports wager). These future contingent events are entirely dependent on the real-life performance of teams and athletes playing professional and collegiate sports and are wholly outside the control or influence of the bettor. The same can be said for Respondent's culture and election contracts, which depend on the skill of the contestant or candidate, not the bettor. *See* Metz. Aff. ¶ 20 & Ex. 9 (example culture wager); *id.* ¶ 24 & Ex. 11 (example election wager offering). Respondent's Platform therefore falls within Article 1 Section 9's prohibition on "gambling" because it facilitates bets and wagers on contests of skill. *See White*, 38 NY3d at 227.

Respondent's gambling Platform also facilitates contests of chance, *i.e.*, "the staking of value on a game in which the element of chance predominates over the element of skill." *Id.* at 228. As discussed above, Respondent's Platform allows betters to stake value, namely money, on a game. Metz Aff. ¶¶ 8-9, 16-17 & Exs. 7-8. Regardless of a bettor's skill, knowledge, judgment, or strategy for placing wagers on Respondent's Platform, the outcome of the bet is driven by chance, *i.e.*, the happenstance of how teams and athletes perform in real-life on any given day,

18

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

which is beyond the bettor's control.[3] Tomer Aff. Ex. 16 (What Is Kalshi? A Beginner's Guide); Metz Aff. ¶¶ 16-17 & Exs. 7-8 (example sports wager). So, too, for Respondent's culture and election contracts, which depend on chance occurrences outside the bettor's control. Metz. Aff. ¶ 20 & Ex. 9 (example culture wager); *id.* ¶ 24 & Ex. 11 (example election wager offering). Respondent's contracts not only depend upon chance to a material degree, the element of chance in fact predominates over the element of skill. Thus, Respondent's Platform falls within Article 1 Section 9's prohibition on "gambling" as facilitating contests of chance.

Respondent's Platform does not qualify as a state-run lottery or an approved casino, nor does it fall within any of the other limited exceptions to the prohibition against gambling. *See* NY CLS Const Art I, § 9. Accordingly, the Court should find that Respondent's unlicensed gambling Platform violates Article I, Section 9 of the New York Constitution.

**B.      Respondent Violates New York Penal Law**

Article 225 of New York Penal Law establishes first and second criminal offenses for promoting gambling and for possessing gambling records. *See generally* Penal Law §§ 225.05, 225.10, and 225.20. A predicate for each of these offenses is that the conduct involves "gambling." As discussed below, Respondent's Platform involves gambling under New York Penal Law, and Respondent has been promoting gambling in the first and second degree and is in possession of gambling records in the first degree, in violation of Penal Law §§ 225.05, 225.10, and 225.20.

*1.      Respondent's Business Involves Unlawful Gambling*

Respondent's business involves unlawful gambling. A person engages in "gambling" under the Penal Law "when he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome." Penal Law § 225.00(2). "Gambling" therefore consists of three elements: (1) a person "stakes . . .

---

[3] This concept is perhaps best illustrated by the famous quote attributable to Bert Bell, NFL Commissioner 1946-1959: "On any given Sunday, any team can beat any other team." RS Lyons, *On Any given Sunday: A Life of Bert Bell* (Temple University Press 2010).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

something of value" upon a particular outcome; (2) the outcome depends on either a "contest of chance" or a "future contingent event not under his control or influence"; and (3) the person has an agreement or understanding to "receive something of value" from another person when a certain outcome occurs. *Id.*; *see also In re Pace-o-matic, Inc. v NY State Liq. Auth.*, 72 AD3d 1144, 1146 (3d Dept 2010). The offering of contracts on sports, culture, and election events by Respondent on its Platform meets each of these elements and therefore constitutes gambling.

### a. Bettors on Respondent's Platform "Stake Something of Value" Upon a Particular Outcome

The Penal Law defines "something of value" broadly to include, among other things, "any money or property, any token, object or article exchangeable for money or property." Penal Law § 225.00(6). Bettors on Respondent's Platform indisputably stake something of value, namely money, when they place their wagers. Metz Aff. ¶ 9.

### b. Respondent's Wagers Depend on the Outcome of a Future Contingent Event or Contests of Chance

Under New York Penal Law, two types of wagers qualify as gambling: (1) wagers on future contingent events beyond the control or influence of the bettors; and (2) wagers on contests of chance. Penal Law § 225.00(2) (definition of "Gambling"). Under either prong of the statutory definition, Respondent's contracts qualify as gambling. *See People v Turner*, 165 Misc 2d 222, 224-225 (Crim Ct, NY County 1995) (finding a shell game constituted a "game of chance" and the outcome also depended on a "contingent event" not under the control of the player).

The wagers on Respondent's Platform constitute wagers on future contingent events beyond the control or influence of the bettor. Respondent's sports contracts are over real-life games, such as professional and college basketball games. Metz Aff. ¶ 12 & Exs. 7A, 7B (example sports wager). The outcome of these games depends entirely upon the real-life future performance of the teams and athletes playing in the games, which is beyond the control or influence of the bettor. The same can be said for Respondent's culture and election contracts, which are dependent on future events outside the control or influence of the bettor such as the real-life performances of

20

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

contestants and candidates. *See* Metz. Aff. ¶ 20 & Ex. 9 (example culture wager); *id.* ¶ 24 & Ex. 11 (example election wager offering). Thus, the wagering on Respondent's Platform is on future contingent events beyond the control or influence of the bettors.

The wagers on Respondent's Platform also constitute wagers on contests of chance. New York Penal Law defines a "contest of chance" as any "contest, game, gaming scheme or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." Penal Law § 225.00(1). Here, Respondent's contracts are games or contests to make a winning prediction or proposition. Metz Aff. ¶¶ 13-14 & Ex. 6 (sports bet displaying "Buy Yes Hofstra"). The outcome of Respondent's sports contracts are driven, however, by the element of chance (*i.e.*, the real-life performance of teams and athletes), notwithstanding any skill, judgment or strategy of the bettor in deciding whether to click "Yes" or "No." The same is true of Respondent's culture and election contracts, which depend on chance occurrences outside the bettor's control. *See* Metz. Aff. ¶ 20 & Ex. 9 (example culture wager); *id.* ¶ 24 & Ex. 11 (example election wager offering). Thus, Respondent's contracts not only depend to a material degree upon chance, the element of chance in fact predominates over any skill of the bettor.

       **c.**      **Bettors on Respondent's Platform Understand That They Will Receive Something of Value in the Event of a Certain Outcome**

Finally, bettors on Respondent's Platform understand that they will receive something of value in the event of a certain outcome. Respondent's contracts promise the bettor $1.00 for each successful wager. Tomer Aff. Ex. 16 (What Is Kalshi? A Beginner's Guide). Further, the amount of the "Payout if Yes" or "Payout if No" is shown to bettors when they place their bets. *See, e.g.*, Metz Aff. Ex. 7A (screenshot showing "payout if Yes" amount).

<p style="text-align:center">*      *      *</p>

In sum, Respondent's Platform meets all of the elements of "gambling" under New York Penal Law.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

### 2. Respondent Is Promoting Gambling in the Second Degree

A person is guilty of promoting gambling in the second degree when one "knowingly advances or profits from unlawful gambling activity." Penal Law § 225.05; *People v Giordano, 87 NY2d 441, 446-47 (1995)*. Respondent both knowingly advances and profits from unlawful gambling activity.

A person "advances gambling activity" when, acting other than as a player, one engages in conduct which materially aids any form of gambling activity. Penal Law § 225.00(4). This includes engaging in conduct directed toward: (1) the creation or establishment of the particular game, contest, device, or activity involved, (2) the solicitation or inducement of persons to participate in gambling activity, (3) the actual conduct of the playing phases thereof, (4) the arrangement of any of its financial or recording phases, or (5) any other phase of its operation. *Id.*; *see also World Interactive Gaming Corp., 185 Misc 2d at 861* (holding that internet gambling company that "established the gambling enterprise, and advertised and solicited investors to . . . gamble through its on-line casino" engaged in conduct which materially aids gambling activity).

Here, Respondent engages in a variety of conduct when not acting as a player that materially aids gambling activity. This includes Respondent creating and establishing its unlicensed gambling Platform (Tomer Aff. Exs. 3 (news release stating "Kalshi, the first federally regulated exchange dedicated to trading directly on the outcome of events, is now in public Beta. You can now buy 'Yes' or 'No' positions on whether an event will happen . . . ."), 6 ( X.com post stating that "Sports trading is live on Kalshi! Available in all 50 States")); soliciting persons to participate in gambling activity through online and social media advertising (Tomer Aff. Exs 7, 8A-C, 11A-C (X.com posts)); inducing persons to participate in gambling activity by offering promotions (Tomer Aff. Exs. 9 (promotion offered by Respondent) 10 (referral program FAQ)); and facilitating the conduct of the playing phase of gambling by making its Platform available, which provides the means for gambling activity to occur, managing, administering, or controlling sports wagering on its Platform (Metz Aff. ¶¶ 10, 12, 13, 16, 17 & Exs. 6 (example sports wager),

22

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2

Case 1:26-cv-06550    Document 1-2    Filed 07/31/26    Page 33 of 50

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 07/31/2026

Ex. 3 (example contract terms)). Similarly, Respondent's knowledge is established through its express and repeated promotion of its Platform.[4]

Respondent also knowingly profits from gambling activity. A person "profits from gambling activity" when, "other than as a player, he accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he participates or is to participate in the proceeds of gambling activity." Penal Law § 225.00(5). Here, Respondent's business involves a bettor entering wagers on Respondent's Platform by staking or risking money the bettor gives to Respondent, which Respondent accepts or receives, for the bettor to place the wager. *See* Metz Aff. ¶¶ 16-17 & Exs. 7A, 7B (example wager). Respondent also generally receives a fee from the bettor for each wager. Metz Aff. ¶ 17 & Ex. 8 (fee of $0.06). All of this is done pursuant to an agreement between Respondent and the bettor whereby the bettor consents to participate in gambling activity. Tomer Aff. Ex. 16 (News Release); Metz Aff. ¶ 17 and Exs. 7 (screenshot), 8 (written confirmation). Respondent's knowledge is established through its receipt, handling, and recording of customer funds and fees as well as its express statements describing its platform as a place for the public to "bet." Tomer Aff. Ex. 7 (Instagram post stating "Hey New York . . . Bet on the NFL, Legal in all 50 states."). Respondent therefore knowingly advances and profits from gambling activity, in violation of Penal Law § 225.05. *See World Interactive Gaming Corp.*, 185 Misc 2d at 861.

### 3.    *Respondent Is Promoting Gambling in the First Degree*

A person is guilty of promoting gambling in the first degree when one "knowingly advances or profits from unlawful gambling activity by . . . engaging in bookmaking to the extent that he receives in any one day more than five bets totaling more than five thousand dollars." Penal Law § 225.10. "'Bookmaking' means advancing gambling activity by unlawfully accepting bets

---

[4] Knowledge of illegality is not an element of the offense. *See* Penal Law 15.20(2) ("A person is not relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief that it does not, as a matter of law, constitute an offense . . . .").

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 2    Case 1:26-cv-06550    Document 1-2    Filed 07/31/26    Page 34 of 50    RECEIVED NYSCEF: 07/31/2026

from members of the public as a business, rather than in a casual or personal fashion, upon the outcomes of future contingent events." Penal Law § 225.00(9).

As explained above with respect to promoting gambling in the second degree, Respondent both knowingly advances and knowingly profits from unlawful gambling activity. In addition, on numerous occasions, Respondent has received in any one day more than five bets totaling more than five thousand dollars.[5]

Respondent has displayed on its website multiple professional and college sports contracts that had over $5,000 in transaction volume. *See, e.g.*, Metz Aff. at ¶ 28 and Exs. 16A-B (screenshots). Respondent makes available on its website daily "trade data" that reflects electronic records of contracts wagered on a daily basis, including the time and date of each transaction, the contract wagered upon, the price per wager, and the quantity of wagers placed. *See, e.g.*, Tomer Aff. ¶ 18 and Ex. 19 (trade data excerpt). This data reflects that Respondent received or accepted more than five bets totaling more than five thousand dollars in one day. *Id.* Accordingly, Respondent is promoting gambling in the first degree, in violation of Penal Law § 225.05.

### 4.    *Respondent Possesses Gambling Records in the First Degree*

A person is guilty of possessing gambling records in the first degree, when, "with knowledge of the contents thereof, [the person] possesses any writing, paper, instrument or article . . . [o]f a kind commonly used in the operation or promotion of a bookmaking scheme or enterprise, and constituting, reflecting or representing more than five bets totaling more than five thousand dollars." Penal Law § 225.20.

Here, Respondent is in possession of a myriad of gambling records. Respondent provides bettors a written confirmation on Respondent's website after their wagers have been placed, including confirming the event wagered upon, the bettor's wager, the number of wagers placed, the amount wagered, the fees charged, and the date and time of the bet. Metz Aff. at ¶ 29 & Ex. 8

---

[5] This is demonstrated in various ways, although a full accounting is needed to determine every instance where Respondent received or accepted in one day more than five bets totaling more than $5,000 in wagering.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

(example of a bet confirmation). Respondent maintains and provides information on open wagers that have been placed (including, for example, identifying the event wagered upon, the bettor's wager, and the payout if the bettor wins) and historic wagers that have been completed (including identifying the event wagered upon, the bettor's wager, the amount wagered, and payouts on successful wagers). Metz Aff. at ¶ 30 and Exs. 17A-B (screenshots). Respondent has also agreed to maintain a record of all bets. Tomer Aff. at ¶19, Ex. 20 (Rulebook at 2.14).

Respondent's confirmations, electronic records, and trade data are each a writing, paper, instrument or article of a kind commonly used in the operation and promotion of a bookmaking scheme or enterprise. Penal Law § 225.20; *People v Brady*, 189 AD2d 884, 885 (2d Dept 1993) (finding evidence that defendant possessed "'books' of gambling records" was sufficient to sustain conviction under Penal Law § 225.20); *see also* N.Y. Penal Law § 225.35(1) ("Proof of possession of any gambling device or of any gambling record specified in sections 225.15 and 225.20, is presumptive evidence of possession thereof with knowledge of its character or contents.").

As stated above, Respondent's gambling records constitute, reflect, and represent more than five bets totaling more than $5,000 in one day. *See, e.g.*, Metz Aff. ¶ 28 and Exs. 16A-B (screenshots), Tomer Aff. Ex. 12 (screenshot); Tomer Aff. ¶ 18 and Ex. 19 (trade data excerpt). Accordingly, Respondent is and has been in possession of gambling records in the first degree, in violation of Penal Law § 225.20.

## C. Respondent Violated New York Racing, Pari-Mutuel Wagering and Breeding Law

As discussed below, through its conduct in connection with its sports gambling Platform, Respondent violates: (1) Racing Law § 1367(16)(a) by knowingly offering or attempting to offer unauthorized sports wagering or mobile sports wagering in New York; (2) Racing Law § 1367-a(2)(a) by administering, managing, or otherwise making available a mobile sports wagering platform to persons located in New York without a license; and (3) Racing Law § 1367-a(4)(b) by directly or indirectly operating an unlicensed sports wagering platform in New York and by advertising or promoting such unlicensed platform to persons located in New York.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

### 1. *Respondent Offers and Attempts to Offer Sports Wagering or Mobile Sports Wagering in New York in Violation of Racing Law § 1367(16)(a)*

The Racing Law prohibits anyone who is not authorized to offer sports wagering under either Section 1367 or 1367-a from knowingly offering or attempting to offer sports wagering or mobile sports wagering in New York. Racing Law § 1367(16)(a).[6] "Sports wagering" is defined as "wagering on sporting events or any portion thereof, or on the individual performance statistics of athletes participating in a sporting event, or combination of sporting events, by any system or method of wagering."[7] Racing Law § 1367(1)(x). A "sports event" is defined to include any professional or collegiate sport or athletic events, except certain prohibited events. Racing Law § 1367(1)(t).

Here, Respondent has knowingly offered and attempted to offer mobile sports wagering in New York while unauthorized to do so. Respondent knowingly offers for sale through its website and mobile application contracts which permit New York bettors to stake or risk money upon the outcome of professional and college sporting events. Metz Aff. ¶¶ 8-9, 10, 13-14, 16-17 & Exs. 7A, 7B (example sports wager). Respondent also knowingly attempts to offer mobile sports wagering in New York by advertising and promoting its Platform in New York and to New Yorkers over the internet and through social media. *See, e.g.*, Tomer Aff. at ¶¶ 4-5, 8, Exs. 7, 8A, 8B, 8C,

---

[6] Racing Law § 1367(16)(a) states in its entirety:

> In addition to any criminal penalties provided for under article two hundred twenty-five of the penal law, any person, firm, corporation, association, agent, or employee, who is not authorized to offer sports wagering under this section or section thirteen hundred sixty-seven-a of this title, and who knowingly offers or attempts to offer sports wagering or mobile sports wagering in New York shall be liable for a civil penalty of not more than one hundred thousand dollars for each violation, not to exceed five million dollars for violations arising out of the same transaction or occurrence, which shall accrue to the state and may be recovered in a civil action brought by the attorney general.

[7] The Racing Law makes clear that this definition includes but is not limited to "electronic communication through internet websites accessed via a mobile device or computer, and mobile device applications; provided however that sports wagers shall include, but are not limited to, single-game bets, teaser bets, parlays, over-under bets, money line, pools, in-game wagering, in-play bets, proposition bets, and straight bets." *Id.*

26

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

11A-C (X.com posts). Respondent is not licensed by the New York State Gaming Commission in any capacity. Tomer Aff. at ¶ 15, Exs. 1, 17A (Gaming Commission website captures), 17B (cease and desist demand).

Accordingly, Respondent has violated § 1367(16)(a) by offering and attempting to offer mobile sports wagering in New York while unauthorized to do so.

> **2. *Respondent Administers, Manages, and Makes Available an Unlicensed Mobile Sports Wagering Platform to Persons Located in New York in Violation of Racing Law § 1367-a(2)(a)***

The Racing Law states: "No entity shall administer, manage, or otherwise make available a mobile sports wagering platform to persons located in New York state unless licensed with the commission pursuant to this section." Racing Law § 1367-a(2)(a). The Racing Law defines a "mobile sports wagering platform" to mean "the combination of hardware, software, and data networks used to manage, administer, or control sports wagering and any associated wagers accessible by any electronic means including mobile applications and internet websites accessed via a mobile device or computer." Racing Law § 1367(1)(k).[8]

Respondent's unlicensed Platform is a "mobile sports wagering platform" because it constitutes an electronic means (*i.e.*, a combination of hardware, software, and data networks) of making sports wagering accessible by a mobile application and an internet website accessible via a mobile device or computer. Metz Aff. ¶¶ 2, 5, 8, 9. Respondent has administered, managed, and made available this mobile sports wagering platform to persons located in New York. Metz Aff. ¶¶ 6, 8, 16 & Exs. 7A, 7B (sports bet placed from New York). Respondent's conduct in violation of Section 1367-a(2)(a) includes making available and offering sports wagering based on prohibited sports events, which is prohibited (Metz. Aff. ¶¶ 13-14 (Respondent offering wagering on New York college team sports events)) and making available and permitting sports wagering by persons it knew or should have known were prohibited sports bettors, namely, persons between

---

[8] Racing Law § 1367-a incorporates the terms defined in Racing Law § 1367(1) except where otherwise provided. Racing Law § 1367-a(1)(a).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

the ages of 18 and 21, which is also prohibited (Tomer Aff. at ¶ 16 Ex. 18 at VI. (Member Agreement)).  Respondent has therefore violated Racing Law § 1367-a(2)(a).

### 3. Respondent Operates an Unlicensed Sports Wagering Platform in New York in Violation of Racing Law § 1367-a(4)(b)

The Racing Law states: "No entity shall directly or indirectly operate an unlicensed sports wagering platform in the [S]tate of New York."  Racing Law § 1367-a(4)(b).

Here, Respondent directly or indirectly operates its unlicensed sports wagering Platform in New York.  Respondent's principal place of business is New York.  Tomer Aff. at ¶ 3, Ex. 4 (Declaration of Richard Heaslip).  Respondent offers sports wagering and mobile sports wagering through its Platform by electronic means including a mobile application and an internet website accessible in New York via a mobile device or computer.  *See, e.g.*, Metz. Aff. ¶¶ 6, 8, 16 & Ex. 7 (sports bet placed from New York).  Accordingly, Respondent has violated Racing Law § 1367-a(4)(b).

### 4. Respondent Promotes an Unlicensed Sports Wagering Platform to Persons in New York in Violation of Racing Law § 1367-a(4)(b)

The Racing Law states: "No entity shall directly or indirectly . . . promote [an unlicensed sports wagering platform] to persons located in the [S]tate of New York."  Racing Law § 1367-a(4)(b).

Here, Respondent has promoted its unlicensed sports wagering Platform to persons in New York on numerous occasions.  Respondent has repeatedly promoted sports wagering on its Platform via social media, which is accessible to persons in New York.  Tomer Aff. Exs. 5, 6, 8A-C. (X.com posts).  Certain of Respondent's advertisements have been directed at sporting events involving New York teams.  *See, e.g.*, Tomer Aff. at ¶ 8, Exs. 11A-C (X.com posts regarding Siena University college basketball game).  Respondent has also broadly offered promotions to induce persons to participate in sports wagering on its Platform, some of which were available to persons in New York.  Tomer Aff. at ¶ 7, Ex. 10 (referral program FAQ).  Accordingly, Respondent has

28

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

violated Racing Law § 1367-a(4)(b) by promoting its unlicensed sports wagering Platform to persons in New York.

### D.      Respondent Violated the Wire Act, 18 USC § 1084(a)

Respondent's use of the internet to run a gambling operation on its Platform is illegal under 18 USC § 1084(a), which provides:

> Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined under this title or imprisoned not more than two years, or both.

Under the Wire Act, the receipt or making of bets or wagers or the providing of information to assist in sports betting is a federal crime. *United States v Cohen*, 260 F3d 68, 73-75 (2d Cir 2001). Because the internet is accessed by the use of a wire, communications, wagers and bets transmitted over the internet are subject to the Wire Act. *World Interactive Gaming Corp.*, 185 Misc 2d at 862 ("The Internet site creates a virtual casino within the user's computer terminal. By hosting this casino and exchanging betting information with the user, an illegal communication in violation of the Wire Act [occurs]."); *Cohen, 260 F3d at 76 (2d Cir 2001)* (transmitting bets over the internet violated statute); *United States v Lyons*, 740 F3d 702, 716 (1st Cir 2014) (finding the internet is a wire communication facility under 18 USC § 1084).

According to the legislative history of the Wire Act:

> The purpose of the bill is to assist various States and the District of Columbia in the enforcement of their laws pertaining to gambling, bookmaking, and like offenses and to aid in the suppression of organized gambling activities by prohibiting the use of wire communication facilities which are or will be used for the transmission of bets or wagers and gambling information in interstate and foreign commerce.

H.R. Rep No. 87-967, at 1-2 (1961); *see also World Interactive Gaming Corp.*, 185 Misc 2d at 861-62 (noting the legislative history and applying the Wire Act to betting in New York under

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Section 63(12)).

The Act provides a safe harbor for the providing of betting information (but not the receipt of bets) but only if betting is legal in both jurisdictions involved. 18 USC § 1084(b); *Cohen,* 260 F3d at 73 (safe harbor applies if "(1) betting is legal in both the place of origin and the destination of the transmission; and (2) the transmission is limited to mere information . . . ."); *Murphy,* 584 US at 484 (where gambling is illegal under state law, the interstate transmission of information that assists in the placing of a bet on a sporting event is also illegal under the Wire Act); *KalshiEX LLC v Martin,* 793 F Supp 3d 667, 683 (D Md 2025) (same).[9]

With limited exceptions not applicable here, gambling is illegal in New York, and Respondent, while engaged in the business of betting and wagering, knowingly accepts bets in New York from bettors located in other jurisdictions, provides information assisting in the placing of bets or wagers on sporting events or contests to other jurisdictions, and transmits wire communications to other jurisdictions which entitle the recipients to receive money or credit as a result of bets or wagers. Tomer Aff. at ¶ 4, Ex. 6 (X.com post stating "Sports trading is live on Kalshi! Available in all 50 States"); Metz Aff. at ¶¶ 26, 27 and Exs. 14 and 15 (written confirmations). After a user selects a bet on Respondent's Platform and places a wager over the internet, that information is transmitted to Respondent's servers through interstate wires. Respondent's servers then transmit betting information back to the user. This process violates the Wire Act where the bets are placed and where the Respondent operates from and receives and accepts bets in New York. See *World Interactive Gaming Corp.,* 185 Misc 2d at 862 (holding that an illegal communication in violation of the Wire Act has occurred where an online casino exchanged betting information with the user in New York State).

---

[9] As with the knowledge required under the Penal Law, *see supra*, n.4, once a person knowingly committed the acts that constitute a violation of the Wire Act, the person's beliefs regarding the legality of betting in New York are immaterial. *See Cohen,* 260 F3d at 76 (holding that it mattered only that Defendant knowingly transmitted information assisting in the placing of bets, not that he intended to violate the statute, and that his own interpretation of what constituted a bet was irrelevant).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

**III.    The Court Should Grant OAG's Request for Temporary and Preliminary Injunctive Relief**

OAG seeks a TRO and preliminary injunction enjoining Respondent from operating an unlawful gambling business in New York without obtaining all required licenses from the New York State Gaming Commission.

Executive Law § 63(12) empowers OAG to petition the court for injunctive relief whenever a company engages in "repeated . . . or persistent fraud or illegality in the carrying on, conducting or transaction of business."   Under Executive Law § 63(12), OAG may obtain temporary or preliminary injunctive relief merely upon a showing of a "likelihood of success on the merits and a balancing of the equities in petitioner's favor."  *People v Apple Health & Sports Clubs*, 174 AD2d 438, 438-39 (1st Dept 1991), *affd* 80 NY 2d 803 (1992).  OAG, unlike private litigants, need not prove irreparable injury.  *Id.*; *see also People v Fanduel, Inc.*, 2015 NY Slip Op 32332(U), *9-10 (Sup Ct, NY County 2015) ("The NYAG is not required to show irreparable harm under Executive Law §63[12], it is implied in the need to prevent the effects of fraudulent and illegal conduct on the general public."); *People v Empire Prop. Sols., LLC*, 2012 NY Slip Op 30346(U), *6 (Sup Ct, Nassau County 2011).[10]

New York State courts have regularly used Executive Law § 63(12) to impose equitable relief, such as TROs or preliminary injunctions to enjoin the continuance of fraudulent or illegal business activity.  *See, e.g., People v Security Elite Group, Inc.*, 2019 NY Slip Op 33068 (U), *10 (Sup Ct, NY County Oct. 15, 2019) (TRO issued restraining respondent from advertising or offering employment opportunities and from offering or selling training services); *People v Fanduel*, 2015 NY Misc LEXIS 4521, at *24 (preliminary injunction issued enjoining illegal online gambling business); *New York v Lloyd*, 2016 NY Misc LEXIS 10773, at *4-5 (Sup Ct, Erie

---

[10] *See also P.U. Travel*, 2003 NY Misc LEXIS 2010, at *7-8 ("[U]nder federal regulatory statutes which are analogous to the Executive Law . . . an appeals court held that the usual prerequisites for the issuance of preliminary injunction (i.e., showing of irreparable injury) are not required."). *Accord State v Terry Buick, Inc.*, 520 NYS2d 497, 500 (Sup Ct, Dutchess County 1987) (holding, in the context of granting a preliminary injunction sought by OAG, that "[t]raditional concepts of irreparable damage which apply to private parties do not govern this public interest field").

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2     Case 1:26-cv-06550     Document 1-2     Filed 07/31/26     Page 42 of 50     INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 07/31/2026

County Feb. 1, 2016) (TRO issued restraining respondents from, among other things, accepting advance payments from consumers); *People v Court Reporting Inst.*, 240 AD2d 413 (2d Dept 1997) (TRO issued enjoining trade school from accepting new students); *State v Remedial Education, Inc.*, 70 Misc 2d 1068, 1070 (Sup Ct, NY County 1972) (preliminary injunction issued enjoining corporate defendant from conducting business as a medical school placement service); *State v Saksniit*, 69 Misc 2d 554, 562 (Sup Ct, NY County 1972) (preliminary injunction issued enjoining defendants from carrying on or conducting business as sellers of essays, term papers, or other school assignments during the pendency of the action); *People v Abortion Info. Agency*, 323 NYS2d 597, 603 (Sup Ct, NY County 1971), *affd* 37 AD2d 142 (1st Dept 1971) (preliminary injunction issued enjoining respondents from conducting or transacting business as a referral agency for performing abortions).

As explained below, OAG has met and surpassed the standard for temporary and preliminary injunctive relief under Executive Law § 63(12).

### A.     OAG Has Demonstrated Likelihood of Success on the Merits

The facts set forth herein and in the Verified Petition, the Affirmation of Kenneth Brent Tomer, and the Affirmation of Brian Metz demonstrate that it is far more than "likely" that OAG will successfully establish violations of Executive Law § 63(12).  In Parts II.A. – II.C, *supra*, OAG has detailed Respondent's repeated, persistent, and ongoing violations of the NY CLS Const Art I, § 9, New York Penal Law §§ 225.05, 225.10, and 225.20, Racing Law §§ 1367(16)(a), 1367-a(2)(a), 1367-a(4)(b), and the Wire Act, 18 USC § 1084(a).  Moreover, Respondent has operated without required licensure from the New York State Gaming Commission and cannot argue otherwise.  OAG has therefore more than demonstrated a likelihood of success on the merits of its claims.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 2       Case 1:26-cv-06550     Document 1-2     Filed 07/31/26     Page 43 of 50     RECEIVED NYSCEF: 07/31/2026

**B.      Irreparable Harm to New York Will Result if Preliminary Injunctive Relief is Denied**

As noted above, the Attorney General, unlike private litigants, need not prove irreparable injury to obtain temporary or preliminary injunctive relief because such injury is presumed in a statutory enforcement action under Executive Law § 63(12). *Fanduel,* 2015 NY Misc LEXIS 4521 at *24 (granting preliminary injunction). While evidence of irreparable harm is not a necessary element to obtain an injunction under Executive Law § 63(12), the requested relief would nonetheless prevent further harm to the public.

Every day that Respondent operates its gambling Platform in violation of New York law causes irreparable harm to New York. The health risks are enormous and can lead to harm to a gambler's emotional and physical well-being. *See* Verified Petition ¶¶ 85-88. Respondent's Platform also creates significant risks to the financial and economic well-being of consumers, including the risk of "overextension of credit and rising loan defaults." *Id.* at 89.

Respondent circumvents New York's longstanding and careful regulation of gambling and in particular sports wagering. For example, New York has put in place measures to protect young people by prohibiting mobile sports wagering by those under 21 years old, Racing Law § 1367(1)(j), (2)(d), and requiring licensed operators to have strict procedures to verify the age and identity of bettors. 9 NYCRR §§ 5329.8, 5329.19, 5330.10(d)(5). Licensed operators must also verify the locations of bettors. 9 NYCRR § 5330.44. New York also prohibits mobile wagering on games in which New York college teams participate, Racing Law § 1367-a(4)(c), and restricts advertising, marketing, and promoting mobile sports wagering to underage persons, including prohibiting advertising on college campuses, depicting college students, and other restrictions, Racing Law § 1367-a(4)(e); 9 NYCRR §§ 5329.37, 5330.45. Yet Respondent does not prohibit those between the ages of 18-21 from placing sports wagers on its Platform, and it offers mobile sports wagering on games in which New York college teams participate. Tomer Aff. at ¶ 16, Ex. 18 at VI (Member Agreement); Metz. Aff. ¶¶ 13-14 (Respondent offering wagering on New York college team sports events).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Unlicensed mobile sports wagering platforms like Respondent's also harm New York's economy and the public by allowing Respondent to evade taxes, including mobile sports wagering taxes primarily used for public school funding, sports programs for underserved youth, and problem gambling education and treatment. Tomer Aff. at ¶ 2, Ex. 2 at 12 (Annual Report). Unlicensed gambling operators like Respondent also divert business from tax paying licensees that invest in meeting New York's demanding requirements and implement consumer protections for responsible gambling.

The societal ramifications of allowing Respondent to continue offering illegal gambling on its Platform are serious and cannot be compensated. Respondent's brazen, repeated, and ongoing defiance of New York State's longstanding and comprehensive regulatory regime for gambling demonstrates that, absent an injunction, Respondent will continue to expose New Yorkers to the irreparable harm caused by unlicensed gambling.

### C.    The Balance of Equities Favors Preliminary Relief

The balance of equities favors the issuance of a TRO and a preliminary injunction. In evaluating injunctive relief, courts must consider the welfare and interest of the general public. *See City of New York v Smart Apts. LLC*, 39 Misc 3d 221, 233 (Sup Ct, NY County 2013) ("the equities lie in favor of shutting down an illegal, unsafe, deceptive business, rather than in allowing said business to continue to operate (to defendants' presumed financial advantage)"); *Greenberg*, 27 NY3d at 497 (in Executive Law § 63(12) action by OAG, "the standards of the public interest not the requirements of private litigation measure the propriety and need for injunctive relief." (citations omitted)). Where the government shows that a violation of law has occurred, the "public equities receive far greater weight" than any "private equities" a respondent may have. *FTC v Warner Communications*, 742 F2d 1156, 1165 (9th Cir 1984).

Executive Law § 63(12) and the gambling laws at issue here were specifically designed to protect the public, and this tips the balance of equities in favor of enjoining Respondent. *Fanduel, Inc.*, 2015 NY Misc LEXIS 4521, at *24 ("The balancing of equities are in favor of the NYAG

34

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

and the State of New York due to their interest in protecting the public, particularly those with gambling addictions."); *cf. People v Castro*, 143 Misc 2d 766, 769-770 (Sup Ct, NY County 1989) (preliminary injunction enjoining defendant from use of space where an illegal gambling operation was conducted "in order to protect the public safety, health or morals").  The requested TRO will simply prevent Respondent from continuing to expose the public to the harms of illegal gambling while the court determines whether to grant the full relief requested in the Verified Petition.

By contrast, there are no equities in Respondent's favor.  Respondent has no right to run an illegal gambling business, even if disguising it as a new and innovative "prediction market," and therefore cannot complain of potential loss of business.  Any burden imposed in requiring Respondent to operate in full compliance with the law is reasonable.  The balance of equities is therefore in favor of protecting the public.  Absent temporary and preliminary relief, New Yorkers will continue to be exposed to the effects of Respondent's illegal conduct.  *Fanduel, Inc.,* 2015 NY Misc LEXIS 4521, at *24.

## IV.  The Court Should Order a Permanent Injunction, an Accounting, Restitution, Disgorgement, Damages, Penalties, and Costs

Respondent's repeated and persistent illegal acts warrant permanent injunctive relief, an accounting, restitution, disgorgement, damages, penalties, and costs.  Pursuant to Executive Law § 63(12), courts are empowered to grant wide-ranging equitable relief to redress the illegal conduct engaged in by Respondent.  *See, e.g., People v Princess Prestige*, 42 NY2d 104, 107-108 (1977); *Greenberg,* 27 NY3d at 497-98.  The statute explicitly contemplates the issuance of injunctive relief, and an order directing restitution and an award of damages.

### A.  The Court Should Order Permanent Injunctive Relief

Once a court finds in a summary proceeding pursuant to Executive Law § 63(12) that a respondent is liable, the court is expressly authorized to permanently enjoin the fraudulent and illegal conduct at issue.  Executive Law § 63(12).  The Court may immediately exercise its authority to grant injunctive relief even if subsequent proceedings are needed to determine the

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

scope of monetary relief.  *See, e.g., People v Dell, 21 Misc 3d 1110 (A), 2008 NY Slip Op 52026(U), *12 (Sup Ct, Albany County May 23, 2008)* (ordering injunctive relief while granting OAG discovery to determine the identities of all consumers entitled to restitution and the amount of monetary relief).

OAG seeks a permanent injunction banning Respondent from continuing to operate a business that offers event contracts relating to sports, culture, elections, and other events in New York without obtaining all required licenses from the New York State Gaming Commission.  OAG also seeks a permanent injunction enjoining Respondent and its principals, agents, and employees from violating the Constitution and laws of the state of New York, including Executive Law § 63(12), Penal Law §§ 225.05, 225.10, 225.20, and Racing Law §§ 1367(16)(a), 1367-a(2)(a), and 1367-a(4)(b).  Courts routinely impose permanent injunctive relief similar to that sought here—a complete ban on the underlying conduct that gave rise to the illegal activity.  *See People v Ford Motor Co.,* 74 NY2d 495, 502 (1989); *see also, e.g., Daro Chartours, Inc.,* 72 AD2d at 872, *People v Scores,* 79 Misc 3d 1118, 1135-36 (Sup. Ct, Dutchess County May 30, 2023) (permanently enjoining respondents from engaging in the fraudulent, deceptive, and/or illegal practices which were the subject of the proceeding); *World Interactive Gaming Corp.,* 185 Misc 2d at 865 (enjoining illegal online gambling business); *Empyre Inground Pools, Inc.,* 227 AD2d at 732 (affirming grant of permanent injunction enjoining respondents from engaging in the home improvement and door-to-door sales businesses in New York).  Respondent's repeated and persistent illegal conduct in violation of Executive Law § 63(12) warrants a permanent injunction.

**B.    The Court Should Order Respondent to Provide an Accounting**

The Court should order an accounting by Respondent of total bets placed, monies lost by customers in connection with its gambling business, and monies paid to Respondent in connection with its gambling business.  Courts may order accountings under Executive Law § 63(12) in order to facilitate the determination of restitution, damages, and disgorgement.  *E.g., People v Veleanu,* 89 AD3d 950, 950 (2d Dept 2011) (affirming judgment ordering accounting pursuant to § 63(12));

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

*Sec. Elite Group*, 2019 NY Slip Op 33068(U), at *6 ("directing the rendering of an accounting to the Attorney General of the names and addresses of each consumer who paid fees directly to [respondents] and the amount of money received from each such consumer").

An accounting is particularly necessary here so that injured customers can be identified and compensated for the damages caused, directly or indirectly, by the illegal acts complained of.

### C.    The Court Should Order Respondent to Pay Restitution, Disgorgement, Damages, and Penalties

The Court should order Respondent to pay restitution, disgorgement and damages. Restitution under Executive Law § 63(12) is a "vehicle by which aggrieved consumers [can] recover the money which is due them without resorting to costly litigation." *State v Ford Motor Co.*, 136 AD2d 154, 158 (3rd Dept 1988). Courts' broad power to direct restitution under § 63(12) "should be liberally construed," *State v Maiorano*, 189 AD2d 766, 767 (2d Dept 1993), and an application for restitution pursuant to § 63(12) is "addressed to the sound judicial discretion of the trial court," *Princess Prestige*, 42 NY2d at 108. Courts' power to award restitution includes the power to order not only monetary relief but also the "authority to order respondents to take affirmative action" that may be necessary to effect restitution. *Id*.

The Court should order Respondent, pursuant to Executive Law § 63(12), to disgorge all revenue obtained from their illegal activities in New York. A court may order disgorgement under Executive Law § 63(12), "an equitable remedy distinct from restitution," *People v Applied Card Sys.*, 11 NY3d 105, 125 (2008); *see also People v Greenberg*, 43 Misc 3d 1229(A), 2014 NY Slip Op 50840(U) (Sup Ct, NY County 2014), *affd* 127 AD3d 529 (1st Dept 2015) (denying motion to dismiss OAG's disgorgement claim under both Section 63(12) and the Martin Act).

Section 63(12) also provides for awards of "damages" for fraudulent or illegal business practices. This language authorizes courts to "award statutory or compensatory damages." Memorandum of the Attorney General, N.Y. Legis. Annual 1977, at 194, Ex. 284. OAG is empowered under Executive Law § 63(12) with directing restitution and collecting compensatory damages on behalf of all injured parties, including unknown out-of-state victims. *People v*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 2    Case 1:26-cv-06550    Document 1-2    Filed 07/31/26    Page 48 of 50    RECEIVED NYSCEF: 07/31/2026

*Telehublink Corp.*, 756 NYS2d 285, 288-89 (3d Dept 2003) (New York interests were implicated when a New York address was used in the course of business and thus allowing recovery for parties outside of New York who were defrauded); *New York v Feldman*, 210 F Supp 2d 294, 303 (SDNY 2002) (stating that "courts have consistently held that section 63(12) authorizes the New York Attorney General to recover for non-residents injured by wrongdoing that occurred in New York"); *State v Scottish-American Assn., Inc.*, 381 NYS2d 671 (1st Dept 1976) ("The Attorney-General seeks restitution for both 'known and unknown' consumers.").

The Court should order Respondent, pursuant to Penal Law § 80.10, to pay a fine of three times the amount of its gain from the illegal practices alleged herein. Penal Law § 80.10(1)(e). Respondent should also be directed, pursuant to Racing Law § 1367(16)(a), to pay a fine of $100,000 for each offer or attempt to offer sports wagering or mobile sports wagering in New York without authorization. Racing Law § 1367(16)(a). New York courts "have long sustained a pyramiding of penalties as valid means of control," and routinely assess cumulative penalties per violation to "act as a warning to discourage the prohibited act." *Meyers Bros. Parking Sys., Inc. v Sherman*, 87 AD2d 562, 563 (1st Dept 1982), *affd* 57 NY2d 653 (1982). Penalties ought to be large enough to deter illegal conduct but should not "be so disproportionate to the offenses as to be excessive." *Id*. Here, the penalties Respondent faces for its illegal conduct are entirely appropriate given the breadth and pervasiveness of Respondent's illegalities. *See supra* Parts II.A – II.C.

### D.    The Court Should Award OAG Costs

CPLR 8303(a)(6) provides that the court may award the OAG "a sum not exceeding two thousand dollars against each defendant" in a special proceeding brought under Executive Law § 63(12). New York courts routinely grant OAG such costs. *See e.g.*, *Daro Chartours, Inc.*, 72 AD2d at 873; *State v Midland Equities of N.Y., Inc.*, 458 NYS2d 126, 130 (Sup Ct, NY County 1982); *People v Therapeutic Hypnosis*, 83 Misc 2d 1068, 1071-72 (Sup Ct, Albany County 1975). Accordingly, this Court should award Petitioner $2,000 in costs imposed against Respondent.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2    Case 1:26-cv-06550    Document 1-2    Filed 07/31/26    Page 49 of 50    RECEIVED NYSCEF: 07/31/2026

INDEX NO. UNASSIGNED

## CONCLUSION

For the above reasons, the Court should sign the proposed Order to Show Cause, grant the requested TRO, and ultimately grant the Verified Petition in its entirety.[11]

Dated: New York, New York
July 31, 2026

<div style="margin-left:40%">

LETITIA JAMES
Attorney General of the State of New York

By:   */s/ K. Brent Tomer*_____
K. Brent Tomer
Assistant Attorney General
28 Liberty Street
New York, New York 10005
Tel.: (212) 416-8081

Alejandra de Urioste
Assistant Attorney General

Nina Varindani
Assistant Attorney General

Tanya Trakht
Senior Enforcement Counsel

Kenneth Haim
Deputy Bureau Chief

Shamiso Maswoswe
Chief of the Investor Protection Bureau

*Counsel for the People of the State of New York*

</div>

---

[11] Given the complexity of the issues addressed in this proceeding and the emergency nature of the relief sought, OAG simultaneously files this memorandum of law and a request for leave to exceed the word limits provided for in NYCRR 202.8-b, as permitted by subsection f of that rule, by 6,980 words.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 2

Case 1:26-cv-06550    Document 1-2    Filed 07/31/26    Page 50 of 50

RECEIVED NYSCEF: 07/31/2026

## Word Count Certification Pursuant to NYCRR 202.8-b

I, K. Brent Tomer, Esq., hereby certify that the word count of this document, as calculated by Microsoft Office, exclusive of the caption, table of contents, table of authorities, and signature block, is 13,980 words.

By: _____

K. Brent Tomer

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.