UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

PEOPLE OF THE STATE OF NEW YORK     :
by LETITIA JAMES, Attorney General of the State of  :
New York,
    :
    :
                    Plaintiff,     :     Case No. 1:26-cv-06550
    :
        v.     :
    :
KALSHIEX LLC,     :
    :
                  Defendant.     :
    :
    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S MOTION TO REMAND TO NEW YORK STATE COURT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... i

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ....................................................................................................................... 4

    I.    New York Has a Strong Interest in Enforcing Its Police Powers to Regulate Gambling .... 4

        A.  New York Closely Regulates Gambling .......................................................................... 4

        B.  Kalshi's Unlicensed Gambling Platform Causes Harm to New York ............................ 6

ARGUMENT .............................................................................................................................. 7

    I.    OAG's Special Proceeding Raises No Substantial Questions of Federal Law .................... 8

        A.  The CEA Preemption Defense Does Not Support Removal............................................ 9

        B.  The Definition of "Unlawful" Requires no Reference to Federal Law.......................... 10

        C.  The Federal Wire Act Safe Harbor Does Not Support Removal .................................. 11

        D.  Removal Would Disrupt the Federal-State Balance ...................................................... 13

    II.  Removal Is Not Warranted Under 28 U.S.C. § 1442(a)(1).............................................. 14

    III.  There Is No Basis for Removal Under 28 U.S.C. § 1442(a)(2) ........................................ 17

    IV. New York Is Entitled to the Expedited Relief and Expedited Procedures Specifically
        Authorized Under New York State Law .......................................................................... 19

    V.  The Court Should Award OAG Fees and Costs................................................................ 19

CONCLUSION.......................................................................................................................... 21

**TABLE OF AUTHORITIES**

CASES                                                                    PAGE(S)

*Ah Sin v. Wittman*,
  198 U.S. 500 (1905).................................................................................................14

*AMTAX Holdings 227, LLC v. CohnReznick LLP*,
  136 F.4th 32 (2d Cir. 2025) .................................................................................8, 10

*Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*,
  795 F.3d 351 (2d Cir. 2015)................................................................................16

*Annemid RI LLC v. Griffin*,
  2022 U.S. Dist. LEXIS 134512 (D. Conn. July 28, 2022)........................................18

*Blue Lake Rancheria v. Kalshi Inc.*,
  No. 25-cv-06162-JSC, 2025 U.S. Dist. LEXIS 221764 (N.D. Cal. Nov. 10,
  2025) ......................................................................................................................12

*Cal. Pub. Emps. Ret. Sys. v. WorldCom, Inc.*,
  368 F.3d 86 (2d Cir. 2004).................................................................................7, 13

*Carney v. Washington*,
  551 F. Supp. 3d 1042 (W.D. Wash. 2021)..............................................................18

*Caterpillar, Inc. v. Williams*,
  482 U.S. 386 (1987)...............................................................................................9, 10

*City of New York v. Exxon Mobil Corp.*,
  733 F. Supp. 3d 296 (S.D.N.Y. 2024)....................................................................12

*City of New York v. Exxon Mobil Corp.*,
  154 F.4th 36 (2d Cir. 2025) ..................................................................................21

*Commonwealth v. KalshiEX LLC*,
  No. 1:25-cv-12595 (D. Mass. Oct. 28, 2025) ........................................................3

*Comm'r of New York City Dep't of Soc. Servs. v. Buckeye Coach LLC*,
  No. 24-CV-326 (VSB), 2024 U.S. Dist. LEXIS 25890 (S.D.N.Y. Feb. 14,
  2024) ......................................................................................................................10

*Connecticut v. Exxon Mobil Corp.*,
  83 F.4th 122 (2d Cir. 2023) ............................................................................. 8-9, 10

*Counsel Fin. Holdings v. Law*,
  No. 20-CV-01698 (LJV) (JJM), 2021 U.S. Dist. LEXIS 16920 (W.D.N.Y.
  Jan. 27, 2021)........................................................................................................20

*Cruz v. Doar*,
　994 N.Y.S.2d 233 (Sup. Ct. N.Y. Cnty. 2013) ..................................................................16

*Davidson v. Capuano*,
　792 F.2d 275 (2d Cir. 1986)..............................................................................................19

*Dyno v. Rose*,
　260 A.D.2d 694, 687 N.Y.S.2d 497 (3d Dep't 1999)........................................................15

*Faulk v. Owens-Corning Fiberglass Corp.*,
　48 F. Supp. 2d 653 (E.D. Tex. 1999)................................................................................19

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*,
　463 U.S. 1 (1983)................................................................................................................7

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
　545 U.S. 308 (2005).......................................................................................................8, 11

*Gunn v. Minton*,
　568 U.S. 251 (2013)............................................................................................................8

*Ho-Chunk Nation v. Kalshi Inc.*,
　No. 25-cv-698-wmc, 2026 U.S. Dist. LEXIS 103977 (W.D. Wis. May 11,
　2026) ..................................................................................................................................12

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
　488 F.3d 112 (2d Cir. 2007)................................................................................................7

*In re Standard & Poor's Rating Agency Litig.*,
　23 F. Supp. 3d 378 (S.D.N.Y. 2014)........................................................................7, 13, 19

*Jim Ludtka Sporting Goods, Inc. v. City of Buffalo Sch. Dist.*,
　48 A.D.3d 1103 (4th Dep't 2008)......................................................................................15

*KalshiEX LLC v. Williams*,
　No. 25-cv-08846-AT, 2026 U.S. Dist. LEXIS 149977 (S.D.N.Y. July 7, 2026) ..........2, 14, 21

*KalshiEX LLC v. Williams*,
　Order, No. 26-1835 (2d Cir. July 30, 2026)........................................................................2

*Llana v. Town of Pittstown*,
　245 A.D.2d 968, 667 N.Y.S.2d 112 (3d Dep't 1997)........................................................15

*Martin v. Franklin Capital Corp.*,
　546 U.S. 132 (2005)..........................................................................................................20

*Murphy v. NCAA*,
　584 U.S. 453 (2018)......................................................................................................5, 14

*NASDAQ OMX Group, Inc. v. UBS, Sec., LLC*,
    770 F.3d 1010 (2d Cir. 2014) ................................................................................ 10-11

*Nessel v. KalshiEX, LLC.*,
    26-cv-00731-PLM (W.D. Mich. June 25, 2026) ................................................................3, 21

*Nevada ex rel. Nevada Gaming Control Bd. v. Blockratize Inc.*,
    No. 3:26CV00089-MMD-CLB, 2026 U.S. Dist. LEXIS 41671 (D. Nev. Mar.
    2, 2026) ................................................................................................................3, 17

*Nevada ex rel. NV Gaming Control Bd. v. Blockratize, Inc.*,
    No. 26-1343, 2026 U.S. App. LEXIS 14740 (9th Cir. May 21, 2026) ....................................3

*Nevada ex rel. Nevada Gaming Control Bd. v. Kalshiex, LLC*,
    No. 2:26-cv-00406-MMD-MDC, 2026 U.S. Dist. LEXIS 41964 (D. Nev. Mar.
    2, 2026) ................................................................................................................10, 16, 18

*Nevada ex rel. NV Gaming Control Bd. v. Kalshiex, LLC.*,
    No. 26-1304, 2026 U.S. App. LEXIS 14728 (9th Cir. May 21, 2026) ....................................3

*Nevada v. Bank of Am. Corp.*,
    672 F.3d 661 (9th Cir. 2012) ................................................................................................7

*New York by James v. Citibank, N.A.*,
    763 F. Supp. 3d 496 (S.D.N.Y. 2025) ..................................................................................9

*New York by James v. Sirius XM Radio, Inc.*,
    735 F. Supp. 3d 272 (S.D.N.Y. 2024) ..................................................................................7

*New York v. DailyPay, Inc.*,
    No. 25-cv-3439 (JGK), 2025 U.S. Dist. LEXIS 186217 (S.D.N.Y. Sep. 19,
    2025) ................................................................................................................ passim

*New York v. MoneyLion Inc.*,
    No. 25-cv-4093 (CM), 2025 U.S. Dist. LEXIS 222399 (S.D.N.Y. Nov. 12,
    2025) ................................................................................................................9

*New York v. Nat'l Gen. Holdings Corp.*,
    No. 25-cv-3608, 2025 U.S. Dist. LEXIS 212731 (S.D.N.Y. Oct. 28, 2025) ..........................9

*New York v. Shinnecock Indian Nation*,
    686 F.3d 133 (2d Cir. 2012) ................................................................................................10

*People v. Kim,*
    154 Misc. 2d 346 (Crim. Ct. Bronx Cnty. 1992) .......................................................... 10-11

*People v. World Interactive Gaming Corp.*,
    185 Misc. 2d 852 (Sup. Ct., N.Y. Cnty. 1999) ....................................................................14

*Qatar v. First Abu Dhabi Bank PJSC,*
    432 F. Supp. 3d 401 (S.D.N.Y. 2020)................................................................................9

*Saratoga Cnty. Chamber of Commerce, Inc. v. Pataki*,
    100 N.Y.2d 801 (2003) ...................................................................................................4, 13

*State v. Unitedhealthcare of New York, Inc.,*
    No. 1:25-CV-00087 (AMN/DJS), 2026 U.S. Dist. LEXIS 69381 (N.D.N.Y.
    Mar. 31, 2026)....................................................................................................................21

*Town of Stratford v. City of Bridgeport,*
    434 F. Supp. 712 (D. Conn. 1977).................................................................................18, 19

*United States v. Cohen*,
    260 F.3d 68 (2d Cir. 2001)...............................................................................................13

*United States v. Eremian*,
    No. 10-10159-PBS, 2012 U.S. Dist. LEXIS 63215 (D. Mass. May 4, 2012) .......................12

*United States v. Mayo*,
    705 F.2d 62 (2d Cir. 1983)...............................................................................................12

*United States v. New York*,
    26-cv-3404 (S.D.N.Y. Apr. 24, 2026) ..............................................................................16

*Veneruso v. Mount Vernon Neigh'd. Health Ctr.,*
    586 Fed. Appx. 604 (2d Cir. 2014)....................................................................................18

*W. Flagler Assocs., Ltd. v. Haaland*,
    71 F.4th 1059 (D.C. Cir. 2023) ........................................................................................13

*Wallace v. Wiedenbeck*,
    985 F. Supp. 288, 291 (N.D.N.Y. 1998)............................................................................20

*Washington v. KalshiEX, LLC,*
    No. C26-1062-JCC, 2026 U.S. Dist. LEXIS 99374 (W.D. Wash. May 5, 2026)............ passim

*Washington v. Kalshiex, LLC,*
    No. 26-3106, 2026 U.S. App. LEXIS 14736 (9th Cir. May 21, 2026)...............................3, 19

*Watson v. Philip Morris Cos., Inc.,*
    551 U.S. 142 (2007)..........................................................................................................18

*Williams v. Int'l Gun-A-Rama,*
    416 F. App'x 97 (2d Cir. 2011) .........................................................................................20

## CONSTITUTIONS

NY Const. Art I, § 9................................................................................................. passim

**FEDERAL STATUTES**

18 U.S.C.

 § 1084...............................................................................................................15
 § 1084(a) ................................................................................................. passim
 § 1084(b)..............................................................................................4, 12, 13

28 U.S.C.

 § 1331.................................................................................................................8
 § 1442......................................................................................................... 3, 19
 § 1442(a)(1).................................................................................................4, 15 17
 § 1442(a)(2).................................................................................................4, 17, 19

 § 1447.................................................................................................................1
 § 1447(c) .................................................................................................. 4, 8, 20

31 U.S.C.

 § 5362(1)(E)(ii)..............................................................................................11, 12
 § 5361(b)..........................................................................................................15

Federal Rule of Civil Procedure 19(a) ..........................................................................15

**STATE STATUTES**

*CPLR*

 Article 4 .............................................................................................................1
 § 1001...........................................................................................................15, 16
 § 1001(a)(1) ......................................................................................................15

*New York Executive Law*

 § 63(12)..................................................................................................... passim

*New York Penal Law*

 § 225.00(2)..........................................................................................................5
 § 225.00(12) ......................................................................................................10
 § 225.05........................................................................................................2, 4, 11
 § 225.10........................................................................................................2, 4, 11
 § 225.15.............................................................................................................4
 § 225.20........................................................................................................2, 4, 11

*New York Racing, Pari-Mutuel Wagering and Breeding Law*

 § 104(1)..............................................................................................................5
 § 104(24)............................................................................................................5
 § 1367................................................................................................................5

§ 1367(1)(j) ....................................................................................................................5
§ 1367(1)(s) ....................................................................................................................6
§ 1367(1)(x) ....................................................................................................................5
§ 1367(2)(d) ....................................................................................................................5
§ 1367(16)(a) ..................................................................................................................2
§ 1367-a .........................................................................................................................5
§ 1367-a(2)(a) ................................................................................................................2
§ 1367-a(2)(d) ................................................................................................................5
§ 1367-a(4)(a)(iii) ..........................................................................................................5
§ 1367-a(4)(b) ................................................................................................................2
§ 1367-a(4)(e) ................................................................................................................5

## RULES

9 NYCRR
§§ 5300-5330.45 .............................................................................................................6
§ 5325.6 ..........................................................................................................................6
§ 5329.37 ......................................................................................................................5, 6
§ 5330.34 ........................................................................................................................6
§ 5330.45 ........................................................................................................................5

## MISCELLANEOUS AUTHORITIES

H.R. Rep No. 87-967 (1961) ..........................................................................................14

Petitioner, People of the State of New York, by Letitia James, Attorney General of the State of New York ("OAG"), submits this memorandum of law in support of its motion to remand this case to the Supreme Court of the State of New York, County of New York, pursuant to 28 U.S.C. § 1447.

## PRELIMINARY STATEMENT

On July 7, 2026, this Court joined the chorus of courts across the country that have roundly rejected Respondent KalshiEX LLC's ("Kalshi") unsupportable argument that all state gaming laws are preempted by the Commodity Exchange Act ("CEA"). Rather than face the consequences of running an illegal gambling operation in New York, Kalshi frivolously removed this action from state court, seeking to delay the State's special proceeding under New York Civil Practice Law and Rules Article 4 ("Special Proceeding") and eke out more days of ill-gotten profits.

Kalshi's improper removal is but the latest in a series of tactics designed to obstruct New York's exercise of state police powers to protect the health and welfare of New Yorkers from an illegal gambling business operating without a license. In October 2025, the New York State Gaming Commission ("Gaming Commission") demanded that Kalshi cease and desist from "illegally operating, advertising, promoting, administering, managing, or otherwise making available an unlicensed mobile sports wagering platform in New York State . . . ." ECF No. 1-1 (the "Petition" or "Pet.") ¶ 30. Instead of ceasing its illegal sports wagering operations in New York, Kalshi sued the Gaming Commission and its Commissioners in this Court seeking to enjoin the Gaming Commission from enforcing New York State gaming laws. This Court denied Kalshi's motion for preliminary injunction on July 7, 2026, and denied Kalshi's motion

for an injunction pending appeal on July 31, 2026.[1]  On July 30, 2026, the Second Circuit likewise denied Kalshi's request for an interim injunction pending resolution of its motion for an injunction pending appeal.[2]

On July 31, 2026, OAG filed a verified petition in New York state court commencing this Special Proceeding against Kalshi.  The Petition alleges Kalshi violated New York State Executive Law § 63(12) repeatedly and persistently by engaging in illegal conduct in the carrying on of business.[3]  Pet. ¶ 12.  OAG seeks a temporary restraining order ("TRO") and a preliminary and permanent injunction to enjoin Kalshi from operating an unlicensed gambling business that allows bettors in New York and elsewhere to gamble on a variety of sports and other events, including minors between the ages of 18 and 21, despite New York's prohibition on offering mobile sports wagering to minors under the age of 21, and on sports events in which New York college teams participate, despite New York's law prohibiting such wagers.

OAG sues under express authority conferred upon her by New York Executive Law § 63(12), which empowers OAG to bring actions for injunctive relief and civil penalties, among other remedies, when a business has been engaged in repeated or persistent illegal conduct. OAG also sues to vindicate New York's quasi-sovereign interest in securing a safe marketplace in which to transact business, seeking wide-ranging relief under statutes that are aimed at

---

[1] *KalshiEX LLC v. Williams*, No. 25-cv-08846-AT, 2026 U.S. Dist. LEXIS 149977, at *31 (S.D.N.Y. July 7, 2026), *corrected in part by* Order, No. 25-cv-08846-AT (S.D.N.Y. July 13, 2026), ECF 109.

[2] Order, No. 26-1835 (2d Cir. July 30, 2026), ECF 32.1.  This motion was referred to a three-judge panel and remains pending.

[3] Specifically, the Petition alleges repeated and persistent illegal conduct under Executive Law § 63(12), with underlying illegalities as violations of New York State Constitution Article I, Section 9; New York Penal Law §§ 225.05, 225.10, and 225.20; New York Racing, Pari-Mutuel Wagering and Breeding Law §§ 1367(16)(a), 1367-a(2)(a), and 1367-a(4)(b) (hereinafter "Racing Law"); and 18 U.S.C. § 1084(a) (the "Wire Act").  Pet. ¶ 12.

2

protecting the well-being of all who reside in New York and ensure that those who do business in New York do so lawfully.

Kalshi's improper "Notice of Removal" (ECF 1) makes plain that Kalshi is merely buying time to make more profits off its illegal gambling operation at the expense of vulnerable New Yorkers.  Incredibly, just a few weeks after this Court squarely rejected its federal preemption argument, Kalshi now argues that this Court has jurisdiction over OAG's Special Proceeding because *federal preemption* creates federal question jurisdiction.  But even if this already-rejected federal preemption argument had any merit, preemption defenses are not a valid basis for removal.  Kalshi knows this well because in every instance where this has been addressed, courts across the country have repeatedly rejected Kalshi's and other prediction markets' meritless removal claims.  *See* Order, *Nessel v. KalshiEX, LLC.*, 26-cv-00731-PLM (W.D. Mich. June 25, 2026), ECF 20; *Washington v. KalshiEX, LLC*, No. 26-1062-JCC, 2026 U.S. Dist. LEXIS 99374, at *2–5 (W.D. Wash. May 5, 2026), *stay pending appeal denied by Washington v. Kalshiex, LLC*, No. 26-3106, 2026 U.S. App. LEXIS 14736 (9th Cir. May 21, 2026); *Nevada ex rel. NV Gaming Control Bd. v. Kalshiex, LLC*, No. 26-1304, 2026 U.S. App. LEXIS 14728, at *2–3 (9th Cir. May 21, 2026); *Nevada ex rel. Nevada Gaming Control Bd v. Blockratize, Inc.*, No. 3:26-cv-00089, 2026 U.S. Dist. LEXIS 41671 (D. Nev. Mar. 2, 2026); *stay pending appeal denied by Nevada ex rel. NV Gaming Control Bd. v. Blockratize, Inc.*, No. 26-1343, 2026 U.S. App. LEXIS 14740, at *2–4 (9th Cir. May 21, 2026); Order, *Commonwealth v. KalshiEX LLC*, No. 1:25-cv-12595 (D. Mass. Oct. 28, 2005), ECF 34.

Kalshi's other removal arguments fare no better.  Kalshi argues that the definition of "unlawful" in the New York Penal Law requires interpretation of federal law, but this is simply an affirmative defense in disguise that cannot justify removal.  Kalshi further points to potential

3

interpretation questions concerning the Wire Act's definition of "bets" or "wagers" and the safe harbor provision, 18 U.S.C. § 1084(b), bases for removal. But these terms can easily be interpreted in accordance with their plain meanings, and, as the Second Circuit has conclusively stated, the safe harbor does not cover the conduct Kalshi is charged with – accepting interstate bets. Kalshi also seeks to rely on the federal officer removal statute, 28 U.S.C. § 1442(a)(1) and (2), but Kalshi merely recycles baseless arguments that have already been rejected by other federal courts.

In sum, this proceeding is brought by New York using a New York procedure and asserts claims under New York State law to stop ongoing and persistent violations of New York's gambling laws by a New York company. Any incidental federal questions are insufficient bases upon which to interfere with the role of New York courts in overseeing this proceeding. The Court should therefore summarily remand this Special Proceeding back to the Supreme Court of the State of New York, County of New York and grant costs, expenses, and attorneys' fees to the State pursuant to 28 U.S.C. § 1447(c), for Kalshi's legally unsupported removal.

## BACKGROUND

### I. New York Has a Strong Interest in Enforcing Its Police Powers to Regulate Gambling

#### A. New York Closely Regulates Gambling

New York has policed gambling within its borders for over 250 years, since 1771. *See Saratoga Cnty. Chamber of Com., Inc. v. Pataki*, 100 N.Y.2d 801, 825-830 (2003) (Smith, J., concurring in part) (history of New York's anti-gaming laws). The New York Constitution prohibits gambling in all forms not specifically enumerated in Article I. New York's Penal Law has long criminalized the promotion of gambling activity, Penal Law §§ 225.05, 225.10, and the possession of gambling records, Penal Law §§ 225.15, 225.20. The Penal Law prohibits as

4

gambling when a person "stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome."  Penal Law § 225.00(2).

In 2019, following the U.S. Supreme Court's recognition of states' rights to authorize and regulate sports wagering within their borders, *see Murphy v. NCAA*, 584 U.S. 453 (2018), New York enacted a comprehensive regulatory regime for mobile sports wagering, *see* Racing Law §§ 1367, 1367-a.  The Racing Law defines sports wagering as "wagering on sporting events or any portion thereof, or on the individual performance statistics of athletes participating in a sporting event . . . by any system or method of wagering . . . ."  Racing Law § 1367(1)(x).

The New York State Gaming Commission has general jurisdiction over all gaming activities within New York and regulates sports wagering and entities engaged in it.  Racing Law §§ 104(1), (24).  Mobile sports wagers made through virtual or electronic means must be made through mobile sports wagering licensees, and New York's mobile sports licensees are subject to significant statutory and regulatory requirements under Section 1367-a of the Racing Law.  *See* Racing Law §§ 1367(2)(d), 1367-a(2)(d).  For example, New York prohibits sports wagering by minors under the age of 21 (Racing Law §§ 1367(2)(d), (1)(j)) and requires each mobile sports wagering operator to "prohibit minors from participating in any sports wagering . . . ."  Racing Law § 1367-a(4)(a)(iii).  Moreover, the state restricts advertising, marketing, and promoting mobile sports wagering to underage persons, including prohibiting advertising set on college campuses, depicting students, and other restrictions.  Racing Law § 1367-a(4)(e); 9 NYCRR §§5329.37, 5330.45.  Additionally, all advertisements must display clear information and

provide easy access to resources like 1-877-8-HOPENY.  9 NYCRR §§ 5325.6, 5329.37, 5330.34.

New York also prohibits sports wagering on events in which New York college teams participate, and even duly licensed mobile sports wagering licensees are prohibited from offering such wagering.  Racing Law § 1367(1)(s).

New York taxes mobile sports wagering licensees at a rate of approximately 51% of gross revenues and uses this revenue for public school funding as well as sports programs for underserved youth and problem gambling education and treatment.  Pet. ¶ 29.  In 2024, mobile sports wagering operators generated approximately $2 billion in gross gaming revenue, paying more than $1 billion in state taxes to New York.  *Id.*

**B.      Kalshi's Unlicensed Gambling Platform Causes Harm to New York**

Kalshi harms New York by offering wagers on its Platform without implementing required consumer protections and internal controls that are part of New York's strict regulation of licensed gambling.  *Id.* ¶ 86.  These protections include allocating resources to develop and fund programs to combat problem gambling, procedures to prevent underage gambling, restrictions to prevent predatory or deceptive advertising, procedures to identify bettors battling a gambling addiction, and guardrails to allow consumers to exclude themselves from the Platform. *See generally* 9 NYCRR §§ 5300-5330.45; Pet. ¶ 86.  These and other numerous safety regulatory mechanisms exist for vital reasons: gambling causes real and significant harm to vulnerable populations.  For example, individuals aged 18-24 are a "high-risk population" for gambling addictions, gambling addiction increases the risk of suicide, and prediction markets create significant risks to the financial well-being of consumers.  *See* Pet. ¶¶ 88–93.  These are precisely the dangers the New York Constitution and New York gambling laws are intended to

6

prevent.  Kalshi's unlicensed gambling platform and its willful disregard of responsible

gambling requirements for licensed sports wagering operations expose New Yorkers to gambling

harm with few, if any, safeguards.

## ARGUMENT

Where, as here, jurisdiction is asserted by a respondent in a removal petition, the

respondent bears the burden of establishing that removal is proper.  *Cal. Pub. Emps. Ret. Sys. v.*

*WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004).  Any doubts as to removability are resolved

against removability "out of respect for the limited jurisdiction of the federal courts and the

rights of states."  *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d

Cir. 2007).

The presumption against federal jurisdiction is "especially strong" in cases, like this one,

involving a state seeking to vindicate its sovereign and quasi-sovereign interests in enforcing its

own state laws and in protecting its own citizens.  *In re Standard & Poor's Rating Agency Litig.*,

23 F. Supp. 3d 378, 385 (S.D.N.Y. 2014); *New York v. DailyPay, Inc.*, No. 25-cv-3439 (JGK),

2025 U.S. Dist. LEXIS 186217, at *6 (S.D.N.Y. Sep. 19, 2025); *New York by James v. Sirius XM*

*Radio, Inc.*, 735 F. Supp. 3d 272, 276 (S.D.N.Y. 2024); *see also Nevada v. Bank of Am. Corp.*,

672 F.3d 661, 676 (9th Cir. 2012) (holding that where attorney general brings an action in state

court to enforce its own state laws and alleges only state law causes of action to protect state

residents, the "claim of sovereign protection from removal arises in its most powerful form"

(internal quotation marks omitted)).  As the Supreme Court has explained: "[C]onsiderations of

comity make [federal courts] reluctant to snatch cases which a State has brought from the courts

of that State, unless some clear rule demands it."  *Franchise Tax Bd. v. Constr. Laborers*

*Vacation Tr.*, 463 U.S. 1, 21 n.22 (1983).  Here, OAG seeks to vindicate the State's sovereign

and quasi-sovereign interests in enforcing its Executive Law and protecting New Yorkers.  The Court must remand this case back to the Supreme Court of the State of New York where it was originally brought.  28 U.S.C. § 1447(c).

I.    **OAG's Special Proceeding Raises No Substantial Questions of Federal Law**

Kalshi's argument that federal jurisdiction arises in this case because OAG's claims necessarily depend on the resolution of substantial questions of federal law fails.  District courts have original jurisdiction in matters "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The Supreme Court has held that a case can "arise under" federal law in two ways.  *Gunn v. Minton*, 568 U.S. 251, 257–58 (2013).  First, is when "federal law creates the cause of action asserted."  *Id.* (citation omitted).  Second, even if no federal cause of action is asserted, there is a "special and small category of cases in which arising under jurisdiction . . . . will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress," (hereinafter, the "*Grable-Gunn* test").  *Id.*(cleaned up); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*., 545 U.S. 308, 314 (2005); *accord DailyPay, Inc*., 2025 U.S. Dist. LEXIS 186217, at *7.  To satisfy the second "slim category," all four factors outlined in the *Grable-Gunn* test must be met.  *DailyPay, Inc.*, 2025 U.S. Dist. LEXIS 186217, at *7 (citing *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 38 & n.6 (2d Cir. 2025)).

Under the well-pleaded complaint rule, "federal question jurisdiction generally 'exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'"  *Id.*, at *7 (quoting *Connecticut v. Exxon Mobil Corp*., 83 F.4th 122, 132 (2d Cir. 2023)); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  OAG's Petition alleges only

8

state law causes of action, specifically violations of New York Executive Law § 63(12), which authorizes the Attorney General to seek injunctive relief, restitution, and damages in New York state court when a person "engage[s] in repeated fraudulent or illegal acts or otherwise demonstrate[s] persistent fraud or illegality in the carrying on, conducting or transaction of business." N.Y. Exec. L. § 63(12). Under New York Executive Law § 63(12), "any conduct [that] violates state or federal law is actionable." *DailyPay, Inc*., 2025 U.S. Dist. LEXIS 186217, at *8; *New York by James v. Citibank, N.A.,* 763 F. Supp. 3d 496, 507 (S.D.N.Y. 2025) (same). State law claims with predicate violations of federal law, such as OAG's Executive Law § 63(12) claim predicated on the Wire Act, 18 U.S.C. § 1084(a), remain state law claims. *DailyPay, Inc*., 2025 U.S. Dist. LEXIS 186217, at *8–9 (*citing Qatar v. First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 414–15 (S.D.N.Y. 2020)); *New York v. MoneyLion Inc.*, No. 25-cv-4093 (CM), 2025 U.S. Dist. LEXIS 222399, at *6–7 (S.D.N.Y. Nov. 12, 2025) (finding Executive Law § 63(12) claims premised on the Consumer Financial Protection Act are not federal claims); *New York v. Nat'l Gen. Holdings Corp.,* No. 25-cv-3608, 2025 U.S. Dist. LEXIS 212731, at *3 (S.D.N.Y. Oct. 28, 2025) (concluding the same premised on the Gramm-Leach-Bliley Act). OAG alleges no causes of action based on federal law; therefore, this Special Proceeding does not "arise under" federal law.

A.   **The CEA Preemption Defense Does Not Support Removal**

While OAG alleges no federal causes of action, Kalshi nevertheless argues that substantial questions of federal law exist because it intends to argue that the CEA preempts state gambling laws. But the Supreme Court has long made clear that federal defenses, including preemption arguments, do not create federal question jurisdiction even if the defense is anticipated in the plaintiff's complaint. *Caterpillar*, 482 U.S. at 393 ("[I]t is now settled law that

9

a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." (emphasis in original)).  "[The] Supreme Court has left no doubt that a case may not be removed to federal court, simply because the defendant may raise the defense of ordinary preemption." *Exxon Mobil*, 83 F.4th at 135–36 (cleaned up); *see also New York v. Shinnecock Indian Nation*, 686 F.3d 133, 139 (2d Cir. 2012) ("Because the complaint's references to federal law only anticipate and refute [the defendant's] defenses, they do not give rise to federal question jurisdiction."); *Comm'r of New York City Dep't of Soc. Servs. v. Buckeye Coach LLC*, No. 24-CV-326 (VSB), 2024 U.S. Dist. LEXIS 25890, at *7 (S.D.N.Y. Feb. 14, 2024) (finding that although defendant contended that plaintiff's New York state law claim implicated "substantial constitutional issues" these arguments "constitute[d] federal defenses to the Complaint and federal defenses are not grounds for removal"); *Nevada ex rel. Nevada Gaming Control Bd. v. Kalshiex, LLC*, No. 2:26-cv-00406-MMD-MDC, 2026 U.S. Dist. LEXIS 41964, at *8 (D. Nev. Mar. 2, 2026) (finding Kalshi's argument that the CEA preempted state gambling law claims did not provide grounds for removal).  Accordingly, Kalshi's CEA defense does not provide a basis for removal.

## B.    The Definition of "Unlawful" Requires no Reference to Federal Law

Kalshi argues that OAG's claims necessarily raise federal law because OAG cannot establish that Kalshi's event contracts are unlawful within the meaning of New York Penal Law "because they are authorized and regulated by federal law."  Notice at ¶ 17.  However, the Penal Law specifically defines "unlawful."  Penal Law § 225.00(12) ("'[U]nlawful' means not specifically authorized by law.").  And the referenced "law" is New York State law.  *See People v. Kim*, 154 Misc. 2d 346, 350 (Crim. Ct. Bronx Cnty. 1992) (determining that "[unlawful] is to be interpreted as referring to the laws of New York State").  Thus, the only questions a court need determine to establish Kalshi's liability under Penal Law Sections 225.05 and 225.10 are

whether Kalshi knowingly advanced or profited from gambling and whether that gambling activity was authorized by New York State law.  Kalshi's claim that federal law authorizes its actions and therefore preempts OAG's claims is a mere affirmative defense which cannot support federal question jurisdiction, particularly where, as here, this Court has already rejected the defense.

### C.  The Federal Wire Act Safe Harbor Does Not Support Removal

Kalshi cannot establish, as argued in its Notice of Removal, that OAG's cause of action under New York Executive Law § 63(12) for repeated and persistent violations of the Wire Act, 18 U.S.C. § 1084(a), necessarily depends on substantial questions of federal law.  As noted above, all of OAG's claims are state law claims under Executive Law § 63(12) and the mere need to apply a federal law in a state-law claim will not]suffice to open the "arising under" door. *Grable*, 545 U.S. at 313.  Rather, a defendant must establish that plaintiff's claim "really and substantially involves a dispute or controversy respecting the validity, construction or effect of federal law." *Id.* (cleaned up).  "[M]ost federal law questions raised in connection with state law claims will not be deemed substantial." *NASDAQ OMX Group, Inc. v. UBS, Sec., LLC*, 770 F.3d 1010, 1029 (2d Cir. 2014).

Kalshi makes two claims as to why the Wire Act involves a disputed and substantial question under federal law.  First, Kalshi argues that "event contracts are not 'bets' or 'wagers' within the meaning of federal law," citing 31 U.S.C § 5362(1)(E)(ii).  Notice at ¶ 20.  Second, Kalshi raises the Wire Act's safe harbor provision. *Id.*  Neither of these issues satisfies the *Grable-Gunn* test.

In an attempt to establish its first claim, Kalshi borrows a provision from the Unlawful Internet Gambling Enforcement Act ("UIGEA"), Section 5362(1)(E)(ii), that excludes any transaction conducted on or subject to the rules of a registered entity from the definition of "bet

11

or wager." However, such an argument is plainly foreclosed by the UIGEA's express statement that "[n]o provision of this subchapter shall be construed as altering, limiting, or extending any Federal or State law . . . prohibiting, permitting, or regulating gambling within the United States." 31 U.S.C. § 5361(b). The words "bets" or "wagers" can easily be interpreted and merely require the application of law to a particular set of facts, *see DailyPay, Inc.,* 2025 U.S. Dist. LEXIS 186217, at *17, and the UIGEA is a payment-processing law that has no bearing on this case and does not raise a substantial federal question, *see Ho-Chunk Nation v. Kalshi Inc.*, No. 25-cv-698-wmc, 2026 U.S. Dist. LEXIS 103977, at *26–29 (W.D. Wis. May 11, 2026) (distinguishing *Blue Lake Rancheria v. Kalshi Inc.*, No. 25-cv-06162-JSC, 2025 U.S. Dist. LEXIS 221764, at *18 (N.D. Cal. Nov. 10, 2025) and holding that merely because the UIGEA does not encompass transactions on a designated contract market, does not mean that it makes them legal under other laws).

Kalshi's safe harbor argument relies on a potential affirmative defense. *See United States v. Eremian,* No. 10-10159-PBS, 2012 U.S. Dist. LEXIS 63215, at *12 (D. Mass. May 4, 2012) ("[18 U.S.C. § 1084(b)] safe harbor provision constitutes an affirmative defense."); *see also United States v. Mayo*, 705 F.2d 62, 75 (2d Cir. 1983) (finding that exceptions to laws that do not negate any element of a crime are an affirmative defense). But an affirmative defense cannot confer federal question jurisdiction. *City of New York v. Exxon Mobil Corp.*, 733 F. Supp. 3d 296, 314 (S.D.N.Y. 2024) ("The fact that Defendants may have a [federal] defense . . . is not adequate to establish the *Grable* exception.").

Moreover, the safe harbor is also inapplicable here. The safe harbor only applies to the providing of betting information, but not the receipt of bets. 18 U.S.C. § 1084(b);[4] *United States*

---

[4] 18 U.S.C. § 1084(b) provides:

*v. Cohen,* 260 F.3d 68, 73 (2d Cir. 2001) (finding safe harbor applies if "(1) betting is legal in both the place of origin and the destination of the transmission; and (2) the transmission is limited to mere information . . . .").[5]  Accordingly, because OAG has alleged that Kalshi accepts interstate bets and not merely transmits information (*see* Pet., Eighth Cause of Action), interpretation of the safe harbor is unnecessary and this cause of action therefore does not raise a substantial question of federal law.[6]

### D.        Removal Would Disrupt the Federal-State Balance

The final *Grable-Gunn* factor, disruption of federal-state balance, weighs in favor of remand.  "Where the suit was brought by a State itself . . . the claim of sovereign protection from removal in such circumstances arises in its most powerful form." *Standard & Poor's*, 23 F. Supp. 3d at 392 (cleaned up).  Here, OAG is exercising traditional state police powers in an area the State has policed for over 250 years.  *Saratoga Cnty.*, 100 N.Y.2d at 825-30 (Smith, J., concurring in part) (noting that New York's interest in regulation of gambling spans over 250 years).  As the court in *Washington v. KalshiEX* found, "[i]t is well established that gambling regulation is within a state's police powers (and that states have significant social and other interests in regulating such activity)." 2026 U.S. Dist. LEXIS 99374, at *3 (citation omitted)

---

Nothing in this section shall be construed to prevent the transmission in interstate or foreign commerce of information for use in news reporting of sporting events or contests, or for the transmission of information assisting in the placing of bets or wagers on a sporting event or contest from a State or foreign country where betting on that sporting event or contest is legal into a State or foreign country in which such betting is legal.

[5] Kalshi relies on *W. Flagler Assocs., Ltd. v. Haaland*, 71 F.4th 1059 (D.C. Cir. 2023), to argue that bets placed to and from states where betting is lawful fall within the safe harbor of Section 1084(b).  But the D.C. Circuit was addressing whether an Indian Gaming Regulatory Act compact was invalid because it authorized a violation of the Wire Act.  *Id.* at 1069.  Although the court stated in dicta that the safe harbor applied to bets, the court did not actually address Section 1084(b)'s applicability because hypothetical violations of federal law were not relevant to the validity determination.  *Id.*  In any event, the Second Circuit has squarely addressed this issue as stated above.

[6] To the extent Kalshi argues that the safe harbor applies because of the preemptive effect of the CEA, this argument relies on a preemption defense not appropriate for consideration under the *Grable-Gunn* test as noted above.  *See, supra*, Part II.A.

(finding removal would disturb the federal-state balance provided by Congress); *see also Murphy*, 584 U.S. at 453, 458–59 (describing history of state gambling laws); *Ah Sin v. Wittman*, 198 U.S. 500, 505–06 (1905) ("The suppression of gambling is concededly within the police powers of a State.").  Where Congress has enacted laws involving gambling, it has often acted, as with the Wire Act, to "assist various States . . . in the enforcement of their laws pertaining to gambling, bookmaking, and like offenses."  H.R. Rep No. 87-967, at 1–2 (1961); *see also People v. World Interactive Gaming Corp.*, 185 Misc. 2d 852, 861–62 (Sup. Ct., N.Y. Cnty. 1999) (noting the legislative history and applying the Wire Act to betting in New York under Executive Law § 63(12)).

In contrast, Kalshi's claimed federal interest is simply an overreach that would disrupt the federal-state balance.  Kalshi seeks to shield itself from state regulation of gambling through an overbroad reading of federal law contrary to the intent of Congress.  *See Williams*, 2026 U.S. Dist. LEXIS 149977, at *26 (noting that "Congress sought to prohibit the exact types of event contracts that Kalshi seeks to offer").  Otherwise, giving due consideration to the well-pleaded complaint rule, Kalshi raises no issue that is asserted on the face of OAG's petition that would result in "interpretation of federal law that would be controlling in numerous other cases," or would tend to "affect[] the government's practices in other cases."  *DailyPay, Inc.*, 2025 U.S. Dist. LEXIS 186217, at 16–17 (internal citations and quotations omitted).  Under these circumstances, New York's enforcement action is an exercise of traditional state police power that should be left to resolution in state court.

## II.    Removal Is Not Warranted Under 28 U.S.C. § 1442(a)(1)

Kalshi contends without merit that the CFTC is a necessary party under CPLR § 1001, and that had OAG named the CFTC as a defendant, this Court would have jurisdiction under the

14

federal officer removal statute, 28 U.S.C. § 1442(a)(1).  Notice ¶ 37.  Pursuant to CPLR

§ 1001(a)(1), a party is a necessary party if: (i) it would "be inequitably affected by a judgment

in the action" or (ii) its presence is required for the court to provide "complete relief . . . between

the persons who are parties to the action."  *Accord* Fed. R. Civ. P. 19(a).  Neither concern is

present here.

      With respect to the first prong, New York courts have held that unnamed parties are

"inequitably affected" only where they have concrete interests or rights that could be adversely

impacted by a judgment rendered in their absence.  *See, e.g., Jim Ludtka Sporting Goods, Inc. v.*

*City of Buffalo Sch. Dist.*, 48 A.D.3d 1103, 1104 (4th Dep't 2008) (holding apparel company

with school contract was necessary party where "relief sought, i.e., nullifications of its contract

with respondents, would inequitably affect its rights"); *Llana v. Town of Pittstown*, 245 A.D.2d

968, 968–69 (3d Dep't 1997) (finding property owners were indispensable parties in case

challenging local zoning law that would inequitably affect their rights); *Dyno v. Rose*, 687

N.Y.S.2d 497, 500 (3d Dep't 1999) (concluding landowner was necessary party in action by

neighbor seeking a default judgment and preliminary injunction against him which would

inequitably affect his rights).  Here, notwithstanding its position with respect to its jurisdiction

under the CEA, the CFTC has no concrete interest or right in the outcome of this proceeding.

      With respect to the second prong, OAG has not sought to enforce any claim against the

CFTC, and the relief OAG seeks only involves Kalshi.  Accordingly, there is no basis to

conclude that the state court cannot grant complete relief between the parties without the CFTC.

*See generally* Petition, ECF No. 1-1; *see also Nevada v. Kalshiex*, 2026 U.S. Dist. LEXIS 41964,

at *14–15 (finding CFTC was not necessary party because the relief requested was narrowly

directed at defendant under Nevada law); *Washington*, 2026 U.S. Dist. LEXIS 99374, at *3–4

(finding CFTC was not a necessary party because plaintiff was "not directly attempting to interfere with defendant's CFTC dealings"); *Cruz v. Doar*, 994 N.Y.S.2d 233, 240–41 (Sup. Ct. N.Y. Cnty. 2013) (finding respondent had failed to show that nonparty New York State Office of Temporary and Disability Assistance was a necessary party under CPLR § 1001 because petitioner's requested relief, including injunction, only involved respondent).

Kalshi claims nevertheless that the CFTC has a purported "substantial interest" in this action because the CFTC commenced its own lawsuit against the State of New York.  There, the CFTC seeks to protect the "CFTC's ability to apply and enforce its own regulations and the federal CEA."  *See* CFTC Complaint ¶ 12.  Yet, the need to "defend[] the validity of its own laws" is not a concrete interest requiring joinder as a necessary party.  *Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*, 795 F.3d 351, 359 (2d Cir. 2015) (rejecting the State of New York's argument that its "interest[] in defending the validity of its own laws" made it a necessary party in action challenging the constitutionality of a state statute).  Nor does the CFTC's failed attempt to obtain a temporary restraining order against New York on Kalshi's behalf to prevent OAG from moving forward with the instant proceeding provide a basis to conclude that the CFTC is a necessary party.  Order, *United States v. New York*, No. 1:26-cv-3404 (S.D.N.Y. July 31, 2026), ECF No. 121 (following improper removal of this action by Kalshi, denying the CFTC's TRO request without prejudice to renew due to the CFTC's failure to demonstrate "a high likelihood of success on the merits or a likelihood of irreparable harm").[7]

Kalshi has cited to no legal authority showing that a private actor can seek Section 1442 removal on behalf of a nonparty federal agency, and Kalshi's argument, if accepted, would

---

[7] Notably, Kalshi fails to explain why the court would be unable to grant complete relief between the parties without the CFTC's involvement, nor can it, given that the relief OAG seeks is narrowly directed at Kalshi.

16

drastically expand the reach of the federal officer removal statute by permitting private actors to preemptively remove an action that asserts only state law claims simply by asserting that a federal agency has a presumed interest in an action and must be joined.[8] *Washington*, 2026 U.S. Dist. LEXIS 99374, at *4 (stating that Kalshi had submitted no authority showing that a failure to join a necessary party triggers removal under Section 1442(a)(1) if the nonparty is the United States or a federal agency).

Accordingly, Kalshi has failed to show it is entitled to remove this proceeding under the federal officer removal statute.

### III.    There Is No Basis for Removal Under 28 U.S.C. § 1442(a)(2)

Kalshi's final unavailing argument is that its CFTC designation provides a basis for removal under 28 U.S.C § 1442(a)(2).  Notice ¶ 24.  Removal is only permitted under § 1442(a)(2) where (1) the removing party is "[a] property holder whose title is derived" from a federal officer, and (2) the state court action "affects the validity of any law of the United States."  Kalshi fails to establish either prong.

First, Kalshi fails to establish that it is a "property holder" that holds "title" to its CFTC designation for purposes of § 1442(a)(2).  Courts apply § 1442(a)(2) in cases where real, not intangible, property is at issue.  *Washington*, 2026 U.S. Dist. LEXIS 99374, at *4 (collecting cases).  The plain text of § 1442(a)(2) compels the conclusion that the failure to establish "title" derived from a federal officer is fatal to removal under § 1442(a)(2).  *See Annemid RI LLC v. Griffin*, No. 22-cv-00108, 2022 U.S. Dist. LEXIS 134512, at *6 (D. Conn. July 28, 2022) (finding no proper basis for removal where defendant did not allege "title" to alleged property).

---

[8] Kalshi does not and cannot attempt to argue that it is a federal officer or that it was acting under the CFTC when it engaged in the misconduct at issue in the action. *See Nevada v. Blockratize Inc.*, No. 26-cv-00089-MMD-CLB, 2026 U.S. Dist. LEXIS 41671, at *5 (finding that defendant failed to show it was acting under the CFTC as required for federal officer removal by self-certifying its event contracts or by regulating access to its market).

Moreover, OAG is not seeking any relief concerning Kalshi's CFTC designation, OAG's state-law claims have no bearing on Kalshi's CFTC designation, and any purported "property" right Kalshi has to its CFTC designation is not at issue in this case.  Kalshi's proposed interpretation of § 1442(a)(2) would expand the scope of the statute considerably and stretch it far beyond the limits of its "language context, history, and purpose."[9]  *See Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147, 153 (2007).

Second, Kalshi does not come close to establishing that OAG's Special Proceeding attacks the validity of any federal law.  *See Veneruso v. Mount Vernon Neigh'd. Health Ctr.*, 586 Fed. App'x 604, 608 (2d Cir. 2014) (finding arguments that federal statutes and regulations do not provide a defense to plaintiff's claims do not challenge the validity of any federal law); *Town of Stratford v. City of Bridgeport*, 434 F. Supp. 712, 715 (D. Conn. 1977) (concluding removal improper where plaintiff's suit did not attack the validity of any federal law); *Annemid*, 2022 U.S. Dist. LEXIS 134512, at *6–7 ("[I]t is not enough that the action merely implicate or involve a federal law; instead, the action must call into question the validity of a federal law.").  Kalshi's entire argument is nothing more than a regurgitation of its already-rejected preemption defense, which is not a basis for removal.  *See Stratford*, 434 F. Supp. at 715 ("While [defendant] may have federal law matters that it wishes to raise as a defense to [plaintiff's] action, such defensive matters do not supply removal jurisdiction under § 1442(a)(2)."); *accord Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 669 (E.D. Tex. 1999).

---

[9] Although Kalshi spills a lot of ink citing cases involving property interests protected under various state or federal law or the Due Process Clause of the Constitution, Kalshi does not cite a *single* case that equates having a Due Process-protected property interest with holding title derived from a federal officer.  Nor does Kalshi cite any authority remotely suggesting that § 1442(a)(2) provides a right of removal for any and every case tangentially involving a property interest.  The sole case cited by Kalshi that found removal under § 1442(a)(2) proper involved a dispute over land and the removing party *held beneficial title* to it.  *See Carney v. Washington*, 551 F. Supp. 3d 1042, 1054 (W.D. Wash. 2021).

In sum, Kalshi's removal based on 28 U.S.C § 1442(a)(2) is wholly improper and remand is warranted. *Washington*, 2026 U.S. App. LEXIS 14736, at \*4 (rejecting Kalshi's argument that it was a property holder and finding that Kalshi failed to provide any compelling reason to adopt this argument).

**IV.    New York Is Entitled to the Expedited Relief and Expedited Procedures Specifically Authorized Under New York State Law**

OAG brought this Special Proceeding to protect vulnerable New Yorkers and others who are being victimized by Kalshi's unlicensed and illegal gambling activities.  OAG is entitled to obtain swift relief by filing a special proceeding under Executive Law § 63(12) "pursuant to a state statute that specifically selects the New York State Supreme Court as the proper forum for such a suit." *DailyPay, Inc.*, 2025 U.S. Dist. LEXIS 186217, at \*20-21 (citations omitted).  "In a state special proceeding, the State has at its disposal certain procedures designed to facilitate a summary disposition of the issues presented — procedures that the State would be forced to forgo were the case removed to federal court." *Id.* (citing *Davidson v. Capuano*, 792 F.2d 275, 280 (2d Cir. 1986) (describing the differences between a New York special proceeding and an ordinary civil action)).  Moreover, this Special Proceeding "was brought by the State itself, and therefore 'the claim of sovereign protection from removal' is 'at its zenith.'" *Id.* (citing *In re Standard & Poor's*, 23 F. Supp. 3d at 392).

**V.    The Court Should Award OAG Fees and Costs**

The Court should award costs and attorneys' fees to OAG pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, incurred as a result of the removal."

"Absent unusual circumstances, courts may award attorneys' fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.

19

Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005). District courts have the discretion to award fees in "unusual circumstances" even when an objectively reasonable basis exists. *Id.* Objective reasonableness is evaluated based on the circumstances as of the time that the case was removed." *Williams v. Int'l Gun-A-Rama*, 416 F. App'x 97, 99 (2d Cir. 2011). As the Supreme Court has observed, "[t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff." *Martin*, 546 U.S. at 141.

"An award [of fees and costs] is appropriate where 'the removal basis asserted . . . was contrary to overwhelming authority.'" *Counsel Fin. Holdings v. Law*, No. 20-CV-01698(LJV)(JJM), 2021 U.S. Dist. LEXIS 16920, at *5 (W.D.N.Y. Jan. 27, 2021) (quoting *Wallace v. Wiedenbeck,* 985 F. Supp. 288, 291 (N.D.N.Y. 1998)). Here, Kalshi's arguments for removal have been repeatedly rejected by district and circuit courts across the country (*see supra* p. 3), and Kalshi's notice of removal did not cite a *single decision* in which a matter was found to have been properly removed in similar circumstances. Even more significant, less than 24 hours after this action was filed, Kalshi improperly removed this action arguing, *inter alia*, that OAG's claims are preempted by the CEA. Yet, only a few weeks prior, this Court denied Kalshi's request for a preliminary injunction and ruled against Kalshi on this issue. *Williams,* 2026 U.S. Dist. LEXIS 149977. Accordingly, an award of costs and fees is warranted here because not only did Kalshi lack an objectively reasonable basis for removal, but this case also presents the type of "unusual circumstances" weighing in favor of a fee award. *See City of New York v.*

20

*Exxon Mobil Corp.*, 154 F.4th 36, 48 (2d Cir. 2025) (affirming district court's award of fees and costs based on the "unusual circumstances" exception because although the district court found one of the defendant's grounds for removal to be objectively reasonable, defendant's arguments in support of removal had been rejected by multiple circuit and district courts in similar cases filed against defendant); *State v. Unitedhealthcare of New York, Inc.*, No. 1:25-CV-00087 (AMN/DJS), 2026 U.S. Dist. LEXIS 69381, at *46–57 (N.D.N.Y. Mar. 31, 2026) (awarding OAG attorneys' fees on the grounds that defendant lacked a reasonably objective basis for removing case based on complete ERISA preemption where defendant failed to cite any analogous cases that were removed under similar circumstances and finding that unusual circumstances weighed in favor of a fee award because of defendant's delay tactics); *see also* Order at 13–14, *Nessel*, 26-cv-00731-PLM, ECF 20 (denying the State of Michigan's request for costs and attorneys' fees incurred as a result of Kalshi's removal but stating that "[Kalshi] is on a losing streak with similar arguments [in support of removal] in district courts across the country . . . Perhaps this decision will be the tipping point for a future court on a similar motion"). Kalshi's argument in favor of removal is contrary to overwhelming authority, is objectively unreasonable given the litany of district courts that have rejected Kalshi's arguments, and as such OAG should be awarded reasonable attorneys' fees and costs of litigating this motion.

## CONCLUSION

For the reasons set forth above, the Court should remand this action back to the Supreme Court of the State of New York, County of New York.

21

Dated:  New York, New York
        August 7, 2026

                    Respectfully submitted,

                    LETITIA JAMES,
                    Attorney General of the State of New York


By:  */s/ K. Brent Tomer*
     K. Brent Tomer
     Alejandra de Urioste
     Nina M. Varindani
     Assistant Attorneys General
     Investor Protection Bureau
     28 Liberty Street, 21st Floor
     New York, New York 10005
     Tel: 212-416-8081
     Brent.Tomer@ag.ny.gov
     Alejandra.deUrioste@ag.ny.gov
     Nina.Varindani@ag.ny.gov

     Tanya Trakht
     Senior Enforcement Counsel
     Investor Protection Bureau
     Tanya.Trakht@ag.ny.gov

     *Counsel for the People of the State of New York*

22

## WORD COUNT CERTIFICATION

In accordance with Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and the Court's Individual Practices, I hereby certify that the Memorandum of Law in Support of Petitioner's Motion to Remand contains 6968 words (including footnotes), exclusive of cover page, tables of contents and authorities, and signature block, as established using the word count function of Microsoft Word.

/s/ *K. Brent Tomer*
K. Brent Tomer
Assistant Attorney General

23