**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>*Plaintiff*,<br><br>v.<br><br>KALSHIEX LLC,<br><br>*Defendant.* | Case No. 26-cv-6550-VSB |

**DEFENDANT KALSHIEX LLC's**
**<u>OPPOSITION TO PLAINTIFF'S MOTION TO REMAND</u>**

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 3

A. The CEA Grants the CFTC Exclusive Jurisdiction Over Trading on DCMs. ........ 3

B. Event Contracts Traded on Kalshi's DCM Are Subject to Extensive Federal Regulation. ........ 4

C. This Litigation, Related Federal Court Actions, and Regulatory Developments. ........ 5

ARGUMENT ........ 7

I. THE STATE'S CLAIMS NECESSARILY RAISE DISPUTED AND SUBSTANTIAL FEDERAL QUESTIONS UNDER *GRABLE*. ........ 7

A. Federal Law Is Necessarily Raised by the State's Claims. ........ 7

1. Count VIII Is Expressly Premised on a Violation of Federal Law. ........ 8

2. The State's Penal Law Claims Depend on Whether Kalshi's Contracts Are "Unlawful Gambling." ........ 11

3. The State's Contrary Arguments Fail. ........ 13

B. The Federal Issues Are Actually Disputed, Substantial, and Best Resolved in Federal Court. ........ 15

II. REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE. ........ 18

A. Removal Is Appropriate Under 28 U.S.C. § 1442(a)(2). ........ 19

1. Kalshi Is a Property Holder with Title Derived from the CFTC. ........ 19

2. The State's Action Affects the Validity of the CEA. ........ 21

B. Artful Pleading Cannot Defeat Federal Officer Removal Under 28 U.S.C. § 1442(a)(1). ........ 23

1. New York Law Required Joinder of the CFTC. ........ 23

2. The State's Objections Do Not Defeat Jurisdiction. ........ 24

III. THE PROCEDURAL LABEL OF THIS ACTION DOES NOT CHANGE THIS COURT'S JURISDICTION. ........ 25

IV. FEES ARE UNWARRANTED BECAUSE REMOVAL WAS OBJECTIVELY REASONABLE. ........ 26

CONCLUSION ........ 27

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*New York ex rel. Abrams v. Citibank, N.A.*,
537 F. Supp. 1192 (S.D.N.Y. 1982)....................9

*Am. Trucking Ass'n v. N.Y. State Thruway Auth.*,
795 F.3d 351 (2d Cir. 2015)....................24

*Annemid RI LLC v. Griffin*,
2022 WL 3009773 (D. Conn. July 28, 2022) ....................20

*Arrington v. Medtronic, Inc.*,
130 F. Supp. 3d 1150 (W.D. Tenn. 2014)....................12

*Carney v. Washington*,
551 F. Supp. 3d 1042 (W.D. Wash. 2021)....................22, 23

*Casale v. Metro. Transp. Auth.*,
2005 WL 3466405 (S.D.N.Y. Dec. 19, 2005) ....................26

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987)....................7

*Chevron USA, Inc. v. Plaquemines Par.*,
608 U.S. __, 146 S. Ct. 1052 (2026)....................19

*Churchill Downs Tech. Initiatives Co. v. Mich. Gaming Control Bd.*,
162 F.4th 631 (6th Cir. 2025) ....................18, 19

*Colorado v. Symes*,
286 U.S. 510 (1932)....................20

*D'Alessio v. N.Y. Stock Exch., Inc.*,
258 F.3d 93 (2d Cir. 2001)....................18

*Dickson v. Uhlmann Grain Co.*,
288 U.S. 188 (1933)....................19

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Trades Council*,
485 U.S. 568 (1988)....................13

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)....................17

*Faulk v. Owens-Corning Fiberglass Corp.*,
48 F. Supp. 2d 653 (E.D. Tex. 1999)....................23

*Freeman v. Burlington Broadcasters, Inc.*,
204 F.3d 311 (2d Cir. 2000)....................26

*Ga. Gambling Recovery LLC v. Kalshi Inc.*,
2026 WL 279375 (M.D. Ga. Feb. 3, 2026)....................8, 13, 27

*Gen. Elec. Co. v. Metals Res. Grp. Ltd.*,
741 N.Y.S.2d 218 (App. Div. 2002)....................12

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005)....................7, 8

*Gunn v. Minton*,
568 U.S. 251 (2013)....................1, 7, 15, 16

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*,
824 F.3d 308 (2d Cir. 2016)....................8

*New York ex rel. James v. DailyPay, Inc.*,
2025 WL 2695712 (S.D.N.Y. Sep. 19, 2025)....................10, 17

*New York ex rel. James v. MoneyLion Inc.*,
2025 WL 3154497 (S.D.N.Y. Nov. 12, 2025)....................10, 17

*New York ex rel James v. Nat'l Gen. Holdings Corp.*,
2025 WL 3013095 (S.D.N.Y. Oct. 28, 2025)....................17

*People ex rel. James v. Trump*,
237 N.Y.S.3d 443 (Mem) (App. Div. 2025)....................8

*Jefferson Cnty. v. Acker*,
527 U.S. 423 (1999)....................23

*KalshiEX LLC v. CFTC*,
2024 WL 4164694 (D.D.C. Sep. 12, 2024)....................4

*KalshiEX LLC v. Johnson*,
832 F. Supp. 3d 954 (D. Ariz. 2026)....................2

*KalshiEX LLC v. Orgel*,
2026 WL 474869 (M.D. Tenn. Feb. 19, 2026).................... *passim*

*KalshiEX LLC v. Williams*,
2026 WL 1961872 (S.D.N.Y. July 7, 2026)....................2

*KalshiEX, LLC v. Flaherty*,
172 F.4th 220 (3d Cir. 2026), (D.N.J. Apr. 28, 2025).................... *passim*

*Kapps v. Wing*,
404 F.3d 105 (2d Cir. 2005)....................20

*Korea Life Ins. Co. v. Morgan Guar. Tr. Co. of N.Y.*,
269 F. Supp. 2d 424 (S.D.N.Y. 2003)....................12

*Martin v. Franklin Cap. Corp.*,
546 U.S. 132 (2005)....................26

*Merrell Dow Pharms. Inc. v. Thompson*,
478 U.S. 804 (1986)....................7, 8

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
456 U.S. 353 (1982)....................16

*NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*,
770 F.3d 1010 (2d Cir. 2014)....................18

*New York v. Arm or Ally, LLC*,
644 F. Supp. 3d 70 (S.D.N.Y. 2022)....................8

*Pasquantino v. United States*,
544 U.S. 349 (2005)....................20, 21

*People v. Kim*,
585 N.Y.S.2d 310 (Crim. Ct. 1992)....................12, 13

*Sarauer v. Int'l Ass'n of Machinists & Aerospace Workers*,
966 F.3d 661 (7th Cir. 2020)....................16

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
659 F.3d 234 (2d Cir. 2011)....................10

*Spinelli v. City of New York*,
579 F.3d 160 (2d Cir. 2009)....................20

*St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc.*,
809 F. Supp. 2d 524 (E.D. La. 2011)....................21

*Still v. DeBuono*,
927 F. Supp. 125 (S.D.N.Y.)....................26

*Town of Stratford v. City of Bridgeport*,
434 F. Supp. 712 (D. Conn. 1977)....................23

*Treglia v. Town of Manlius*,
313 F.3d 713 (2d Cir. 2002)....................10

*United States v. Minnesota*,
2026 WL 2150211 (D. Minn. July 27, 2026) ....................2, 3, 15, 16

*Veneruso v. Mount Vernon Neighborhood Health Ctr.*,
933 F. Supp. 2d 613 (S.D.N.Y. 2013)....................23

*Washington v. KalshiEX, LLC*,
2026 WL 1217743 (W.D. Wash. May 5, 2026)....................20, 21

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007)....................20

**Statutes**

7 U.S.C. § 1a....................4, 12, 13

7 U.S.C. § 2....................3, 4, 18

7 U.S.C. § 5....................12

7 U.S.C. § 7....................4, 21

7 U.S.C. § 7a-2....................4

7 U.S.C. § 7b....................20, 21

7 U.S.C. § 8....................20, 21

15 U.S.C. § 78aa....................18

18 U.S.C. § 1084....................5, 8, 17, 27

28 U.S.C. § 1331....................25

28 U.S.C. § 1367....................11

28 U.S.C. § 1441....................25

28 U.S.C. § 1442....................19, 22

31 U.S.C. § 5362....................9, 17

31 U.S.C. § 5365....................9

N.Y. Exec. Law § 63....................8

N.Y. Penal Law § 225.00....................11, 12, 13

N.Y. Penal Law § 225.05....................5, 11

N.Y. Penal Law § 225.10 .......... 5, 11

N.Y. Penal Law § 225.20 .......... 5

N.Y. Rac. Pari-Mut. Wag. & Breed. Law § 1367 .......... 5, 11, 13

N.Y. Rac. Pari-Mut. Wag. & Breed. Law § 1367-a .......... 5

**Other Authorities**

17 C.F.R. § 38.3 .......... 4, 20

17 C.F.R. § 38.151 .......... 24

Christopher J. Kirkpatrick, CFTC, *Order Directing Kalshi to Continue Exercising DCM Functions* at 5 (August 11, 2026), https://perma.cc/C6NW-4KFM .......... 24

Christopher J. Kirkpatrick, CFTC, *Order Staying Emergency Rule Filed by KalshiEX LLC and Directing Kalshi to Fulfill Open Trades Involving Michigan Residents* (July 14, 2026), https://perma.cc/82PB-J6QM .......... 22

*Commodity Futures Trading Commission Act: Hearings Before the S. Comm. on Agric. & Forestry on S. 2485, S. 2578, S. 2837, and H.R. 13113*, 93d Cong. (1974) .......... 3

N.Y. Const. art. I, § 9 .......... 5

N.Y. C.P.L.R. 1001 .......... 24

Order, *KalshiEX LLC v. Schuler*, No. 26-3196 (6th Cir. Apr. 24, 2026), Dkt. No. 26-2 .......... 6

Order, *KalshiEX LLC v. Williams*, No. 25-cv-8846 (S.D.N.Y. July 27, 2026), Dkt. No. 113 .......... 5

Order, *KalshiEX LLC v. Williams*, No. 26-1835 (2d Cir. July 29, 2026), Dkt. No. 32 .......... 5

Order, *United States v. New York*, No. 26-cv-3404 (S.D.N.Y. Aug. 10, 2026), Dkt. No. 135 .......... 6

Order, *Washington v. KalshiEX, LLC*, No. 26-3106 (9th Cir. May 21, 2026), Dkt. No. 19.1 .......... 21

Prediction Markets; Public Interest Determinations, 91 Fed. Reg. 35,806 (proposed June 12, 2026) (to be codified at 17 C.F.R. pt. 40) .......... 7

*Review of Commodity Exchange Act and Discussion of Possible Changes: Hearings Before the H. Comm. on Agric.*, 93d Cong. (1974) .......... 3

**PRELIMINARY STATEMENT**

This case should not be remanded. The People of the State of New York, by Letitia James, Attorney General of the State of New York (the "State"), seek to use state gaming laws to ban KalshiEX LLC ("Kalshi") from operating ***anywhere in the country***. While the State portrays this suit as a garden-variety state claim, it plainly is not. Kalshi offers federally regulated derivatives on its federally designated contract market ("DCM") pursuant to federal law and subject to the exclusive jurisdiction of the Commodity Futures Trading Commission ("CFTC"). Yet, the State seeks to stop all that trading, not only in New York, but throughout the entire nation. To do so, it must prove that Kalshi's event contracts are not authorized by federal law—and, on its Eighth Cause of Action, that Kalshi violated a federal criminal statute. That cannot be done without construing the Commodity Exchange Act ("CEA"), the CFTC's exercise of exclusive jurisdiction, the federal Wire Act, and the Unlawful Internet Gambling Enforcement Act ("UIGEA").

There are three independent bases for federal jurisdiction here. *First*, the State's claims necessarily raise disputed and substantial federal law issues. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). In fact, the State has said it "will affirmatively show" a violation of federal law to prove its claims. In parallel litigation in this Court involving the CFTC, the State acknowledged that Count VIII, which is premised on a violation of the federal Wire Act, "is not dependent on state law violations" and that the State will construe federal law to prove its claim. *See infra* Argument I.A.1. The State's admission is understandable because to establish its claims, the State must show that Kalshi's event contracts—federally regulated swaps traded on a CFTC-licensed DCM—are unlawful under federal law.

Although not the basis for removal here, application of state law to transactions on a DCM is preempted, as the Third Circuit and several district courts have concluded. The Third Circuit held that the CEA "preempts otherwise applicable state laws that purport to regulate sports-related

event contracts on CFTC-licensed DCMs." *KalshiEX, LLC v. Flaherty*, 172 F.4th 220, 228 (3d Cir. 2026), *aff'g* 2025 WL 1218313 (D.N.J. Apr. 28, 2025); *see also United States v. Minnesota*, 2026 WL 2150211, at *14-16 (D. Minn. July 27, 2026) (holding that the CEA's grant of "exclusive jurisdiction" to the CFTC over swaps traded on DCMs expressly preempts Minnesota's prediction market statute); *KalshiEX LLC v. Orgel*, 2026 WL 474869, at *7 (M.D. Tenn. Feb. 19, 2026), *appeal docketed*, No. 26-5235 (6th Cir. Mar. 23, 2026); *KalshiEX LLC v. Johnson*, 832 F. Supp. 3d 954, 960-61 (D. Ariz. 2026).

Pending litigation confirms that the federal question necessarily raised in the State's petition is substantial and disputed. The United States and the CFTC have filed ***nine*** affirmative suits to enjoin states from enforcing state gambling laws against CFTC-regulated DCMs.[1] The CFTC's action against New York itself seeks a declaration that New York's gambling laws are preempted as applied to CFTC-regulated DCMs. CFTC N.Y. Compl. That parallel action underscores why these issues belong in federal court—the risk of inconsistent state and federal rulings. The State's repeated invocation of the Court's decision in *KalshiEX LLC v. Williams* (*Williams I*), 2026 WL 1961872 (S.D.N.Y. July 7, 2026), *as amended*, 2026 WL 2017466 (July 13, 2026) (Mem. of Law in Supp. of Mot. to Remand 2, 14, 20, Dkt. No. 17 ("Mot.")), as a basis for arguing that any federal question is not substantial or disputed, is unavailing. *Williams I* denied a preliminary injunction on the merits under a likelihood-of-success standard, did not address removal jurisdiction, and—given conflicting rulings elsewhere—confirms that the federal issues

[1] *See* Complaints filed at Dkt. No. 1 in *United States v. Arizona*, No. 26-cv-2246 (D. Ariz. Apr. 2, 2026); *United States v. Connecticut*, No. 26-cv-498 (D. Conn. Apr. 2, 2026); *United States v. Illinois*, No. 26-cv-3659 (N.D. Ill. Apr. 2, 2026); *United States v. New York*, No. 26-cv-3404 (S.D.N.Y. Apr. 24, 2026) ("CFTC N.Y. Compl."); *United States v. Wisconsin*, No. 26-cv-749 (E.D. Wis. Apr. 28, 2026); *United States v. Minnesota*, No. 26-cv-2661 (D. Minn. May 19, 2026); *United States v. New Mexico*, No. 26-cv-1912 (D.N.M. June 12, 2026); *United States v. Kentucky*, No. 26-cv-49 (E.D. Ky. June 23, 2026); and Intervenor Compl., *KalshiEX LLC v. Furcolo*, No. 26-cv-327 (D.R.I. June 26, 2026), Dkt. No. 37 (collectively, the "CFTC Complaints").

are disputed and substantial. *See Flaherty*, 172 F.4th at 226-28; *Orgel*, 2026 WL 474869, at *7; *Minnesota*, 2026 WL 2150211, at *14-16.

*Second*, removal is proper under 28 U.S.C. § 1442(a)(2) because Kalshi's designation as a DCM constitutes property derived from the CFTC, and the State's action directly affects the validity of the CEA. If successful, it would pose a fundamental threat to the CFTC's exclusive jurisdiction under the CEA, risk creating a patchwork of state regulation that the CEA is designed to avoid, and risk invalidating the definition of "swap" in the CEA.

*Finally*, the State cannot evade federal jurisdiction through artful pleading. Under New York Civil Practice Law and Rules 1001(a) ("Rule 1001(a)"), the State was required to name the CFTC—a necessary party—and its strategic omission cannot defeat removal under 28 U.S.C. § 1442(a)(1).

For these reasons and those that follow, the motion to remand should be denied.

## BACKGROUND

### A. The CEA Grants the CFTC Exclusive Jurisdiction Over Trading on DCMs.

Congress enacted the CEA to centralize regulation of derivatives trading in a single federal agency, the CFTC. The CEA grants the CFTC "exclusive jurisdiction" over "transactions involving swaps or contracts of sale of a commodity for future delivery . . . traded or executed on a [designated] contract market." 7 U.S.C. § 2(a)(1)(A). This broad grant over instruments traded on federally regulated exchanges was intended to "prevent any possible conflicts over jurisdiction." *Review of Commodity Exchange Act and Discussion of Possible Changes: Hearings Before the H. Comm. on Agric.*, 93d Cong., 128 (1974). "[D]ifferent State laws would just lead to total chaos" absent "preemption." *Commodity Futures Trading Commission Act: Hearings Before the S. Comm. on Agric. & Forestry on S. 2485, S. 2578, S. 2837, and H.R. 13113*, 93d Cong., 685

(1974) (statement of Sen. Clark); *see also Flaherty*, 172 F.4th at 230.

The CFTC's exclusive jurisdiction encompasses swaps, which include the event contracts at issue in this case. 7 U.S.C. §§ 2(a)(1)(A), 7a-2(c)(5)(C)(i). Swaps are defined broadly as any transaction that provides for "any purchase, sale, payment, or delivery . . . dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event . . . associated with a potential financial, economic, or commercial consequence." *Id.* § 1a(47)(A)(ii). Event contracts allow users to take "yes" or "no" positions on a specified future event, such as whether the unemployment rate reported by the Bureau of Labor Statistics will exceed a certain percentage or whether a team scores a certain number of points in a particular sporting event.

### B. Event Contracts Traded on Kalshi's DCM Are Subject to Extensive Federal Regulation.

In 2020, the CFTC designated Kalshi as a DCM. *KalshiEX LLC v. CFTC*, 2024 WL 4164694, at *4 (D.D.C. Sep. 12, 2024). Designation requires an exchange to comply with a comprehensive regime of federal oversight, including 23 "Core Principles" governing market manipulation, risk minimization, recordkeeping, and capital reserves. 7 U.S.C. § 7(d); 17 C.F.R. § 38.3(a)(2). Since its approval, Kalshi has been regulated under federal law alongside other DCMs, like the Chicago Mercantile Exchange.

Kalshi offers many kinds of event contracts related to climate, technology, popular culture, economics, and agricultural and other tangible commodities. In January 2025, Kalshi began offering contracts on sports events. *Orgel*, 2026 WL 474869, at *5. When Kalshi first self-certified its sports-event contracts, the CFTC asked Kalshi to submit a "[d]emonstration of compliance" with the CEA. *Id.* Kalshi responded with detailed filings describing the contracts' compliance with the CEA and CFTC regulations. *Id.* The CFTC took no further action. It has

since permitted Kalshi and other prediction markets to list tens of thousands of sports-event contracts without objection.

### C. This Litigation, Related Federal Court Actions, and Regulatory Developments.

On July 31, 2026, the State filed this suit in state court, asserting state law claims under the federal Wire Act, 18 U.S.C. § 1084(a); New York State Constitution Article I, Section 9; New York Penal Law §§ 225.05, 225.10, 225.20; and New York Racing, Pari-Mutuel Wagering and Breeding Law §§ 1367, 1367-a, and seeking injunctive relief, civil penalties, disgorgement, restitution, treble damages, and production of accounting information in connection with Kalshi's operations. *See* Notice of Removal Ex. A at 22-29, Dkt. No. 1 ("Pet."). Kalshi removed this action the same day it was filed, asserting that those claims necessarily raised disputed and substantial federal law questions, that Kalshi is a holder of property derived from the CFTC, and that the State attempted to avoid federal officer jurisdiction through artful pleading.

The State filed the Petition together with an application for a temporary restraining order ("TRO") without notice, even though the State is already litigating this exact controversy in this Court and the Second Circuit. *See* Order, *Williams I*, No. 25-cv-8846 (S.D.N.Y. July 27, 2026), Dkt. No. 113; Order, *KalshiEX LLC v. Williams* (*Williams II*), No. 26-1835 (2d Cir. July 29, 2026), Dkt. No. 32. The State's application for a TRO is unprecedented and would effectively shut down Kalshi's exchange nationwide. No other state has sought remotely similar relief.

More than three months ***before*** the State filed its suit, the United States and CFTC also jointly filed suit against several states, including New York, to stop states from regulating event contracts as gambling or forcing prediction market participants to litigate in state court. *See* CFTC N.Y. Compl. As the CFTC explained, "New York's attempt to shut down federally regulated markets intrudes on the exclusive federal scheme Congress designed to oversee national swaps

markets." *Id.* ¶ 6. The CFTC seeks a judgment declaring that the state laws New York wishes to enforce are "preempted, unconstitutional and invalid" "as applied to transactions listed, offered, or executed on CFTC-Designated Contract Markets," and an injunction that would bar New York from enforcing those provisions by pursuing this action. *Id.* at 28-29. That parallel federal action is pending before Judge Lorna G. Schofield, with a hearing for the CFTC's request for injunction scheduled for September 14, 2026. *See* Order, *United States v. New York*, No. 26-cv-3404 (S.D.N.Y. Aug. 10, 2026), Dkt. No. 135.

Kalshi and other federally registered entities are also litigating these issues with other parties, including nineteen additional states, in federal courts across the country. In April, the Third Circuit affirmed a preliminary injunction order barring New Jersey from enforcing state gambling laws against Kalshi. *Flaherty*, 172 F.4th at 232. The court held that the CEA "preempts state gambling laws that seek to regulate futures trading, i.e., Kalshi's sports-related event contracts traded on a DCM under the exclusive jurisdiction of the CFTC." *Id.* at 230. Appeals relating to similar issues are pending in the Second, Fourth, Sixth, Seventh, Ninth, and Tenth Circuits.[2]

The CFTC's recent actions underscore that this case is not an ordinary state gambling dispute, but part of a nationwide federal-state conflict over whether states may apply gambling laws to derivatives traded on CFTC-regulated DCMs. The CFTC's June 2026 notice of proposed rulemaking reinforces that point, explaining that the CEA grants the CFTC "exclusive jurisdiction" over a comprehensive federal regulatory framework that preempts conflicting state law and confirming that event contracts like Kalshi's are derivatives subject to CFTC jurisdiction.

[2] *See Williams II*, No. 26-1835 (2d Cir.); *KalshiEX LLC v. Cafferelli*, No. 26-2239 (2d Cir.); *KalshiEX LLC v. Martin*, No. 25-1892 (4th Cir.); *KalshiEX LLC v. Schuler*, No. 26-3196 (6th Cir.); *United States v. Wisconsin*, No. 26-2675 (7th Cir.); *KalshiEX, LLC v. Assad*, No. 25-7516 (9th Cir.); *KalshiEX LLC v. Cox*, No. 26-4100 (10th Cir.).

Prediction Markets; Public Interest Determinations, 91 Fed. Reg. 35,806, 35,808 (proposed June 12, 2026) (to be codified at 17 C.F.R. pt. 40).

## ARGUMENT

### I. THE STATE'S CLAIMS NECESSARILY RAISE DISPUTED AND SUBSTANTIAL FEDERAL QUESTIONS UNDER *GRABLE*.

Federal courts have jurisdiction over state law claims that "implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Jurisdiction lies where the embedded federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Each requirement is satisfied here.

#### A. Federal Law Is Necessarily Raised by the State's Claims.

A federal law issue is "necessarily" raised when "the vindication of [the plaintiff's] right[s] under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citation omitted). A court looks to the "elements" of the plaintiff's claim and asks if any element requires the plaintiff to apply federal law to the "facts of [its] case" in order "[t]o prevail." *Gunn*, 568 U.S. at 259. Here, Count VIII is explicitly premised on a violation of federal law and so indisputably raises federal issues. And the other counts necessarily raise federal issues: The State cannot obtain relief without addressing whether Kalshi's event contracts are authorized by federal law.

The State contends (Mot. 9-10) that Kalshi's position reduces to a federal preemption defense barred by *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987), a case that addressed complete preemption. That argument misapprehends the basis of Kalshi's removal. Kalshi did not remove on the basis of preemption, complete or otherwise. Rather, it removed on the basis of embedded federal questions under *Grable*. *See* 545 U.S. at 314; *see also Merrell Dow*, 478 U.S. at 808 (jurisdiction turns on whether "the vindication of [the plaintiff's] right[s] under state law

necessarily turn[s] on some construction of federal law" (citation omitted)). The federal issues in this case arise through the state law's own definitional structure of its claims, not from any anticipated defense.

### 1. Count VIII Is Expressly Premised on a Violation of Federal Law.

Count VIII does not simply "raise[]" federal questions; it is "affirmatively 'premised' on a violation of [a] federal law." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (quoting *Grable*, 545 U.S. at 314). All eight causes of action arise under Executive Law § 63(12), which is actionable only upon a predicate "illegal" act. In Count VIII, the State alleges that Kalshi engaged in conduct that violates the federal Wire Act, 18 U.S.C. § 1084(a). *See* Pet. ¶¶ 12, 146-50. To prevail on its claim, the State must prove every element of the Wire Act offense. *See People ex rel. James v. Trump*, 237 N.Y.S.3d 443 (Mem), 527 (App. Div. 2025) ("The Attorney General concedes that illegality under Executive Law § 63(12) incorporates the elements of the underlying illegal conduct that is charged. Accordingly, the Attorney General must establish each element of the crime underlying each cause of action." (Higgitt, J., concurring)). This requires demonstrating, among other things, that Kalshi is engaged in the business of "betting or wagering" and that the events on which Kalshi's contracts are based constitute "sporting events or contests." 18 U.S.C. §§ 1084(a), (b).

Proving these elements necessarily means proving a federal law claim. *See Ga. Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 279375, at *3 n.3 (M.D. Ga. Feb. 3, 2026) ("Plaintiff's Complaint expressly alleges that Defendants' event contract offerings violate the Interstate Wire Act of 1961, 18 U.S.C. § 1084. . . . These allegations further confirm that resolution of Plaintiff's claim necessarily requires interpretation and application of federal law."); *New York v. Arm or Ally, LLC*, 644 F. Supp. 3d 70, 79 (S.D.N.Y. 2022) (finding removal proper where claims brought under New York General Business Law § 898-b required the State to "demonstrate that the

products at issue" "were 'firearms or component parts' thereof within the meaning of federal law."); *see also New York ex rel. Abrams v. Citibank, N.A.*, 537 F. Supp. 1192, 1195 (S.D.N.Y. 1982) ("By grounding its allegations of repeated illegal business practices on violations of EFTA, a federal statute, the Attorney General has incorporated EFTA, as an essential part of the claim, into the cause of action created by the State under Executive Law s 63(12).").

Determining whether Kalshi's event contracts constitute "betting or wagering" (Pet. ¶¶ 148-49) under the federal Wire Act necessarily involves ***two other*** federal statutes: UIGEA and the CEA. Specifically, the Wire Act does not define "betting or wagering," but Congress undertook to define those terms when it enacted UIGEA in 2006, a statute that specifically addresses the transmission of bets or wagers in interstate commerce over the Internet. *Cf.* 31 U.S.C. § 5365(c)(2) (discussing limitations on liability under the Wire Act if no liability under UIGEA). Under UIGEA, "bet or wager" expressly ***does not include*** "any transaction conducted on or subject to the rules of a registered entity . . . under the [CEA]" or other transactions covered by the federal commodities laws. *Id.* §§ 5362(1)(E)(ii)-(iv).

Therefore, in considering the Wire Act claim, the court must decide whether Kalshi's event contracts are bona fide swaps under the CEA subject to the CFTC's exclusive jurisdiction over transactions executed on a registered entity, *i.e.*, Kalshi's DCM.

The State does not—and cannot—contest that Count VIII necessarily raises federal questions. Indeed, in defense of the Wire Act claim brought under Executive Law § 63(12), the State has argued that the plain text of the Wire Act is "without any reference to state law and does not require a state law violation," and that the State will try to prove that claim by showing a violation of federal law. *See* Sur-Reply in Further Opposition to Pls' Mot. for Prelim. Inj. at 2, *United States v. New York*, 1:26-cv-3404-VM (S.D.N.Y. June 23, 2026), Dkt. No. 90. The authority relied upon by the State confirms that this necessarily raises a federal issue. *See New*

*York ex rel. James v. DailyPay, Inc.*, 2025 WL 2695712, at *5 (S.D.N.Y. Sep. 19, 2025) ("Counts VII and VIII are plainly predicated on DailyPay's alleged violations of the CFPA, a federal law. A court therefore could not resolve the case without reaching the federal issue of whether DailyPay's alleged conduct is proscribed by the CFPA."); *New York ex rel. James v. MoneyLion Inc.*, 2025 WL 3154497, at *3 (S.D.N.Y. Nov. 12, 2025) ("The OAG does not contest that MoneyLion's alleged violations of the CFPA satisfy the first prong of the *Grable-Gunn* test").

The State instead contends (Mot. 11-13) that whether Kalshi's event contracts are "bets" or "wagers" under the Wire Act, or the proper construction of UIGEA, are not substantial or disputed. But proving the Wire Act claim requires showing, via UIGEA's incorporation of the CEA, that Kalshi's products are ***not*** bona fide commodities transactions executed on a federal exchange subject to the CEA. Even assuming under the Wire Act and UIGEA questions were not substantial or disputed, the State's Wire Act claim ***still*** necessarily raises indisputably substantial and disputed questions under the CEA. The State requested TRO that would shut down Kalshi's exchange ***nationwide***.

Moreover, the remaining claims share a "common nucleus of operative fact" with Count VIII as required by 28 U.S.C. § 1367. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (citation omitted). Counts I through VII "arise[] out of approximately the same set of events" as Count VIII and allege the same facts for all counts: Kalshi's offering of event contracts on its federally regulated DCM. *See Treglia v. Town of Manlius*, 313 F.3d 713, 723 (2d Cir. 2002); *see* Pet. 22-29. Accordingly, there is supplemental jurisdiction over the remaining claims under § 1367, and all eight claims should be heard in this Court.[3]

[3] None of § 1367(c)'s exceptions justify partially remanding the claims. First, the State's claims raise no "novel or complex issue[s] of State law"; they raise "novel or complex issue[s] of" federal law. 28 U.S.C. § 1367(c)(1). Second, no remaining claims "substantially predominates over"

### 2. The State's Penal Law Claims Depend on Whether Kalshi's Contracts Are "Unlawful Gambling."

The State's claims invoke Executive Law § 63(12), requiring proof that Kalshi "engaged in repeated illegal acts." Pet. 22-29. The State must show that Kalshi's conduct—*i.e.*, offering access to event contracts on a prediction market—was "illegal." *Id.* ¶ 12. Count I requires proof that Kalshi violated Article I, Section 9 of the New York State Constitution by operating a "gambling Platform." *Id.* ¶¶ 99-104. Counts II through IV require proof that Kalshi "advance[d] or profit[ed] from ***unlawful*** gambling activity." N.Y. Penal Law §§ 225.05, 225.10 (emphasis added). "[U]nlawful" means "not specifically authorized by law." *Id.* § 225.00(12). Counts V through VII require that Kalshi's event contracts constitute "[s]ports [w]agering" defined as "wagering on sporting events or any portion thereof . . . by any system or method of wagering." N.Y. Rac. Pari-Mut. Wag. & Breed. Law § 1367(1)(x). To prevail, the State must prove that Kalshi's event contracts are "unlawful" gambling or "sports wagering" under state law and not specifically authorized under the CEA, requiring construction of federal law.

Kalshi is a federally regulated DCM offering swap contracts, which the CEA broadly defines as "any agreement, contract, or transaction . . . that provides for any purchase, sale, payment, or delivery (other than a dividend on an equity security) that is dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence." 7 U.S.C. § 1a(47)(A). The CEA grants the CFTC "exclusive jurisdiction" over "transactions involving swaps" traded on a designated contract market, and those transactions include event contracts. *Id.* §§ 1a(19)(iv), 1a(47)(A)(ii), 2(a)(1)(A); *Flaherty*, 172 F.4th at 226-30.

---

Count VIII; all eight claims arise out of the same facts. *Id.* § 1367(c)(2). Third, this Court has not "dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). Finally, the State identifies no "other compelling reasons" to decline supplemental jurisdiction. *Id.* § 1367(c)(4).

The Court cannot determine that Kalshi's event contracts are "unlawful" or that Kalshi operates a gambling platform or advances or profits from unlawful gambling activity without construing federal statutory language. State and federal courts confronting this precise issue already hold that swaps (which include event contracts) are not illegal gambling contracts. *Korea Life Ins. Co. v. Morgan Guar. Tr. Co. of N.Y.*, 269 F. Supp. 2d 424, 442 (S.D.N.Y. 2003) ("Derivatives transactions, forward contracts and swap agreements in currencies and commodities are not considered illegal gambles, and do not violate New York's gambling statute."); *Gen. Elec. Co. v. Metals Res. Grp. Ltd.*, 741 N.Y.S.2d 218, 219 (App. Div. 2002) (same). The CEA provides that "transactions subject to [the CEA]," including event contracts, "are entered into regularly in interstate and international commerce and are affected with a national public interest by providing a means for managing and assuming price risks, discovering prices, or disseminating pricing information through trading in liquid, fair and financially secure trading facilities." 7 U.S.C. § 5(a). Thus, to prove that Kalshi's event contracts are "unlawful" or "gambling" the State must prove that they are ***not*** subject to the CEA, despite the CEA's clear indication that these are routine, bona fide business transactions facilitating price discovery. These embedded federal issues are not defenses, but part of the State's foundational burden of demonstrating unlawfulness of the challenged activity. *Arrington v. Medtronic, Inc.*, 130 F. Supp. 3d 1150, 1159 (W.D. Tenn. 2014).

The State claims (Mot. 10-11) that "unlawful" under Penal Law § 225.00(12) specifically refers to New York law. But its sole cited authority, *People v. Kim*, 585 N.Y.S.2d 310, 311-12 (Crim. Ct. 1992), concerned an interstate lottery. It asked "whether the phrase 'authorized by law' refers to New York law or the laws ***of other sister States***." *Id.* at 313 (emphasis added). *Kim* did not address federal law. Excluding federal law would put Penal Law § 225.00(12) in conflict with the Supremacy Clause, unlike *Kim*'s question about other states' laws. The State reads *Kim* too expansively: interpreting § 225.00(12) to disregard federal law would have required consideration

of the canon of constitutional avoidance—a doctrine that counsels against the State's interpretation here. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Trades Council*, 485 U.S. 568, 575 (1988).

To determine the State's Racing Law claims, the State will have to prove that a "yes" or "no" position on a CFTC-regulated event contract is a "wager" rather than a federally regulated swap. But Congress has defined these instruments as "swaps" subject to the CFTC's exclusive jurisdiction. 7 U.S.C. §§ 1a(47)(A)(ii), 2(a)(1)(A). The Court thus cannot determine whether Kalshi engaged in "sports wagering" under the Racing Law without first deciding the federal question at the heart of this case: whether its event contracts are wagers or swaps under the CEA. The text of the Racing Law confirms the point. Section 1367(16)(a) makes it a violation to offer "unauthorized" sports wagering, and reaches only a person "not authorized to offer sports wagering" under the statute. Just as the Penal Law's reference to conduct "not specifically authorized by law," N.Y. Penal Law § 225.00(12), requires construing the federal authorization conferred by Kalshi's CFTC designation, so too the Racing Law's "authorized" element cannot be resolved without determining whether federal law authorizes Kalshi to offer these contracts. *See, e.g.*, *Ga. Gambling Recovery*, 2026 WL 279375, at *4 (denying remand, finding that plaintiff's state law claim required consideration of whether Kalshi's event contracts were unlawful under both state and federal law).

**3. The State's Contrary Arguments Fail.**

The State's Motion recasts its petition as raising garden-variety state gambling claims, but the requested relief is a sweeping attack on a federal regime. Its Petition targets a federal derivatives exchange and seeks not just to enjoin Kalshi from offering sports event contracts but to ***shut down Kalshi's exchange altogether, including in states other than New York***, based merely on the fact that Kalshi's federally licensed, 50-state exchange is ***located*** in New York. *See*

Pet. 29 (seeking an injunction against Kalshi's operation "***within or from New York*** or to persons in New York" (emphasis added)); *id.* (seeking to enjoin Kalshi from "operating a business that offers contracts relating to sports, culture, elections, ***and other events***" (emphasis added)). The requested injunction reaches every event contract product offered for sale on Kalshi's exchange—including contracts tied to financial, climate, agricultural, and other classes of commodities that are quintessential federally regulated derivatives—not merely the sports contracts the State emphasizes. Astonishingly, New York purports to have the authority to shut down a federal exchange through the application of state gambling laws, and would have this Court believe that nothing about those efforts merits the time or attention of a federal court. Those arguments defy credulity.

The State (Mot. 3) also emphasizes that other federal courts have remanded cases by other states against Kalshi but conspicuously omits that ***none*** involved a claim under federal law, as New York asserts here under the Wire Act—much less the indisputably substantial and disputed question of whether the CEA authorizes Kalshi's operation nationwide, including in New York. *See supra* Argument I.A.1. Moreover, the question of whether a federal question is necessarily raised on the face of a state-law claim is a state-by-state, claim-specific inquiry, and so those other decisions have little relevance.

Finally, the State's repeated invocation (Mot. 2, 14, 20) of *Williams I* conflates merits with jurisdiction. *Williams I* denied a preliminary injunction under a likelihood-of-success standard in a separate action, did not address removal jurisdiction, and is on appeal to the Second Circuit. A merits ruling cannot subtract from jurisdiction: The premise of *Grable* jurisdiction is that a federal question is necessarily raised and disputed, not that the removing party will win it. If anything, *Williams I*'s conflict with other courts establishes that the question is actually disputed and substantial. *See Flaherty*, 172 F.4th at 226-28; *Orgel*, 2026 WL 474869, at *7; *Minnesota*, 2026

WL 2150211, at *14-16. A court cannot decide that it has "already rejected" a federal question without deciding it. That ***is*** jurisdiction, not its absence.

### B. The Federal Issues Are Actually Disputed, Substantial, and Best Resolved in Federal Court.

The federal issue—whether Kalshi's event contracts are unlawful gambling or authorized swap transactions traded on a federal exchange subject to the CFTC's exclusive jurisdiction—is "actually disputed." It is the central point of contention in this litigation and in dozens of other cases pending in multiple district and appellate courts. The Third Circuit has issued a precedential decision in Kalshi's favor, federal courts in Arizona and Minnesota have granted the CFTC injunctive relief, appeals are pending in several circuits, and district courts have reached competing outcomes. *See supra* Background Section C. Those conflicting and developing rulings confirm that the federal issue is both "actually disputed" and "substantial." *See Gunn*, 568 U.S. at 258.

Whether Kalshi's event contracts are unlawful bets under state law or authorized by federal law is the "central point of dispute" on both the face of the Petition and state statutes underpinning the State's claims. *E.g.*, *Sarauer v. Int'l Ass'n of Machinists & Aerospace Workers*, 966 F.3d 661, 674 (7th Cir. 2020) ("[O]n the merits, it is the central point of dispute." (quoting *Gunn*, 568 U.S. at 259)). The State's reliance on *Williams I* as settling the matter is circular: *Williams I* is on appeal, and its reasoning conflicts with the Third Circuit's decision in *Flaherty* and district courts in Tennessee, Arizona, and Minnesota. *See Flaherty*, 172 F.4th at 226-28; *Orgel*, 2026 WL 474869, at *7; *Minnesota*, 2026 WL 2150211, at *14-16. A question decided differently by the Second and Third Circuits is, by definition, disputed.

The remaining two *Grable* elements are also satisfied. The federal law issues here are substantial because they are of "importance . . . to the federal system as a whole." *Gunn*, 568 U.S. at 260. The federal interest in regulating nationwide derivatives markets is undoubtedly strong.

*See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 390 (1982). Were the State to prevail, Kalshi's conduct would be simultaneously lawful under federal law—which permits event contracts on Kalshi's DCM in all 50 states—and unlawful under New York's gambling laws. That irreconcilable conflict, together with the CFTC's parallel enforcement suit against the State in this District, confirms substantiality. The State argues that the federal issues are not substantial because they are federal defenses (Mot. 9-10) and require no reference to federal laws (Mot. 10-13). But the central questions—whether event contracts are "betting or wagering" under the Wire Act and UIGEA, "unlawful" gambling or "sports wagering," and whether they fall within the CFTC's exclusive jurisdiction—are pure questions of statutory construction applicable to all event contracts on all DCMs nationwide. Their resolution will govern the operations of every federally regulated prediction market in every state.

The substantiality of the federal issues is independently confirmed by Count VIII. Kalshi's liability under the federal Wire Act turns on whether it is in the business of "betting or wagering." 18 U.S.C. § 1084(a), which cannot be resolved without construing UIGEA and the CEA. *See supra* Argument I.A.1; *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018). The question of whether Kalshi's event contracts traded on a federally regulated DCM constitute "bet[s] or wager[s]" under UIGEA is also being debated in federal courts across the country. *See, e.g.*, Renewed Mot. for Prelim. Inj. at 16-17, *KalshiEX LLC v. Cox*, No. 26-cv-151 (D. Utah Apr. 24, 2026), Dkt. No. 29; *Blue Lake Rancheria v. Kalshi Inc.*, No. 25-7504 (9th Cir.); *Blue Lake Rancheria v. Kalshi, Inc.*, No. 25-cv-6162 (N.D. Cal.); *Ho-Chunk Nation v. Kalshi, Inc.*, No. 25-cv-698 (W.D. Wis.); *Mescalero Apache Tribe v. Kalshi Inc.*, No. 26-cv-1517 (D.N.M.). Moreover, the Wire Act and UIGEA require deciding whether Kalshi's event contracts constitute swaps subject to federal commodities laws, and therefore do not fall within the definition of "bet[s]" or "wager[s]" under federal law. *See* 31 U.S.C. §§ 5362(1)(E)(ii)-(iv). That question is similarly the

subject of great debate in ongoing litigation. If that does not indicate a substantial federal issue, nothing does.

The State's other contrary arguments (Mot. 11-13) fail. Determining whether instruments that Congress has defined as "swaps" subject to the CFTC's exclusive jurisdiction are simultaneously "bets" under a separate federal criminal statute is not specific to the facts of this action. It is a question of pure statutory harmonization governing every DCM in every state—the opposite of the fact-bound inquiries at issue in *DailyPay*, *MoneyLion*, and *Nat'l General Holdings*, where the courts found that applying federal consumer-protection or data-privacy standards to a single company's business practices was "inherently fact-intensive" and would "provide little guidance in future cases." *DailyPay*, 2025 WL 2695712, at *7 (citation omitted); *New York ex rel James v. Nat'l Gen. Holdings Corp.*, 2025 WL 3013095, at *2 (S.D.N.Y. Oct. 28, 2025) (citation omitted); *see MoneyLion Inc.*, 2025 WL 3154497, at *4.

The State's own authority proves the point. The State (Mot. 11) quotes the Second Circuit's general caution that "most federal law questions raised in connection with state law claims will not be deemed substantial," *NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1029 (2d Cir. 2014), but omits that the Second Circuit ***found*** *Grable* jurisdiction, citing to the Securities Exchange Act's exclusive jurisdiction provision, *id.* at 1030-31. In finding *Grable* jurisdiction, the court relied on the implicated federal issue carrying "far-reaching prospective consequences" as "one of the most fundamental functions of a national securities exchange." *Id.* at 1027-28. The CEA's grant of exclusive jurisdiction to the CFTC over on-DCM swaps, 7 U.S.C. § 2(a)(1)(A), is at least as strong a signal as the Securities Exchange Act's exclusive jurisdiction provision, 15 U.S.C. § 78aa(a), and whether on-DCM event contracts are swaps goes to the most fundamental function of a designated contract market. *See also D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 101-04 (2d Cir. 2001).

Nor would exercising jurisdiction disrupt the federal-state balance approved by Congress. Because the CFTC's parallel suit against New York in this District raises the same federal questions, a federal court will resolve them regardless; the only question is whether a state court will simultaneously decide them, risking inconsistent results on matters within the CFTC's exclusive jurisdiction. The State contends (Mot. 13-14) that it is "exercising traditional state police powers." But this argument conflates the State's general police power over traditional gambling with the specific question of whether the CEA governs contracts traded on DCMs—two entirely separate inquiries.

Even accepting that states retain broad police powers over gambling, the regulation of ***interstate*** gambling is not a traditional area of state regulation. *See Churchill Downs Tech. Initiatives Co. v. Mich. Gaming Control Bd.*, 162 F.4th 631, 641 n.5 (6th Cir. 2025), and the fact that there are two federal statutes (the Wire Act and UIGEA) addressing the regulation of the transmission of bets and wagers in interstate commerce confirms the point. Moreover, before the CEA, many states regulated all futures trading as unlawful "gambling in grain." *Dickson v. Uhlmann Grain Co.*, 288 U.S. 188, 198 (1933). Congress ended that practice by imposing exclusive federal regulation. That the State lacks authority to regulate Kalshi's contracts does not mean it "lose[s] its ability to regulate [other] gambling." *Churchill Downs*, 162 F.4th at 643. The State's requested relief is not limited to traditional state police powers—it reaches Kalshi's entire federally-regulated derivatives market. *See* Pet. 29.

## II. REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE.

As the Supreme Court recently reaffirmed, the federal officer removal statute protects the federal government and private parties acting thereunder from state court interference with their

operations, and the statute must be read broadly. *Chevron USA, Inc. v. Plaquemines Par.*, 608 U.S. __, 146 S. Ct. 1052, 1063 (2026).

Here, the State's claim directly conflicts with the actions taken by a federal agency pursuant to federal law. The CFTC has claimed a substantial interest in the scope of its exclusive jurisdiction, and has initiated litigation against nine states, including New York, that are attempting to curtail that jurisdiction by enforcing preempted state laws. *See* CFTC Complaints. In these circumstances, removal under 28 U.S.C. § 1442 is proper for two reasons: *first,* the State's action is directed at holders of property derived from the CFTC (Kalshi's designation as a DCM), and would affect the validity of the CEA, and *second*, the State attempts to artfully plead around federal officer removal by excluding the CFTC—a necessary party—from this action.

**A. Removal Is Appropriate Under 28 U.S.C. § 1442(a)(2).**

Section 1442(a)(2) authorizes removal of a civil action directed against "[a] property holder whose title is derived from any . . . officer [of the United States or of any agency thereof], where such action . . . affects the validity of any law of the United States." 28 U.S.C. § 1442(a)(2). Both elements are satisfied. The federal officer removal statute "must be 'liberally construed,'" and its application fits comfortably within the facts presented here. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (citing *Colorado v. Symes*, 286 U.S. 510, 517 (1932)).

**1. Kalshi Is a Property Holder with Title Derived from the CFTC.**

The CFTC approved Kalshi's license to operate as a DCM pursuant to the CEA, and that federally issued license constitutes property. More precisely, that license confers defined federal operating rights: the right to provide a federally regulated market and clearing infrastructure for swaps, subject to statutory revocation procedures and federal judicial review. The Supreme Court has long recognized that intangible rights with commercial value qualify as "property." *Pasquantino v. United States*, 544 U.S. 349, 355-56 (2005). A government license grants a

property right if the license cannot be revoked before the end of its term without cause. *See Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009) (there is a property interest in a license if it can be "suspended only upon a satisfactory showing" of misconduct); *Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005). Each criterion is met here: Kalshi's CFTC-issued license creates clearly defined rights to provide services for trading swaps, is exclusively held unless transferred, and may be suspended or revoked by the CFTC only for cause and only after notice, a hearing, and an opportunity to appeal to federal court. 7 U.S.C. §§ 7b, 8(b); 17 C.F.R. § 38.3.

The State's response (Mot. 17-19)—that § 1442(a)(2) reaches only real property—rests on a pair of decisions that can be distinguished. *Annemid RI LLC v. Griffin*, 2022 WL 3009773 (D. Conn. July 28, 2022); *Washington v. KalshiEX, LLC*, 2026 WL 1217743 (W.D. Wash. May 5, 2026). *Annemid* turned on the fact that the defendant failed to allege "title" to any property derived from a federal officer and did not claim that the eviction action she attempted to remove "affects the validity of any law of the United States." 2022 WL 3009773, at *3 (citation omitted).

The *Washington* decisions do not aid the State. The district court there simply adopted the real-property reading of the court in *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc.*, 809 F. Supp. 2d 524, 535 (E.D. La. 2011) without independent analysis, *Washington*, 2026 WL 1217743, at *2, and the Ninth Circuit's cursory statement rejecting Kalshi's property-holder argument came only in denying a stay pending appeal under the likelihood-of-success standard—not in resolving the merits of removal jurisdiction. Order at 2, *Washington v. KalshiEX, LLC*, No. 26-3106 (9th Cir. May 21, 2026), Dkt. No. 19.1. But *St. Bernard* turned on the fact that the defendant had no title "derived from" a federal officer at all; it possessed only a contract right negotiated with a federal officer. 809 F. Supp. 2d at 534–35. Reading "property" to exclude intangible property conflicts with the statute's plain language, the command that the statute be construed liberally, and the Supreme Court's recognition that intangible rights with commercial

value are "property." *Pasquantino*, 544 U.S. at 355–56.

The State's alternative contention (Mot. 18)—that even if Kalshi holds a property right in its DCM designation, that the State "is not seeking any relief concerning Kalshi's CFTC designation"—is wrong for two reasons. *First*, § 1442(a)(2) asks whether the action "affects the validity of any law of the United States," not whether the plaintiff has captioned its complaint as a revocation proceeding. *Second*, even accepting the State's framing, the State is effectively seeking to revoke Kalshi's DCM status. An injunction barring Kalshi from offering event contracts to New York users would nullify the core right the CFTC's designation confers. A plaintiff cannot immunize its suit from § 1442(a)(2) by seeking to destroy the value of a federally derived property right.[4]

**2. The State's Action Affects the Validity of the CEA.**

The State's action, if successful, would extinguish Kalshi's right in its license to operate as a nationwide market and override the CFTC's exclusive jurisdiction. Section 1442(a)(2) does not require wholesale invalidation; an action "affects the validity" of federal law where it would "evade . . . or otherwise frustrate" the statute's aims. *Carney v. Washington*, 551 F. Supp. 3d 1042, 1053-54 (W.D. Wash. 2021). Because Congress chose the phrase "affects the validity" rather than the word "invalidates," the State's insistence on complete invalidation reads the provision more narrowly than it is written.

The CFTC's July 14, 2026 Order underscores this point. When Kalshi sought to unwind open trades involving Michigan residents to comply with a Michigan state court order, the CFTC

[4] Kalshi does not equate a Due Process-protected interest with "title" derived from a federal officer. S*ee* Mot. 18 n.9. Kalshi relies on the statutory text of § 1442(a)(2), the CEA provisions under which the CFTC conferred Kalshi's DCM designation, 7 U.S.C. §§ 7, 7b, 8(b), and the Supreme Court's recognition in *Pasquantino*, 544 U.S. at 355-56, that intangible rights with commercial value are "property." The authorities cited above are illustrative of when a federal license confers defined, exclusive, for-cause-only-revocable rights—not a substitute for the statutory text.

stayed Kalshi's request and directed Kalshi to "fulfill the open trades in question as it would in the ordinary course of business." Christopher J. Kirkpatrick, CFTC, *Order Staying Emergency Rule Filed by KalshiEX LLC and Directing Kalshi to Fulfill Open Trades Involving Michigan Residents* at 9 (July 14, 2026), https://perma.cc/82PB-J6QM ("July CFTC Order"). The CFTC explained that permitting Kalshi to void open contracts "would risk shattering public confidence," "financially damag[e] market participants," create "significant price volatility," and "cause distortions" in the market, and it made clear that "State courts cannot order the unwinding of executed swap transactions" that fall within the CFTC's "exclusive jurisdiction." *Id.* at 2, 7-8. The injunctive relief the State seeks here would place Kalshi in the same untenable position—forced either to disobey a direct order of its federal regulator or to violate a New York injunction. That is sufficient to "affect[] the validity" of the CEA under § 1442(a)(2).

The State's reliance (Mot. 18) on *Veneruso v. Mount Vernon Neighborhood Health Center*, *Town of Stratford v. City of Bridgeport*, and *Faulk v. Owens Corning Fiberglass Corp.*is misplaced. In those cases, the defendants argued only that their actions were ***permitted*** by federal law, not that federal law ***required*** a step inconsistent with the relief the plaintiff sought. *See Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 632 (S.D.N.Y. 2013) (defendant argued "only that its actions were permitted by federal law, not that it would be required by federal law to take a step inconsistent with the result Plaintiff seeks"), *aff'd*, 586 F. App'x 604 (2d Cir. 2014); *Town of Stratford v. City of Bridgeport*, 434 F. Supp. 712, 713, 715 (D. Conn. 1977) (raising a federal defense is not enough to show that an action "affects the validity" of a statute); *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 669 (E.D. Tex. 1999) (same). Here, by contrast, the State's action, if successful, would require Kalshi to stop operating in New York, which conflicts with the CEA's requirement that DCMs operate as nationwide markets. And the State's insistence that Kalshi be prohibited from operating within New York

means that it could not operate at all. Kalshi's showing is that the State's requested relief would frustrate and possibly obliterate the CEA's operation and the CFTC's exclusive jurisdiction—an effect on validity, not a mere interpretive quarrel. And removal under § 1442(a)(2) is "proper even if only a defense depends on federal law." *Carney*, 551 F. Supp. 3d at 1053 (citing *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999)).

### B. Artful Pleading Cannot Defeat Federal Officer Removal Under 28 U.S.C. § 1442(a)(1).

The State's "artful pleading" of its Petition provides a separate reason why remand is inappropriate. Under New York's joinder rule, Rule 1001(a), the State was required to name the CFTC as a party. Had it done so, this action would be removable under § 1442(a)(1). At minimum, the omission reinforces why this is not an ordinary state gambling case.

#### 1. New York Law Required Joinder of the CFTC.

Rule 1001(a) requires joinder of a party whose absence prevents complete relief or who might be inequitably affected by a judgment in the action. N.Y. C.P.L.R. 1001(a). Complete relief cannot be accorded without the CFTC's presence. Kalshi must provide nationwide "impartial access" to its platform, and the State's requested relief would require different treatment for New York users, conflicting with the CFTC's regulations. 17 C.F.R. § 38.151(b). Contrary to the State's claims that "the relief [the State] seeks only involves Kalshi" (Mot. 15), the CFTC has sued New York and other states to protect its exclusive jurisdiction and has asserted a substantial interest in the scope of that jurisdiction.

The CFTC's decision to file its own suit confirms its direct, protectable interest. A judgment for the State would impair the CFTC's ability to protect that interest and risk subjecting Kalshi to inconsistent federal and state obligations. That risk is not hypothetical: The July CFTC Order forced Kalshi to choose between violating a state court's order and disobeying its federal

regulator. And on August 11, 2026, in response to the Petition, the CFTC issued a similar order directing Kalshi to continue its normal operations. Christopher J. Kirkpatrick, CFTC, *Order Directing Kalshi to Continue Exercising DCM Functions* at 5 (August 11, 2026), https://perma.cc/C6NW-4KFM ("Put simply, New York's lawsuit threatens to prevent a CFTC-registered DCM from offering event contracts to anyone in the world. That unprecedented assertion of state authority cuts at the very heart of the Commission's jurisdiction and would have significant adverse ramifications for national and international financial markets.").

**2. The State's Objections Do Not Defeat Jurisdiction.**

*First*, the State's reliance on *American Trucking Ass'n v. New York State Thruway Authority* (Mot. 16) is misplaced. *American Trucking* held only that a sovereign's generalized "interest[] in defending the validity of its own laws" does not compel joinder. 795 F.3d 351, 359 (2d Cir. 2015) (citation omitted). This comparison as applied to the CFTC is mistaken: The CFTC is not defending its "own law[]"—it is defending its exclusive jurisdiction as a regulator. Nor is the CFTC's interest so general: It has conferred the designation at issue, it administers the statute under a grant of exclusive jurisdiction, it has ordered Kalshi to take actions inconsistent with the relief the State seeks, and it has sued New York over this precise conflict.

The CFTC also is not a mere bystander with an abstract interest; it is an active litigant seeking to enjoin the very enforcement action at issue here. The State's citation (Mot. 16) to the denial of a TRO in the CFTC's parallel federal action against it is similarly unavailing. A denial of interim relief does not resolve whether the CFTC has a protectable interest; it is an assessment of the equities at a preliminary stage, and the CFTC's action remains pending. If anything, the fact that the CFTC sought emergency relief to stop this very special proceeding confirms the directness of its interest.

*Second*, the State argues (Mot. 16-17) that Kalshi cannot remove under § 1442(a)(1) because it is a private corporation. But Kalshi's theory does not rest on Kalshi's own regulated status; it rests on the State's omission of the CFTC—a party whose presence would independently support removal. The State offers no legal authority supporting that this is insufficient.

## III. THE PROCEDURAL LABEL OF THIS ACTION DOES NOT CHANGE THIS COURT'S JURISDICTION.

The State argues that it is entitled to the expedited procedures of an Article 4 special proceeding and would be "forced to forgo" them in federal court. Mot. 19. That is a statement of litigation preference, not a jurisdictional argument.

Removal jurisdiction turns on whether the case is a "civil action" over which district courts have original jurisdiction, 28 U.S.C. §§ 1331, 1441(a), not on the procedural label the pleading bears. "The well-pleaded complaint rule is concerned with the existence of a federal question on the face of the document invoking a state court's jurisdiction, not whether that document bears the label 'complaint.'" *Freeman v. Burlington Broadcasters, Inc.*, 204 F.3d 311, 317 (2d Cir. 2000). Courts in this District have accordingly held that New York special proceedings are removable civil actions subject to the ordinary rules of federal question jurisdiction. *Casale v. Metro. Transp. Auth.*, 2005 WL 3466405, at *5-7 (S.D.N.Y. Dec. 19, 2005) (holding that a state directive that a proceeding "shall be brought in [state] supreme court" "has nothing to do with whether the proceeding falls within a federal jurisdictional statute. If such a directive could deprive federal courts of jurisdiction, state legislatures, not Congress, would control the power of the federal judiciary."); *see also Still v. DeBuono*, 927 F. Supp. 125, 128-29 (S.D.N.Y.), *aff'd*, 101 F.3d 888 (2d Cir. 1996). A preference for a summary state procedure cannot override Congress's grant of removal jurisdiction, particularly where that procedure is ill-suited to the federal questions the State's Petition raises.

## IV. FEES ARE UNWARRANTED BECAUSE REMOVAL WAS OBJECTIVELY REASONABLE.

The State's request for fees (Mot. 19-21) is baseless. Fees under 28 U.S.C. § 1447(c) are warranted "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). The Supreme Court has emphasized that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.*

The State's reference (Mot. 20-21) to the decisions of other courts does not warrant fees. Those non-controlling remand decisions do not make removal objectively unreasonable here. At the time of removal, another court had denied a remand motion in analogous circumstances. *Ga. Gambling Recovery*, 2026 WL 279375, at *3. There, the federal court denied remand in a case contending that Kalshi's event contracts were void as unlawful gambling under state law, finding that whether a contract is unlawful is defined by reference to the law governing the validity of the contract—*i.e.*, for event contracts, federal law. *Id.*

The State's citation to *Williams I* is unavailing. *See supra* Section I.A.3. And whatever persuasive weight *Nessel* may have elsewhere, it did not involve claims under New York law, this District's parallel CFTC action, or the particular New York and federal statutory arguments presented here. No controlling circuit court authority rejects Kalshi's removal position. At most, the authorities show a contested and developing jurisdictional issue. They do not show that Kalshi lacked an objectively reasonable basis to remove.

Furthermore, the State's attempt (Mot. 21) to collate its enforcement action with those by other state authorities is misplaced. This case presents the first removal involving a state petition that expressly pleads a federal criminal statute (the Wire Act) as an element of its own claim—a

circumstance that distinguishes it from every prior case the State cites. Count VIII affirmatively invokes the federal Wire Act as the predicate illegality. That distinguishing fact—conceded by the State's own failure to contest that Count VIII "necessarily raises" federal law—places this case squarely within *Grable* and *Jacobson*, and outside the universe of cases where preemption was merely a defense.

## CONCLUSION

For the foregoing reasons, the State's motion to remand should be denied.

Dated: August 21, 2026
New York, New York

*/s/ Matthew J. Laroche*

**MILBANK LLP**

Grant R. Mainland
Andrew L. Porter
Matthew J. Laroche
Nicole D. Valente
55 Hudson Yards
New York, NY 10001-2163
Telephone: 212.530.5000
Facsimile: 212.530.5219
gmainland@milbank.com
aporter@milbank.com
mlaroche@milbank.com
nvalente@milbank.com

Joshua B. Sterling (*pro hac vice*)
1101 New York Avenue, NW
Washington, D.C. 20005
Telephone: 202.835.7500
Facsimile: 202.263.7586
jsterling@milbank.com

*Attorneys for Defendant KalshiEX LLC*

## WORD COUNT CERTIFICATION

In accordance with Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and the Court's Individual Practices, I hereby certify that the Memorandum of Law in Support of Respondent's Opposition to Petitioner's Motion to Remand contains 8,730 words (including footnotes), exclusive of cover page, table of contents and authorities, and signature block, as established using the word count function of Microsoft Word.

*/s/ Matthew J. Laroche*
Matthew J. Laroche
Milbank LLP