UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PEOPLE OF THE STATE OF NEW YORK by LETITIA JAMES, Attorney General of the State of New York,

Petitioner,

v.

KALSHIEX LLC,

Respondent.

Case No. 1:26-cv-06550-VSB

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO REMAND TO NEW YORK STATE COURT**

Petitioner, People of the State of New York, by Letitia James, Attorney General of the State of New York ("OAG"), submits this reply in further support of its motion to remand (Dkt. No. 16) this case to the Supreme Court of the State of New York, County of New York, pursuant to 28 U.S.C. § 1447.

**PRELIMINARY STATEMENT**

Kalshi's opposition is based on unsupportable arguments for removal that have been repeatedly rejected. This case should be remanded, just as every other district court has done with state enforcement actions against unlicensed gambling platforms.

Kalshi argues that this Court should exercise jurisdiction because OAG's Petition constitutes a "sweeping attack on a federal regime" seeking to "shut down Kalshi's exchange altogether" and "obliterate the [Commodity Exchange Act ("CEA")]'s operation." Not so. Law-abiding designated contract markets ("DCMs") have operated without objection in New York for decades. But Kalshi's unlawful offerings invade a core province of the State. Kalshi, through an unprecedented and unsupported reading of the CEA, has declared that gambling on sports (which according to Kalshi represents 80-90% of its business[1]), culture, elections, and other similar events, are an exclusively federal matter.

This enforcement action simply acts to prevent unlawful gambling as New York has done for over 250 years. OAG's proposed injunction would prevent Kalshi from operating an "unlawful gambling business . . . that offers contracts relating to sports, culture, elections, and other events without obtaining all the required licenses from the New York State Gaming Commission." The injunction would not prevent Kalshi from offering commodity futures or swap contracts that do not run afoul of federal or state law. Regardless, Kalshi's arguments boil

[1] *Kalshiex LLC v. Cafferelli*, No. 25-2016, 2026 WL 2294589, at *3 (D. Conn. Aug. 10, 2026).

down to an anticipated preemption defense, which is no basis for removal. Liability under each of OAG's claims, including Count VIII alleging repeated and persistent illegality under the Wire Act, can be determined by simple application of law to facts.

Kalshi's attempt to invoke 28 U.S.C. § 1442(a)(1) fails because a failure to join a necessary party does not trigger removal authority under §1442(a)(1). Regardless, the CFTC is not a necessary party because complete relief can be granted between the parties without it, and the CFTC would not be "inequitably affected by a judgment" in this action. CPLR § 1001(a). Finally, removal under 28 U.S.C. § 1442(a)(2) is improper because Kalshi cannot show that it is a property holder with title derived from a federal officer, or that OAG's action attacks the validity of the CEA.

The Court should swiftly remand this matter.

## ARGUMENT

### I. This Court Lacks Subject Matter Jurisdiction Under 28 U.S.C. § 1331

Kalshi argues that substantial federal questions exist because (1) OAG's inclusion of an Executive Law § 63(12) claim premised on the Wire Act, 18 U.S.C. § 1084(a) raises a substantial question concerning interpretation of "betting or wagering"; and (2) the determination of "unlawful" and "authorized to offer sports wagering" under the New York Penal Law and Racing Law, respectively, raises substantial questions concerning the Unlawful Internet Gambling Enforcement Act ("UIGEA") and the CEA. Neither of these "questions" confer federal jurisdiction under the *Grable-Gunn* test as outlined in *Gunn v. Minton*, 568 U.S. 251, 257-58 (2013).

#### A. The Wire Act Does Not "Necessarily Raise" a Substantial Question of Federal Law

Kalshi argues that OAG's § 63(12) claim premised on the Wire Act "cannot be resolved without construing UIGEA and the CEA." Opp. at 16. However, OAG's Petition plainly sets

forth each of the necessary elements to prove Kalshi's violations of the Wire Act, which was enacted to "assist the various States . . . in the enforcement of their laws pertaining to gambling, bookmaking, and like offenses." H.R. Rep No. 87-967, at 1-2 (1961).

There is no need for a court to reference or consult the UIGEA or the CEA to determine liability. Whether Kalshi is in the "business of betting or wagering" is a simple factual question that "involves the application of law . . . to a particular set of facts." *New York v. DailyPay, Inc.*, No. 25-cv-3439 (JGK), 2025 WL 2695712, at *7 (S.D.N.Y. Sep. 19, 2025); *see also, e.g., Jordan v. Kent*, 44 How. Pr. 206, 207 (N.Y. Sup. Ct. 1872) (noting that "wagering" is defined as "'a contract by which two parties or more agree that a certain sum of money or other thing shall be paid or delivered to one of them on the happening or not happening of an uncertain event,'" (quoting Bouvier Law Dictionary)); *KalshiEX, LLC v. Assad*, 25-7516, Dkt. 200.1, at 27-28 (9th Cir. Aug. 28, 2026) (applying ordinary dictionary definition to "wager"). And Kalshi wholly ignores the UIGEA's express statement that "[n]o provision of this subchapter shall be construed as altering, limiting, or extending any Federal or State law . . . prohibiting, permitting, or regulating gambling within the United States." 31 U.S.C. § 5361(b); *see also Assad*, 25-7516, Dkt. 200.1, at 26 n.4 (rejecting Kalshi's argument that the UIGEA should be considered when interpreting the definition of "wager").

Kalshi's reliance on *New York v. Arm or Ally, LLC*, 644 F. Supp. 3d 70 (S.D.N.Y. 2022), is misplaced. There, the New York statute at issue specifically incorporated federal definitions of "firearm" and "component part," which, unlike the Wire Act's use of "betting or wagering," necessarily raised substantial questions of federal statutory interpretation that were "central to the federal scheme embodied in the Gun Control Act of 1968 . . . ." *Id.* at 79. Here, Kalshi is simply looking to other statutory definitions and interpretations as a federal defense, which does not

"suffice — 'even if the parties concede that the defense is the only disputed issue in the case' and, in that sense, 'necessary to the resolution' of the state law claim." *Id*. at 78 (quoting *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138, 141 n.5 (2d Cir. 2012)).

Similarly, *State of N.Y. by Abrams v. Citibank, N.A.*, 537 F. Supp. 1192 (S.D.N.Y. 1982), is inapposite because that matter was decided well before the Supreme Court's articulation of the *Grable-Gunn* test and its requirement that a well-pleaded complaint raise a substantial question of federal law, and, even there, the district court recognized a significant federal interest on the face of the complaint. Here, Kalshi can point to no such substantial question.

### B. Substantial Questions of Federal Law Are Not "Necessarily Raised" by OAG's State Law Claims

Counts I-VII of OAG's Petition allege claims under Executive Law § 63(12), each alleging a specific illegality Kalshi committed, each a stated violation of state law. Each stated violation includes elements defined by state law, none of which require reference to federal law in order to prove the illegality has occurred. *See Washington v. KalshiEX LLC,* C26-1062-JCC, 2026 WL 1217743, at *1 (W.D. Wash. May 5, 2026) (finding no substantial federal issue because, among other things, complaint targeted activities determined to be gambling under state law).

Kalshi's arguments to the contrary seek to contort Kalshi's preemption defense into an element of OAG's claims and avoid the well-pleaded complaint rule. But the New York Penal law defines "unlawful," and the Racing Law specifically outlines who is "authorized" to offer "sports wagering" or "mobile sports wagering" under the statute.

"[U]nlawful" means "not specifically authorized by law," Penal Law § 225.00(12), and "[unlawful] is to be interpreted as referring to the laws of New York State," *People v. Kim*, 154 Misc. 2d 346, 350 (Crim. Ct. 1992). That *Kim* involved interstate activity does not, contrary to

Kalshi's arguments, affect this determination. Regardless, the correct interpretation of state law here should be left to the state courts to determine. *See Chun v. New York,* 807 F. Supp. 288, 291-92 (S.D.N.Y. 1992) (abstaining from consideration of whether conduct met the definition of "unlawful" under New York Penal Law § 225.05, which "must be answered before the issue of whether state law violates the constitution or other federal law even arises").

Similarly, "wagering" is easily defined by its dictionary definition, and the determination of whether a party is "authorized" to offer "sports wagering" or "mobile sports wagering" is plainly in reference to authorization under the Racing Law itself. *See* Racing Law § 1367(16)(a) (stating "any person . . . who is not authorized to offer sports wagering *under this section or section thirteen hundred sixty-seven-a of this title* . . . ." (emphasis added)). No serious federal issue is raised by any of these definitions to justify removal.

Kalshi relies on an outlier, *Georgia Gambling Recovery LLC v. Kalshi Inc.*, No. 4:25-cv-310 (CDL), 2026 WL 279375 (M.D. Ga. Feb. 2, 2026), to argue that federal law must be considered to determine whether Kalshi's conduct was unlawful or not authorized. In that case, which was not a state enforcement action, the court determined that rescission claims turned on whether "the contract [was] unlawful under the law governing its validity," and then decided the CEA was the governing law. *Id.* at *3. The CEA, however, only "governs" the validity of a contract if it has preemptive effect over a contrary state law, which is, of course, a preemption defense that cannot confer federal jurisdiction. *State by Tong v. Exxon Mobil Corp*., 83 F.4th 122, 135-36 (2d Cir. 2023).[2] Similarly, the CEA is only relevant to whether Kalshi's actions are unlawful as a defense to OAG's claims.

---

[2] Kalshi points to *NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010 (2d Cir. 2014), to argue that this case raises a substantial federal question, namely the "fundamental function of a designated contract market." Opp. at 17. As Kalshi noted, in that case, the Second Circuit found that UBS's state law claims against NASDAQ raised

Counts I-VII of OAG's Petition raise only state law claims that contain no reference to federal law, nor is any right or privilege created by federal law an essential element of the claims. Accordingly, this Court lacks subject matter jurisdiction over Counts I-VII of the Petition.

**C. Removal Would Upset the Federal-State Balance**

Although a "procedural label" may not affect this Court's jurisdiction in and of itself, under the *Grable-Gunn* test, this Court should defer to OAG's exercise of state police powers to prevent illegal gambling through a state statute, Executive Law § 63(12), that designates the New York Supreme Court as the proper forum for the action. *See New York by James v. Sirius XM Radio Inc.*, 735 F. Supp. 3d 272, 281 (S.D.N.Y. 2024) (recognizing the importance of deference to the state's chosen forum). OAG brought this action to enforce New York's law pursuant to a special proceeding, a forum specifically selected by Executive Law § 63(12) for OAG to combat illegality in the conducting of business. *See* Executive Law § 63(12). Courts in this District have held that New York's statutory grant of summary disposition procedures for an OAG enforcement action supported a finding that removal would disrupt the "federal-state balance approved by Congress." *DailyPay,* 2025 WL 2695712, at *8; *New York by James v MoneyLion Inc*., No. 25-cv-4093 (CM), 2025 WL 3154497, at *4 (S.D.N.Y. Nov. 12, 2025). "[R]emoval under these circumstances [is] particularly problematic when . . . the action was brought by the State itself, and therefore 'the claim of sovereign protection from removal' is 'at its zenith.'" *DailyPay,* 2025 WL 2695712 at *8 (*quoting In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 392 (S.D.N.Y. 2014)).

---

substantial questions of federal law going to the operation of a national securities exchange. *NASDAQ,* 770 F.3d at 1027-28. However, there, the federal question at issue was central to UBS's claims that rested on whether NASDAQ had fulfilled its requirements *under federal law* to "operate a fair and orderly market." *Id.* at 1021.

Abstention principles further support remand in this case. "*Younger* [*v. Harris*, 401 U.S. 37 (1971)] 'requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings,'" *Torres v. Off. of Adult Prob.*, No. 23-8084, 2025 WL 3761417, at *1 (2d Cir. Dec. 30, 2025) (quoting *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002)), and specifically state civil enforcement proceedings such as this one, *Sprint Commc'n, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013). *Younger* abstention "rests foursquare on the notion" that a state proceeding constitutes a sufficient forum for the vindication of federal constitutional rights. *Diamond,* 282 F.3d at 198. And a "federal preemption claim . . . is not enough to defeat *Younger* abstention." *In re Standard & Poor's*, 23 F. Supp. 3d at 412.

Kalshi's removal of this case to federal court impermissibly disrupts the federal-state balance by forcing the state into Kalshi's chosen forum for adjudication of an ordinary preemption defense.

## II. Removal Is Not Warranted Under 28 U.S.C. § 1442(a)(1)

There is no basis under Section 1442(a)(1) to conclude that a failure to join a necessary party under CPLR § 1001(a) triggers Section 1442(a)(1) removal authority if that party is the United States or its agency. *Washington v. KalshiEX, LLC*, No. C26-1062-JCC, 2026 WL 1217743, at *2 (W.D. Wash. May 5, 2026). The appropriate remedy for failing to join a necessary party "would be to compel joinder in state court, not to assert a right to removal." *Washington v. KalshiEX, LLC*, No. 26-3106, Dkt. 19.1, at 2 (9th Cir. May 21, 2026) (order denying stay pending appeal).

Regardless, the CFTC is not a necessary party to this action because it has no interest or right in the outcome of this proceeding as is required under the first prong of §1001(a). OAG is not making any allegations against and seeks no remedy from the CFTC (Mem. at 15-16). *See*

*Washington*, No. 26-3106, Dkt. 19.1, at 2 (holding CFTC not a necessary party where state did not seek to enforce the CEA or make claims against the CFTC); *Nevada ex rel. Nevada Gaming Control Bd. v. KalshiEX, LLC*, No. 2:26-CV-00406-MMD-MDC, 2026 WL 579364, at *6 (D. Nev. Mar. 2, 2026) (finding no CFTC legal interest in action because relief requested was narrowly directed at defendant under Nevada law not against the CFTC).

Similarly, Kalshi's reference to the CFTC's August 11, 2026 order in support of its argument that Kalshi would face allegedly inconsistent state and federal obligations is irrelevant to the question of whether the CFTC is a necessary party *in this action*. The CFTC's guidance is premature and based on a hypothetical state court order that has not been issued. Further, the CFTC is already protecting its interests by bringing and prosecuting its own case against New York.

With respect to the second prong, Kalshi's argument that complete relief cannot be granted without the CFTC because Kalshi is required to provide nationwide "impartial access" is based on a false premise that has already been rejected in this District and the Ninth Circuit. *See KalshiEX LLC v. Williams,* No. 25 CIV. 8846 (AT), 2026 WL 2017466, at *8 (S.D.N.Y. July 13, 2026) ("The purpose of the impartial access requirement is to prevent DCMs from having certain discriminatory access requirements for their platform; it does not require DCMs to offer contracts nationwide."); *see also Assad*, 25-7516, Dkt. 200.1, at 42-43 (rejecting Kalshi's arguments about impartial access); 17 C.F.R. § 38.151(b)).

Kalshi's attempt to distinguish *Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*, 795 F.3d 351 (2d Cir. 2015), on the ground that the CFTC "is not defending its own law" but rather, its exclusive jurisdiction as a regulator, is belied by the CFTC's complaint where it seeks to protect its "ability to apply and enforce its own regulations and the federal CEA." *See* Compl.

¶ 12, *United States v. New York*, 26-cv-3404 (S.D.N.Y Apr. 24, 2026), Dkt. 1. Further, Kalshi's argument that *Am. Trucking* only involved a sovereign's "generalized" interest in defending the validity of its own laws is also misplaced. Opp. at 24. In *Am. Trucking*, the plaintiffs filed a lawsuit against the New York State Thruway Authority alleging that the Thruway Authority "diverts excessive highway tolls to fund maintenance and improvements to the New York Canal System." 795 F.3d at 354. The Second Circuit found that the State of New York was not a necessary party to the lawsuit, even though it owns the canal system. *Id.* at 355, 359. Thus, even when the State's *specific property was at issue*, far from a "generalized" interest, the State's interest in defending the validity of related state laws did not render it a necessary party. Accordingly, here, the CFTC's interest in applying and enforcing the CEA and its own regulations is insufficient to mandate joinder.

## III. Removal Is Not Warranted Under 28 U.S.C. § 1442(a)(2)

Kalshi's opposition provides no basis to find (1) that it is a "property holder" that holds "title" derived from a federal officer for purposes of § 1442(a)(2), or (2) that OAG's claims attack the validity of any federal law.

First, Kalshi disputes that § 1442(a)(2) removal is limited to cases involving real property (Opp. at 20), but Kalshi cannot and does not cite a single case permitting removal that is to the contrary. This is for good reason: the plain text of § 1442(a)(2), which speaks to a "property holder" with "title" derived from a federal officer, requires real property to be at issue. Mot. at 17-18; *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC*, 809 F. Supp. 2d 524, 535 (E.D. La. 2011).[3] Moreover, Kalshi's proposed reading of § 1442(a)(2) that would

[3] That *St. Bernard* involved a contractual property right, as opposed to Kalshi's proffered intangible property does not diminish the court's conclusion that § 1442(a)(2)'s "[u]se of the term 'title' implies that the statue applies only to real property . . . ." 809 F. Supp. 2d at 535.

permit removal in any case involving a private actor that obtains a "federally issued license" that confers "intangible rights with commercial value" (Opp. at 19-20), would stretch § 1442(a)(2) beyond its language, context, history, and purpose. *See* Mot. at 18; *see also Ottaviance v. AVS Props., LLC*, No. CV-18-16429, 2019 WL 3183642, at *5, *9 n.9) (D.N.J. July 15, 2019) (purpose of § 1442(a)(2) "was to insure a federal forum to persons who took title to property from a revenue officer and faced a challenge to their title from others, such as taxpayers, who claimed that the law under which the revenue officer had seized their property was invalid").

Second, Kalshi also fails to establish that OAG's state law claims challenge the validity of the CEA. OAG's claims against Kalshi are not directed at the CEA or the authority of the United States or the CFTC, and OAG takes no issue with Kalshi remaining a DCM. OAG's Special Proceeding only seeks to prohibit Kalshi from operating a gambling business in New York in violation of state law. Kalshi points to supposed conflicts with federal law,[4] but Kalshi misconstrues § 1442(a)(2)'s requirement that the state action challenge whether a federal law is *valid* to suggest it applies to any action in which the defendant wishes to argue that state law is *preempted*. Nothing in OAG's action stands to invalidate any portion of the CEA, let alone "obliterate" it as Kalshi contends. Section 1442(a)(2) does not provide a basis for removal here. *Washington*, 2026 WL 1217743, at *2, *stay pending appeal denied by Washington*, No. 26-3106, Dkt. 19.1, at 2-3 (9th Cir. May 21, 2026).

---

[4] In the context of a request for an emergency injunction, one court has already rejected CFTC guidance to Kalshi to disobey a hypothetical state court order as a basis for conflict. *Cafferelli*, 2026 WL 2368931, at *2. Moreover, state enforcement of state gambling laws does not evade or frustrate the CEA's aims. *See, e.g.*, *Williams*, 2026 WL 2017466, at *9 ("New York's gambling laws, which seek to regulate gaming in the state, complement rather than conflict with federal law."); *see also Assad*, 25-7516, Dkt. 200.1, at 42-43 (rejecting Kalshi arguments concerning impartial access).

## IV. The Court Should Award Petitioner Fees and Costs

This case presents the type of "unusual circumstances" justifying a fee award as Kalshi's arguments have been repeatedly rejected by district and circuit courts across the country (including this District), and Kalshi did not cite a single decision in which a matter was found to have been properly removed in similar circumstances.[5] *See City of New York v. Exxon Mobil Corp.,* 154 F.4th 36, 48 (2d Cir. 2025) (affirming fee award based on the "unusual circumstances" exception).

---

[5] *Ga. Gambling*, 2026 WL 279375, is an outlier that subsequent courts considering remand of state enforcement actions have declined to follow. *See Nevada*, 2026 WL 579364, at *3; Order at 5, *Nessel v. KalshiEX, LLC*, 26-cv-00731-PLM (W.D. Mich. June 25, 2026).

## CONCLUSION

For the reasons set forth above, the Court should remand this action and award OAG costs and fees.

Dated: New York, New York
August 28, 2026

Respectfully submitted,
LETITIA JAMES,
Attorney General of the State of New York

By: *<u>/s/ K. Brent Tomer</u>*

K. Brent Tomer
Alejandra de Urioste
Nina M. Varindani
Assistant Attorneys General
Investor Protection Bureau
28 Liberty Street, 21st Floor
New York, New York 10005
Tel: 212-416-8081
Brent.Tomer@ag.ny.gov
Alejandra.deUrioste@ag.ny.gov
Nina.Varindani@ag.ny.gov

Tanya Trakht
Senior Enforcement Counsel
Investor Protection Bureau
Tanya.Trakht@ag.ny.gov

*Counsel for the People of the State of New York*

**WORD COUNT CERTIFICATION**

In accordance with Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and the Court's Individual Practices, I hereby certify that the Memorandum of Law in Support of Petitioner's Motion to Remand contains 3480 words (including footnotes), exclusive of cover page, tables of contents and authorities, and signature block, as established using the word count function of Microsoft Word.

/s/ *K. Brent Tomer*
K. Brent Tomer
Assistant Attorney General