# EXHIBIT B

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

**SUBPOENA DUCES TECUM**

**THE PEOPLE OF THE STATE OF NEW YORK**

**GREETINGS**

***Via New York Secretary of State and Registered Mail, Return Receipt Requested***

**TO**: KalshiEX LLC
594 Broadway, Suite 407
New York, New York 10012

**YOU ARE HEREBY COMMANDED**, pursuant to Executive Law § 63(12) and General Business Law §§ 349 and 350, and § 2302(a) of the New York Civil Practice Law and Rules, to deliver and turn over to Letitia James, the Attorney General of the State of New York, or a designated Assistant Attorney General, on ***the 21st day of August, 2026, by 10:00 a.m.***, or any agreed upon adjourned date or time, at 28 Liberty Street, 21st Floor, New York, New York 10005, or through any agreed-upon means, including a secure file transfer protocol or a cloud-based platform, all documents and information demanded herein in accordance with the instructions and definitions set forth herein, and pursuant to the methods set forth in Attachments 1 and 2, as applicable.

**TAKE NOTICE** that the Attorney General deems the written statement, documents and information demanded by this Subpoena to be relevant and material to an investigation and inquiry into advertisement and marketing of Your platform to consumers residing in New York State and elsewhere, undertaken in the public interest.

**TAKE FURTHER NOTICE** that Your disobedience of this Subpoena, by failing to deliver the documents and information demanded on the date, time, and place stated above, unless an adjourned date and time has been agreed upon, may subject You to penalties and other lawful punishment under New York Civil Practice Law and Rules § 2308, or any other applicable statutes.

**WITNESS, The Honorable Letitia James,** Attorney General of the State of New York, this 31st day of July, 2026.

By: Shamiso Maswoswe
Shamiso Maswoswe
Bureau Chief
Investor Protection Bureau
28 Liberty St., 21st Floor
New York, New York 10005

By: Nina Varindani
Nina M. Varindani
Assistant Attorney General
Investor Protection Bureau
28 Liberty St., 21st Floor
New York, New York 10005
Nina.Varindani@ag.ny.gov
(212) 416-8488

Provide responses to the below for the time period of January 1, 2025, to present unless otherwise specified herein.

**A. Demand for Information**

1. Identify any Persons with which you have entered into any agreements, memoranda of understanding, or oral or informal contracts, Concerning the marketing, advertisement, or promotion of Your business, services, or products, including, but not limited to, on social media (including, but not limited to, Discord, Facebook, Instagram, Telegram, TikTok, Twitch, X, YouTube, etc.), television, radio, podcasts, internet, printed publications, and mobile applications. Provide an Excel spreadsheet with each field in a separate, labeled column, identifying for each such Person or Entity:

   a. Name;
   b. Address;
   c. Telephone number;
   d. Email address;
   e. Social media usernames, handles, or addresses;
   f. Venue or media platform on which the Person or Entity advertised or marketed the Kalshi Platform;
   g. The dates of Your agreements, memoranda of understanding, or oral or informal contracts;
   h. Amount of any monies or property You paid to such Person or Entity;
   i. The dates on which You made any payments;
   j. Method of payment to such Person or Entity (*e.g.*, check, wire transfer, Paypal, Venmo, etc.);
   k. Any financial account associated with such payment;
   l. The volume of bets or orders, in U.S. dollars, placed by any such Persons, on a weekly basis;
   m. A description of Your agreements, memoranda of understanding, or oral or informal contracts.

2. Provide an Excel spreadsheet identifying the institution, account name, account number, routing number, authorized user(s), and any other readily available identifying information for all financial accounts, both open and closed, that You have used to pay any Person or Entity identified in response to Demand A.1, including any bank accounts, online payment platform accounts (*e.g.*, PayPal, Venmo, Zelle, and CashApp), cryptocurrency accounts, or other accounts with available funds or assets. For this demand, include any accounts used by any of Your current or former executives, officers, directors, or employees that have been used to make payment on Your behalf.

3. Identify any monies or property paid by You or any of Your current or former executives, officers and directors, to any of the following Persons or Entities. Your response should include the amounts and dates of any such payments and the method of payment.

a. Elected officials;
b. Members of any elected official's immediate family (including children, stepchildren, parents, spouses and domestic partners);
c. Any Entity in which the elected official serves as an officer, director, trustee, general partner, or employee, or is associated with in any way;
d. Any Entity in which any of the elected official's immediate family members serves as an officer, director, trustee, general partner, or employee, or is associated with in any way.

4. Provide an Excel spreadsheet identifying all Your current or former executives, officers, directors, board members or observers, and employees responsible for market making on the Kalshi Platform, advertising and marketing of Your business, and Your compliance with state gaming laws, with each field in a separate, labeled column, identifying for each such Person:

a. Name;
b. Title;
c. Level;
d. Employing or affiliated entity;
e. Supervisor;
f. Description of duties and responsibilities Concerning market making on the Kalshi Platform, advertising and marketing of Your business, and Your compliance with state gaming laws;
g. Dates of employment;
h. Primary work location;
i. For individuals who are no longer employed by or affiliated with You, provide their last known address, their last known phone number, and their last known personal email address.

5. Identify the roles and responsibilities of Tarek Mansour and Luana Lopes Lara at KalshiEX LLC and any of its predecessors, successors, present or former parents, subsidiaries, or affiliates. Your response should include the following:

a. A detailed description of their duties and responsibilities Concerning market making on the Kalshi Platform;
b. A detailed description of their duties and responsibilities Concerning advertising, promotion and marketing of Your business;
c. A detailed description of their duties and responsibilities Concerning Your compliance with state gaming laws.

6. State whether You or anyone acting on Your behalf has placed any orders to enter into any sports, culture, mentions, and election-related event contracts on the Kalshi Platform during the relevant time period (i.e., proprietary trading, market making or liquidity provisioning). If yes, Your response should include the following:

a. Identify all Persons involved in the conduct described above;
b. Describe the relationship between You and any such Persons involved in the conduct described above;
c. Provide the volume of bets or trades, in U.S. dollars, placed by You or anyone acting on Your behalf on a weekly basis during the relevant time period;
d. Identify All account information associated with You or any such Persons acting on Your behalf involved in the conduct described above.

7. State whether You have now or at any time during the relevant time period contracted, engaged or otherwise directly communicated with any third party to quote bids and offers or provide resting orders on the Kalshi Platform. If yes, Your response should include the following:

   a. Identify All such third parties and their contact information, including Your main point of contact;
   b. All account information associated with each such third-party;
   c. Provide the volume of bets or trades, in U.S. dollars, placed by any such third-party on a weekly basis during the relevant time period;
   d. The total Kalshi Platform fees paid by each such third-party on a weekly basis;
   e. Identify all reduced fees, rebates, discounts, or other incentives given to each such third party, and the dates any such incentives were given.

8. Identify all Persons participating in the Kalshi Volume Incentive Program, Liquidity Incentive Program, Liquidity Provider Program, Combo Incentive Program, and the Market Maker Program. Your response should include the following:

   a. Identify All such Persons and their contact information, including Your main point of contact;
   b. All account information associated with each such Person;
   c. Provide the volume of bets or orders, in U.S. dollars, placed by any such Persons on a weekly basis during the relevant time period;
   d. Identify all reduced fees, rebates, discounts, or other incentives given to each such Person, and the dates any such incentives were given.

**B. Demand for Documents**

Produce the following documents:

1. All marketing, advertisement, or promotion of Your business, including, but not limited to, marketing, advertisement, or promotion on social media, television, radio, podcasts, internet, printed publications, billboards and mobile applications.

2. All Documents and Communications Concerning whether the marketing, advertising, or promotion of sports, culture, mentions and election-related event

contracts listed on the Kalshi Platform complies with state gaming laws.

3. All Documents and Communications Concerning the marketing, advertisement, or promotion of Your business, by any Person or Entity identified in Response to Demand A.1, including, but not limited to, all agreements, memoranda of understanding, or contracts, and all Communications with any Person or Entity identified in Response to Demand A.1 Concerning the marketing, advertisement, or promotion of Your business.

4. All Documents and Communications Concerning the marketing, advertisement, or promotion of Your business by Tarek Mansour, Luana Lopes Lara, and any of Your executive officers, directors or employees.

5. All Documents and Communications concerning transactions entered into on the Kalshi Platform by any Persons identified in response to Demand A.1.

6. All training materials, guidance, or other instructional Documents or Communications Concerning the marketing, advertisement, or promotion of Your business.

7. All Your policies and procedures Concerning the marketing, advertisement, or promotion of Your business.

8. All Documents and Communications Concerning any payments You made, or caused to be made, to any Person or Entity identified in Response to Demand A.1.

9. All account statements for each account identified in response to Demand A.2, above.

10. All Documents and Communications Concerning any payments You made, or caused to be made, to any Person or Entity identified in Response to Demand A.3.

11. All Documents and Communications Concerning any proprietary trading, market making, or liquidity provisioning conducted by You or anyone acting on Your behalf Concerning the 5 largest (by trading volume) sports, culture, mentions, and election-related event contracts listed on the Kalshi Platform.

12. All Documents and Communications Concerning any proprietary trading, market making, or liquidity provisioning conducted by Market Makers Concerning the 5 largest (by trading volume) sports, culture, mentions, and election-related event contracts listed on the Kalshi Platform

13. All Documents and Communications Concerning any agreements, arrangements, contracts or partnerships between You and any third-party to quote bids and offers or provide resting orders on the Kalshi Platform, including:

    a. Applications submitted by each such third-party;
    b. Reduced fees, rebates, loans, discounts, or other incentives given to each

such third-party.

14. All Documents and Communications Concerning the Kalshi Volume Incentive Program, Liquidity Incentive Program, Liquidity Provider Program, Combo Incentive Program, the Market Maker Program, or any other similar program.

15. All Documents You referenced or relied upon in responding to any "Demand for Information" set forth above.

16. All Documents produced by You to any other state or federal regulatory or governmental body or self-regulatory organization Concerning the subject matter of any of the demands in this Subpoena.

### C. Particular Definitions

1. "Respondent," "You," or "Your" means "KalshiEX LLC" and any of its predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect, and any entity over which Respondent exerts such control that materials called for in this Subpoena can be searched and produced.

2. "Kalshi Platform" refers to the prediction market platform available at Kalshi.com, or any other prediction market platform operated by You and available to users in the United States.

3. "Market Maker" means a Person or Entity that provides liquidity to a market by regularly supplying, as a course of business or otherwise, resting bids and offers.

### D. General Definitions and Rules of Construction

1. "AI Tool" means any LLM and any software that relies on one or more LLMs to generate output, including autonomous agents, custom model deployments, and self-hosted model APIs.

2. "All" means each and every; "any" means any and all.

3. "Communication" as used herein means any analog or digital exchange(s) of information, including but not limited to handwritten notes, correspondence, email, chat, text messaging, apps/program(s), platform(s), social media posts; memorializations or recordings of oral conversations; and abstractions, digests, transcriptions, recordings, or other records of any of the foregoing, including transcripts or summaries generated by AI Tools.

4. "Concerning" means relating to, referring to, describing, evidencing or constituting, directly or indirectly, in whole or in part.

5. "Custodian" means any Person or Entity that, as of the date of this Subpoena, maintained, possessed, or otherwise kept or controlled such Document.

6. "Data Dictionary" means documentation of the organization and structure of the databases or data sets that is sufficient to allow their reasonable use by the New York Office of the Attorney General, including, for each table of information: (a) the size including the total number of records and file size (compressed and uncompressed) of the table; (b) a general description; (c) a list of field names; (d) a definition for each field as it is used by the Company; (e) definitions of all codes and acronyms that appear as field values; (f) the format (including variable type and length), total record counts, null value counts, and total unique record counts of each field; (g) the fields that are primary keys for the purpose of identifying a unique observation; and (h) the fields that are foreign keys for the purpose of joining tables.

7. "Document" is used herein in the broadest sense of the term and means all records, recordings and other tangible or intangible media of whatever nature, however and wherever created, produced, or stored (manually, mechanically, electronically, or otherwise), including without limitation all versions whether draft or final, all annotated or nonconforming or other copies, electronic mail ("e-mail"), instant messages, text messages, Blackberry or other wireless device messages, voicemail, calendars, date books, appointment books, diaries, books, papers, files, notes, confirmations, accounts statements, correspondence, memoranda, reports, records, journals, registers, analyses, plans, manuals, policies, telegrams, faxes, telexes, wires, telephone logs, telephone messages, message slips, minutes, notes or records or transcriptions of conversations or Communications or meetings, tape recordings, videotapes, disks, and other electronic media, microfilm, microfiche, storage devices, press releases, contracts, agreements, notices, communications and input to AI Tools in all forms and media (including prompts, queries, instructions and data), and communications and output from AI Tools in all forms and media.

8. "Entity" means without limitation any corporation, company, limited liability company or corporation, partnership, limited partnership, association, or other firm or similar body, or any unit, division, agency, department, or similar subdivision thereof.

9. "Identify" or "Identity," as applied to any Document means the provision in writing of information sufficiently particular to enable the Attorney General to demand the Document's production through subpoena or otherwise, including but not limited to: (a) Document type (letter, memo, etc.); (b) Document subject matter; (c) Document date; (d) Document author(s), addressee(s) and recipient(s); and (e) Document creation method (e.g., Microsoft Word, Google Slides, Notion, Slack, ChatGPT 5.1, Claude Cowork, Midjourney). In lieu of identifying a Document, the Attorney General will accept production of the Document, together with designation of the Document's Custodian, and identification of each Person You believe to have received a copy of the Document.

10. "Identify" or "Identity," as applied to any Entity, means the provision in writing of such Entity's legal name, any d/b/a, former, or other names, any parent, subsidiary, officers, employees, or agents thereof, and any address(es) and any telephone number(s) thereof.

11. "Identify" or "Identity," as applied to any natural person, means and includes the provision in writing of the natural person's name, title(s), any aliases, place(s) of employment, telephone number(s), e-mail address(es), mailing addresses and physical address(es).

12. "Large Language Model" or "LLM" means an artificial intelligence system that is capable of utilizing neural network techniques to process and comprehend text, audio, images or video.

13. "Person" means any natural person, or any Entity.

14. "Sent" or "received" as used herein means, in addition to their usual meanings, the transmittal or reception of a Document by physical, electronic or other delivery, whether by direct or indirect means.

15. "Subpoena" means this subpoena and any schedules or attachments thereto.

16. "Transaction" means any business dealing between two or more Persons, including but not limited to any loan, equity investment, capital infusion, purchase, sale, or any deposit or transfer of funds or thing of value into any type of account whatsoever, including but not limited to a deposit account, brokerage account, custodial account, hot wallet, cold wallet, or any similar transactions.

17. The use of the singular form of any word used herein shall include the plural and vice versa. The use of any tense of any verb includes all other tenses of the verb.

## E. Instructions

1. Stored Communications Act. If You are a service which provides (a) the ability to send or receive wire or electronic communication to users; or (b) computer storage or processing services by means of an electronic communications system available to the public, the Stored Communications Act ("SCA"), 18 U.S.C. § 2703, may protect certain customer/subscriber communications, records, and other information pertaining to customers/subscribers that You maintain, other than the (a) name; (b) address; (c) local and long distance telephone connection records, or records of session times and durations; (d) length of service (including start date) and types of service utilized; (e) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and (f) means and source of payment for such service (including any credit card or bank account number), of a subscriber to or customer of such service. 18 U.S.C. § 2703(c)(2). This Subpoena should not be interpreted to demand information protected by the SCA. Such protected information need not be produced in response to this Subpoena. If You have any questions regarding whether certain information is protected by the SCA, You should contact an attorney.

2. Preservation of Relevant Documents and Information; Spoliation. You are reminded of Your obligations under law to preserve Documents and information relevant or potentially relevant to this Subpoena from destruction or loss, and of the consequences of, and penalties available for, spoliation of evidence. No agreement, written or otherwise, purporting to modify, limit or otherwise vary the terms of this Subpoena, shall be construed in any way to narrow, qualify, eliminate or otherwise diminish Your aforementioned preservation obligations. No agreement purporting to modify, limit or otherwise vary Your preservation obligations under law shall be construed as in any way narrowing, qualifying, eliminating or otherwise diminishing such aforementioned preservation

obligations, nor shall You act in reliance upon any such agreement, unless an Assistant Attorney General confirms or acknowledges such agreement in writing, or makes such agreement a matter of record in open court.

3. Possession, Custody, and Control. The Subpoena calls for all responsive Documents or information in Your possession, custody or control. This includes, without limitation, Documents or information possessed or held by any of Your officers, directors, employees, agents (human or artificial intelligence), representatives, divisions, affiliates, subsidiaries or Persons from whom You could request Documents or information.

4. Documents No Longer in Your Possession. If any Document demanded herein was formerly in Your possession, custody or control but is no longer available, or no longer exists, You shall submit a statement in writing under oath that: (a) describes in detail the nature of such Document and its contents; (b) Identifies the Persons who prepared such Document and its contents; (c) Identifies all Persons who have seen or had possession of such Document; (d) specifies the date(s) on which such Document was prepared, transmitted or received; (e) specifies the dates on which such Document became unavailable; (f) specifies the reason why such Document is unavailable, including without limitation whether it was misplaced, lost, destroyed, deleted, made inaccessible, or transferred; and if such Document has been destroyed, deleted, made inaccessible, or transferred, the conditions of and reasons for such destruction, deletion, cessation of access, or transfer and the Identity of the Persons requesting and performing such destruction, deletion, cessation of access, or transfer; and (g) Identifies all Persons with knowledge of any portion of the contents of the Document.

5. No Documents Responsive to Subpoena Demands. If there are no Documents responsive to any particular Subpoena Demand, You shall so state in writing under oath in the Affidavit of Compliance attached hereto, identifying the paragraph number(s) of the Subpoena Demand concerned.

6. Format of Production. You shall produce Documents and information responsive to this Subpoena in the format demanded by the Office of the New York State Attorney General. Productions in electronic format shall meet the specifications set out in Attachments 1 and 2.

7. Existing Organization of Documents to be Preserved. Regardless of whether a production is in electronic or paper format, each Document shall be produced in the same form, sequence, organization or other order or layout in which it was maintained before production, including but not limited to production of any Document or other material indicating filing or other organization. Such production shall include without limitation any file folder, file jacket, cover or similar organizational material, as well as any folder bearing any title or legend that contains no Document. Likewise, all Documents that are physically attached to each other in Your files shall remain so attached in any production; or if such production is electronic, shall be accompanied by notation or information

sufficient to indicate clearly such physical attachment.

8. Manner of Compliance. Custodians/Search Terms/Technology-Assisted Review. Prior consultation with the Office of the Attorney General is required concerning selection of custodians for document searches (whether electronic or otherwise) or for use of search term filters, predictive coding or other forms of technology-assisted review, including the use of an AI Tool. The Office of the Attorney General reserves the right to approve, disapprove, modify or supplement any proposed list of custodians, search terms, LLM prompts, and review methodology. The selection or use of custodians, search term filters, or technology-assisted review in no way relieves You of Your obligation to fully respond to these demands for Documents or information.

9. Document Numbering. All Documents responsive to this Subpoena, regardless of whether produced or withheld on ground of privilege or other legal doctrine, and regardless of whether production is in electronic or paper format, shall be numbered in the lower right corner of each page of such Document, without disrupting or altering the form, sequence, organization or other order or layout in which such Documents were maintained before production. Such number shall comprise a prefix containing the producing Person's name or an abbreviation thereof, followed by a unique, sequential, identifying document control number.

10. Privilege Placeholders. For each Document withheld from production on ground of privilege or other legal doctrine, regardless of whether a production is electronic or in hard copy, You shall insert one or more placeholder page(s) in the production bearing the same document control number(s) borne by the Document withheld, in the sequential place(s) originally occupied by the Document before it was removed from the production.

11. Privilege. If You withhold or redact any Document responsive to this Subpoena on ground of privilege or other legal doctrine, You shall submit with the Documents produced a statement in writing under oath, stating: (a) the document control number(s) of the Document withheld or redacted; (b) the type of Document; (c) the date of the Document; (d) the author(s) and recipient(s) of the Document; (e) the general subject matter of the Document; (f) any use of AI Tools in relation to the document, including the specific AI Tool and/or LLM used and nature of work performed; and (g) the legal ground for withholding or redacting the Document. If the legal ground for withholding or redacting the Document is attorney-client privilege, You shall indicate the name of the attorney(s) whose legal advice is sought or provided in the Document.

12. Your Production Instructions to be Produced. You shall produce a copy of all written or otherwise recorded instructions prepared by You concerning the steps taken to respond to this Subpoena. For any unrecorded instructions given, You shall provide a written statement under oath from the Person(s) who gave such instructions that details the specific content of the instructions and any Person(s) to whom the instructions were given.

13. Cover Letter, Index, Spreadsheets and Identifying Information. Accompanying any production(s) made pursuant to this Subpoena, You shall include a cover letter that shall at a minimum describe the type, content, and method of creation of Documents produced therewith; the Subpoena to which the production is made; the range of the document control number(s) which is being produced, and the range of document control numbers responsive to each item in this Subpoena. If the Subpoena requires information to be produced in spreadsheet or database form, Your response must include a data dictionary that identifies and defines each field in the spreadsheet. As further set forth in Attachment 1, information must also be included in the metadata and load files of each production concerning the identity of each Document's custodian, as well as information identifying the particular Document demands and/or information to which each document is responsive.

14. Affidavit of Compliance. A copy of the Affidavit of Compliance provided herewith shall be completed and executed by a person with personal knowledge of Your compliance with this Subpoena, and You shall submit such executed Affidavit of Compliance with Your response to this Subpoena.

15. Continuing Obligation to Produce. This Subpoena imposes a continuing obligation to produce the Documents and information demanded. Documents located or created, and information learned, acquired or created, at any time after Your response is due shall be promptly produced at the place specified in this Subpoena.

16. Identification of Persons Preparing Production. In a schedule attached to the Affidavit of Compliance provided herewith, You shall Identify the natural person(s) who prepared or assembled any productions or responses to this Subpoena. You shall further Identify the natural person(s) under whose personal supervision the preparation and assembly of productions and responses to this Subpoena occurred, and any use of AI Tools in the preparation and assembly of productions and responses, including the specific AI Tool and/or LLM used and the nature of the assistance it provided. You shall further Identify all other natural person(s) able competently to testify: (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and what they purport to be.

17. No Oral Modifications. No agreement purporting to modify, limit or otherwise vary this Subpoena shall be valid or binding, and You shall not act in reliance upon any such agreement, unless an Assistant Attorney General confirms or acknowledges such agreement in writing, or makes such agreement a matter of record in open court.

## ATTACHMENT 1

### Electronic Document Production Specifications

Unless otherwise specified and agreed to by the Office of Attorney General, all responsive documents must be produced in LexisNexis® Concordance® format in accordance with the following instructions. Any questions regarding electronic document production should be directed to the Assistant Attorney General whose telephone number appears on the subpoena.

1. Concordance Production Components. A Concordance production consists of the following component files, which must be produced in accordance with the specifications set forth below in Section 7.

   A. ***Metadata Load File.*** A delimited text file that lists in columnar format the required metadata for each produced document.

   B. ***Extracted or OCR Text Files.*** Document-level extracted text for each produced document or document-level optical character recognition ("OCR") text where extracted text is not available.

   C. ***Single-age Image Files.*** Individual petrified page images of the produced documents in tagged image format ("TIF"), or, for documents containing color information, JPEG format ("JPG"), with page-level Bates number endorsements.

   D. ***Opticon Load File.*** A delimited text file that lists the single-page TIF/JPG files for each produced document and defines (i) the relative location of the TIF/JPG files on the production media and (ii) ach document break.

   E. ***Native Files.*** Native format versions of non-printable or non–print friendly produced documents.

2. Production Folder Structure. The production must be organized according to the following standard folder structure:
   - data\ (contains production load files)
   - images\ (contains single-page TIF/JPG files, with subfolder organization)
     \0001, \0002, \0003…
   - native_files\ (contains native files, with subfolder organization)
     \0001, \0002, \0003…
   - text\ (contains text files, with subfolder organization)
     \0001, \0002, \0003…

3. De-Duplication. You must perform global de-duplication of stand-alone documents and email families (e.g., for documents in a family, only documents where the entire family is duplicative shall be de-duped and families shall be kept

intact) against any prior productions pursuant to this or previously related subpoenas.

4. Paper or Scanned Documents. Documents that exist only in paper format must be scanned to single-page TIF/JPG files and OCR'd. The resulting electronic files should be produced unitized (with separate documents delineated by separate BEGBATES and ENDBATES numbers) in Concordance format pursuant to these instructions. You must contact the Assistant Attorney General whose telephone number appears on the subpoena to discuss (i) any documents that cannot be scanned, and (ii) how information for scanned documents should be represented in the metadata load file.

5. Text, Chat, and LLM Chat Files. All records of text messages or chats, including LLM chat communications, must be produced both as a structured data file including metadata and as an image file. Production in any alternative formats requires permission from the Assistant Attorney General whose telephone number appears on the subpoena.

6. Structured Data. Before producing structured data, including but not limited to relational databases, transactional data, and xml pages, you must first speak to the Assistant Attorney General whose telephone number appears on the subpoena. Structured data is data that has a defined length and format and includes, but is not limited to, relational databases, graphical databases, JSON files, or xml/html pages.

A. Relational Databases

1. Database tables should be provided in CSV or other delimited machine-readable, non-proprietary format, with each table in a separate data file. The preferred delimiter is a vertical bar "|". If after speaking with the Assistant Attorney General and it is determined that the data cannot be exported from a proprietary database, then the data can be produced in the proprietary format so long as the Office of the Attorney General is given sufficient access to that data.

2. Each database must have an accompanying Data Dictionary.

3. Dates and numbers must be clearly and consistently formatted and, where relevant, units of measure should be explained in the Data Dictionary.

4. Records must contain clear, unique identifiers, and the Data Dictionary must include explanations of how the files and records relate to one another.

5. Each data file must also have an accompanying summary file that provides total row counts for the entire dataset and total row

counts.

B. Compression

1. If Documents are provided in a compressed archive, only standard lossless compression methods (e.g., gzip, bzip2, and ZIP) shall be used. Media files should be provided in their original file format, with metadata preserved and no additional lossy encoding applied.

7. Media and Encryption. All documents must be produced on CD, DVD, or hard-drive media. After consultation with the Assistant Attorney General, Documents may also be produced over a secure file transfer protocol (FTP), a pre-approved cloud-based platform (e.g. Amazon Web Services S3 bucket), or the Attorney General's cloud platform OAGCloud. All production media must be protected with a strong, randomly-generated password containing at least 16 alphanumeric characters and encrypted using Advanced Encryption Standard with 256-bit key length (AES-256). Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately from the media.

8. Production File Requirements.

A. ***Metadata Load File***

- Required file format:
  - ASCII or UTF-8
  - Windows formatted CR + LF end of line characters, including full CR + LF on last record in file.
  - .dat file extension
  - Field delimiter: (ASCII decimal character 20)
  - Text Qualifier: þ (ASCII decimal character 254). Date and pure numeric value fields do not require qualifiers.
  - Multiple value field delimiter: ; (ASCII decimal character 59)
- The first line of the metadata load file must list all included fields. All required fields are listed in Attachment 2.
- Fields with no values must be represented by empty columns maintaining delimiters and qualifiers.
- ***Note:*** All documents must have page-level Bates numbering (except documents produced only in native format, which must be assigned a document-level Bates number). The metadata load file must list the beginning and ending Bates numbers (BEGDOC and ENDDOC) for each document. For document families, including but not limited to emails and attachments, compound documents, and uncompressed file containers, the metadata load file must also list the first Bates number of the entire document family (BEGBATES), and the last Bates number (ENDBATES) assigned to the last "child" in the document family.
- Date and Time metadata must be provided in separate columns.
- Accepted date formats:

    - mm/dd/yyyy
    - yyyy/mm/dd
    - yyyymmdd
- Accepted time formats:
    - hh:mm:ss (if not in 24-hour format, you must indicate am/pm)
    - hh:mm:ss:mmm

B. ***Extracted or OCR Text Files***

- You must produce individual document-level text files containing the full extracted text for each produced document.
- When extracted text is not available (for instance, for image-only documents) you must provide individual document-level text files containing the document's full OCR text.
- The filename for each text file must match the document's beginning Bates number (BEGDOC) listed in the metadata load file.
- Text files must be divided into subfolders containing no more than 500 to 1000 files.

C. ***Single-Page Image Files (Petrified Page Images)***

- Where possible, all produced documents must be converted into single-page tagged image format ("TIF") or JPEG ("JPG") files. See Section 7.E below for instructions on producing native versions of documents you are unable to convert.
- Image documents that exist only in non-TIF/JPG formats must be converted into TIF/JPG files. The original image format must be produced as a native file as described in Section 7.E below.
- For documents produced only in native format, you must provide a TIF/JPG placeholder that states "Document produced only in native format."
- Each single-page TIF/JPG file must be endorsed with a unique Bates number.
- The filename for each single-page TIF/JPG file must match the unique page-level Bates number (or document-level Bates number for documents produced only in native format).
- Required image file format:
    - CCITT Group 4 compression (for TIF files)
    - 2-Bit black and white for TIF files or full color for JPG files
    - 300 dpi
    - Either .tif, .tiff, or .jpg file extension.
- TIF/JPG files must be divided into subfolders containing no more than 500 to 1000 files. Where possible documents should not span multiple subfolders.

D. ***Opticon Load File***

- Required file format:
    - ASCII
    - Windows formatted CR + LF end of line characters
    - Field delimiter: , (ASCII decimal character 44)
    - No Text Qualifier

  - .opt file extension
- The comma-delimited Opticon load file must contain the following seven fields (as indicated below, values for certain fields may be left blank):
  - ALIAS or IMAGEKEY – the unique Bates number assigned to each page of the production.
  - VOLUME – this value is optional and may be left blank.
  - RELATIVE PATH – the filepath to each single-page image file on the production media.
  - DOCUMENT BREAK – defines the first page of a document. The only possible values for this field are "Y" or blank.
  - FOLDER BREAK – defines the first page of a folder. The only possible values for this field are "Y" or blank.
  - BOX BREAK – defines the first page of a box. The only possible values for this field are "Y" or blank.
  - PAGE COUNT – this value is optional and may be left blank.
- ***Example*:**
  ABC00001,,IMAGES\0001\ABC00001.tif,Y,,,2
  ABC00002,,IMAGES\0001\ABC00002.tif,,,,
  ABC00003,,IMAGES\0002\ABC00003.tif,Y,,,1
  ABC00004,,IMAGES\0002\ABC00004.tif,Y,,,1

E. ***Native Files***

- Non-printable or non–print friendly documents (including but not limited to spreadsheets, audio files, or video files) must be produced in their native format.
- The filename of each native file must match the document's beginning Bates number (BEGDOC) in the metadata load file and retain the original file extension.
- For documents produced only in native format, you must assign a single document-level Bates number and provide an image file placeholder that states "Document produced only in native format."
- The relative paths to all native files on the production media must be listed in the NATIVEFILE field of the metadata load file.
- Native files that are password-protected must be decrypted prior to conversion and produced in decrypted form. In cases where this cannot be achieved the document's password must be listed in the metadata load file. The password should be placed in the COMMENTS field with the format Password: <PASSWORD>.
- You may be required to supply a software license for proprietary documents produced only in native format.

**ATTACHMENT 2**
**Required Fields for Metadata Load File**

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| BEGDOC | Bates number assigned to the first page of the document. | ABC0001 |
| ENDDOC | Bates number assigned to the last page of the document. | ABC0002 |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (*i.e.*, should be the same as BEGDOC of the parent document, or PARENTDOC). | ABC0001 |
| ENDATTACH | Bates number assigned to the last page of the last child document in a family (*i.e.*, should be the same as ENDDOC of the last child document). | ABC0008 |
| PARENTDOC | BEGDOC of parent document. | ABC0001 |
| CHILDDOCS | List of BEGDOCs of all child documents, delimited by ";" when field has multiple values. | ABC0002; ABC0003; ABC0004… |
| DOCREQ | List of particular Demands for Documents to be Produced in the subpoena | 1; 2; 3 . . . |
| INTERROG | List of particular [Demands for Information] [interrogatories] in the subpoena | 1; 2; 3 . . . |
| COMMENTS | Additional document comments, such as passwords for encrypted files. | |
| NATIVEFILE | Relative file path of the native file on the production media. | .\Native_Files\Folder\...\BEGDOC.ext |

[1] Examples represent possible values and not required format unless the field format is specified in Attachment 1.

| | | |
|---|---|---|
| TEXTFILE | Relative file path of the text file on the production media. | .\text\Folder\...\BEGDOC.txt |
| SOURCE | For scanned paper records this should be a description of the physical location of the original paper record. For loose electronic files this should be the name of the file server or workstation where the files were gathered. | Company Name, Department Name, Location, Box Number… |
| CUSTODIAN | Owner of the document or file. | Firstname Lastname, Lastname, Firstname, User Name; Company Name, Department Name... |
| FROM | Sender of the email. | Firstname Lastname < FLastname @domain > |
| TO | All to: members or recipients, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| CC | All cc: members, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| BCC | All bcc: members, delimited by ";" when field has multiple values | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| SUBJECT | Subject line of the email. | |
| DATERCVD | Date that an email was received. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMERCVD | Time that an email was received. | hh:mm:ss AM/PM or hh:mm:ss |

| | | |
|---|---|---|
| DATESENT | Date that an email was sent. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMESENT | Time that an email was sent. | hh:mm:ss AM/PM or hh:mm:ss |
| CALBEGDATE | Date that a meeting begins. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| CALBEGTIME | Time that a meeting begins. | hh:mm:ss AM/PM or hh:mm:ss |
| CALENDDATE | Date that a meeting ends. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| CALENDTIME | Time that a meeting ends. | hh:mm:ss AM/PM or hh:mm:ss |
| CALENDARDUR | Duration of a meeting in hours. | 0.75, 1.5… |
| ATTACHMENTS | List of filenames of all attachments, delimited by ";" when field has multiple values. | AttachmentFileName.; AttachmentFileName.docx; AttachmentFileName.pdf; … |
| NUMATTACH | Number of attachments. | 1, 2, 3, 4…. |
| RECORDTYPE | General type of record. | IMAGE; LOOSE E-MAIL; E-MAIL; E-DOC; IMAGE ATTACHMENT; LOOSE E-MAIL ATTACHMENT; E-MAIL ATTACHMENT; E-DOC ATTACHMENT |
| FOLDERLOC | Original folder path of the produced document. | Drive:\Folder\...\...\ |
| FILENAME | Original filename of the produced document. | Filename.ext |
| DOCEXT | Original file extension. | html, xls, pdf |
| DOCTYPE | Name of the program that created the produced document. | Adobe Acrobat, Microsoft Word, Microsoft Excel, ChatGPT 5, Claude Cowork, Slack, Corel WordPerfect… |

| | | |
|---|---|---|
| TITLE | Document title (if entered). | |
| AUTHOR | Name of the document author. | Firstname Lastname; Lastname, First Name; FLastname |
| REVISION | Number of revisions to a document. | 18 |
| DATECREATED | Date that a document was created. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMECREATED | Time that a document was created. | hh:mm:ss AM/PM or hh:mm:ss |
| DATEMOD | Date that a document was last modified. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMEMOD | Time that a document was last modified. | hh:mm:ss AM/PM or hh:mm:ss |
| FILESIZE | Original file size in bytes. | 128, 512, 1024… |
| PGCOUNT | Number of pages per document. | 1, 2, 10, 100… |
| IMPORTANCE | Email priority level if set. | Low, Normal, High |
| MD5HASH | MD5 hash value computed from native file (a/k/a file fingerprint). | BC1C5CA6C1945179FE E144F25F51087B |
| SHA1HASH | SHA1 hash value | B68F4F57223CA7DA358 4BAD7ECF111B8044F86 31 |
| MSGINDEX | Email message ID | |

AFFIDAVIT OF COMPLIANCE WITH SUBPOENA

State of ________________ }
County of ______________ }

I, __________________________________, being duly sworn, state as follows:

1. I am employed by Respondent in the position of ____________________ ______;

2. Respondent's productions and responses to the Subpoena of the Attorney General of the State of New York, dated __________, 20_________ (the "Subpoena") were prepared and assembled under my personal supervision;

3. I made or caused to be made a diligent, complete and comprehensive search for all Documents and information demanded by the Subpoena, in full accordance with the instructions and definitions set forth in the Subpoena;

4. Respondent's productions and responses to the Subpoena are complete and correct to the best of my knowledge and belief;

5. The Documents contained in Respondent's productions and responses to the Subpoena are authentic, genuine and are what they purport to be;

6. No Documents or Information responsive to the Subpoena have been withheld from Respondent's production and response, other than responsive Documents or information withheld on the basis of a legal privilege or doctrine;

7. All responsive Documents or information withheld on the basis of a legal privilege or doctrine have been identified on a privilege log composed and produced in accordance with the instructions in the Subpoena;

8. The affiant is the duly authorized custodian or other qualified witness and has authority to make the certification;

9. To the best of the affiant's knowledge, after reasonable inquiry, the records or copies thereof are accurate versions of the Documents described in the subpoena duces tecum that are in the possession, custody, or control of the Person receiving the subpoena;

10. To the best of the affiant's knowledge, after reasonable inquiry, the records or copies produced represent all the Documents described in the subpoena duces tecum, or if they do not represent a complete set of the Documents subpoenaed,

an explanation of which Documents are missing and a reason for their absence is provided;

11. The Documents produced were made by the personnel or staff of the business, or persons acting under their control, in the regular course of business, at the time of the act, transaction, occurrence or event recorded therein, or within a reasonable time thereafter, and that it was the regular course of business to make such records;

12. Attached is a true and accurate record of all persons who prepared and assembled any productions and responses to the Subpoena, all persons under whose personal supervision the preparation and assembly of productions and responses to the Subpoena occurred, and all persons able competently to testify: (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and are what they purport to be; and

13. Attached is a true and accurate statement of those demands under the Subpoena as to which no responsive Documents were located in the course of the aforementioned search.

14. I affirm this day of ________________________under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

______________________________ ______________________________
Signature of Affiant Date

______________________________
Printed Name of Affiant

* * *

Subscribed and sworn to before me this ______ day of __________________, 20___.

_____________________________, Notary Public

My commission expires: ______________________