UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK,

Plaintiff,

- against -

KALSHIEX LLC,

Defendant.

---

26-CV-6550 (VSB)

**OPINION & ORDER**

Appearances:

K. Brent Tomer
Alejandra De Urioste
Nina Mahesh Varindani
Tatyana A. Trakht
New York State Office of The Attorney General
New York, New York

*Counsel for Plaintiff*

Grant Richard Mainland
Matthew Joseph Laroche
Nicole Valente
Andrew Leighton Porter
Milbank LLP
New York, New York

Joshua Brooks Sterling
Milbank LLP
Washington, District of Columbia

*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

Before me is Plaintiff's motion to remand this action to the Supreme Court of New York, New York County, pursuant to 28 U.S.C. § 1447. (Doc. 16.) For the reasons that follow, Plaintiff's motion is GRANTED.

## I. **Factual Background**[1]

Defendant KalshiEX LLC ("Kalshi") is an exchange and prediction market on which users can purchase "event contracts," a type of derivative contract, which are "'Yes' or 'No' positions" with respect to whether an event will happen or not. (Doc. 1 ¶ 1.) Users can purchase contracts for a wide variety of events, including elections, reality competitions, and sporting events. (*See id.*; Doc. 1-1 ("Pet." or "Petition") ¶¶ 41–54.) On November 3, 2020, Kalshi was certified as a Designated Contract Market ("DCM") by the Commodity Futures Trading Commission ("CFTC"), the federal agency responsible for regulating the nation's derivative markets.[2] (Doc. 1 ¶ 2 & n.1.)

The State of New York has policed gambling within its borders since 1771. (Pet. ¶ 20.) Under New York law, "[a] person 'engages in gambling when he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome.'" (*Id.* ¶ 23 (quoting New York Penal Law § 225.00(2)).) New York has a comprehensive regulatory regime for mobile sports wagering. (Pet. ¶ 24.) New York requires businesses offering mobile sports wagering to be licensed by the New York Gaming

[1] The facts in this Section are recited for background only and are not intended to and should not be viewed as findings of fact.

[2] As a DCM, Kalshi is obligated to comply with the core principles of the Commodity Exchange Act ("CEA"), such as the "prevention of market disruption" and the "daily publication of trading information," as well as any regulations imposed by the CFTC. 7 U.S.C. § 7(d)(1)(A).

Commission ("Gaming Commission") and taxes licensees on their revenues. (*Id.* ¶¶ 25, 29.) New York also prohibits sports wagering by individuals under the age of twenty-one (21), (*id.* ¶ 27), and prohibits sports wagering on events in which New York college teams participate, (*id.* ¶ 28).

Kalshi, which operates in New York, is not licensed by the Gaming Commission. (*Id.* ¶ 54.) Kalshi permits users over the age of eighteen (18) but under the age of twenty-one (21) to use its platform. (*Id.* ¶ 58.) Kalshi offers event contracts on sporting events involving New York college teams. (*Id.* ¶ 51.) On October 24, 2025, the Gaming Commission issued a cease-and-desist to Kalshi over what it called Kalshi's "unlicensed mobile sports wagering platform." (*Id.* ¶ 30.) Kalshi responded by suing the Gaming Commission in this federal court, *KalshiEX LLC v. Williams et al.*, 25-CV-8846 (S.D.N.Y. Oct. 27, 2025). (*Id.* ¶ 31.) On July 7, 2026, Judge Analisa Torres denied Kalshi's motion for a preliminary injunction enjoining the Gaming Commission from enforcing New York gambling laws against Kalshi. *See KalshiEX LLC v. Williams*, No. 25-CV-8846, 2026 WL 1961872 (S.D.N.Y. July 7, 2026), *amended*, No. 25-CV-8846, 2026 WL 2017466 (S.D.N.Y. July 13, 2026). Kalshi's appeal of that ruling remains pending. *See KalshiEX LLC v. Williams*, No. 26-1835 (2d Cir.).

## II. Procedural History

On July 31, 2026, Plaintiff commenced this action in New York state court seeking to "permanently enjoin[] [Kalshi] from continuing to operate a gambling business in New York without being licensed by the New York State Gaming Commission" and to "permanently enjoin[] [Kalshi] and its principals, agents, and employees from violating the Constitution and laws of the State of New York." (Pet. ¶ 13.) Plaintiff brings this action pursuant to New York Executive Law § 63(12) ("Executive Law § 63(12)"), which "authorizes the Attorney General to

bring a special proceeding against a person or business committing repeated or persistent fraudulent or illegal acts." *People ex rel. Vacco v. World Interactive Gaming Corp.*, 714 N.Y.S.2d 844, 848 (Sup. Ct. 1999). Executive Law § 63(12) provides that:

> Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, on notice of five days, for an order enjoining the continuance of such business activity.

Plaintiff alleges Kalshi has "engaged in repeated and persistent illegality" by operating a gambling platform without a license from the Gaming Commission. (Pet. ¶¶ 3, 10–11.) Plaintiff brings eight causes of action under Executive Law § 63(12), each predicated on a different violation of law: one for a violation of the New York State Constitution, three for violations of New York Penal Law, three for violations of New York Racing Law, and one for a violation of 18 U.S.C. § 1084(a), the Federal Wire Act ("Wire Act"). (*Id.* ¶¶ 99–150.)

On the same day Plaintiff filed its Petition, Kalshi removed the case to this court. (Doc. 1.) On August 7, 2026, Plaintiff filed a motion to remand for lack of subject-matter jurisdiction, (Doc. 16), along with an accompanying memorandum of law, (Doc. 17 ("Mem.")). On August 21, 2026, Kalshi filed a memorandum of law in opposition. (Doc. 21 ("Opp'n").) On August 28, 2026, Plaintiff filed a reply memorandum of law in support of its motion. (Doc. 22 ("Reply").)

## III. <u>Legal Standard</u>

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," known as federal question jurisdiction. 28 U.S.C. § 1331. To

determine whether a case "arises under" federal law, courts typically look to the face of the plaintiff's well-pleaded complaint. *See Klein v. Aicher*, No. 19-CV-9172, 2020 WL 4194823, at *2 (S.D.N.Y. July 21, 2020) ("Whether federal courts have federal question jurisdiction over an action is typically governed by the 'well-pleaded complaint' rule, pursuant to which federal question jurisdiction exists only if 'plaintiff's statement of his own cause of action shows that it is based' on federal law." (quoting *Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010)).

However, the Second Circuit has recognized three exceptions "in which a complaint that does not allege a federal cause of action may nonetheless 'arise under' federal law for purposes of subject matter jurisdiction." *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014) (alterations adopted). Those exceptions are: (1) "if Congress expressly provides, by statute, for removal of state law claims"; (2) "if the state law claims are completely preempted by federal law"; and (3) "in certain cases if the vindication of a state law right necessarily turns on a question of federal law." *Id.* Under the third exception, jurisdiction exists only if the federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)).

## IV. Discussion

The Petition does not include any federal causes of action.[3] However, Kalshi argues that removal is nevertheless proper because Congress has expressly provided for removal of Plaintiff's claims under 28 U.S.C. § 1442, the federal officer removal statute, and because Plaintiff's claims necessarily turn on questions of federal law, specifically the definition of

[3] I note that the predicate act for the Eighth Cause of Action is the Wire Act.

"bets" and "wagers" under the Wire Act and the definition of "illegal" under Executive Law § 63(12).[4]

### A. *The Federal Officer Removal Statute*

#### 1. 28 U.S.C. § 1442(a)(2)

Kalshi argues that 28 U.S.C. § 1442(a)(2), which permits removal by "[a] property holder whose title is derived from any [federal] officer, where such action or prosecution affects the validity of any law of the United States," applies here by virtue of Kalshi's CFTC-issued license to operate as a DCM. (Opp'n 19–23.) Kalshi argues that its license constitutes intangible "property" under the federal officer removal statute and that Plaintiff's action "affects the validity of" the statute under which the license was granted, the CEA. (*Id.*) I need not decide whether the license is "property" as contemplated by § 1442(a)(2), though at least one court has held that it is not, *see Washington v. KalshiEX, LLC*, No. C26-1062, 2026 WL 1217743, at *2 (W.D. Wash. May 5, 2026), because removal under § 1442(a)(2) is foreclosed since it does not "affect the validity of" the CEA.

In this regard, *Veneruso v. Mount Vernon Neighborhood Health Center* is instructive. 586 F. App'x 604 (2d Cir. 2014). There, defendant was a federal grant recipient under the Public Health Service Act, which "subject[ed defendant] to a host of federal requirements and regulations pertaining to the health services it provide[d] and the manner in which it expend[ed] its funds." *Id.* at 607–08. Defendant established a not-for-profit corporation, Community Choice Health Plan of Westchester ("CCHP"), that provided health services pursuant to "a Medicaid managed care contract with New York that was approved by the federal government"

[4] I need not examine whether removal is justified on the basis that the CEA preempts Executive Law § 63(12), because Kalshi specifies that preemption is "not [a] basis for removal here." (Opp'n 1.)

for several years. *Id.* at 605. After the New York State Department of Health ordered CCHP to be judicially dissolved, CCHP's court-appointed receiver sued defendant for payments it received from CCHP's board of directors that the receiver contended were de-facto income distributions prohibited by New York's Not-For-Profit Corporation Law. *Id.* at 605–06. Defendant removed the action to federal court in this District under § 1442(a)(2) and § 1442(a)(1), arguing that "it was acting under the authority and auspices of [the Department of Health and Human Services] and consistently with a comprehensive statutory scheme intertwining the Medicaid and [federal grant] programs when it received" the payments from CCHP. *Id.* at 608. The district court remanded, and the Second Circuit affirmed, holding that "the [r]eceiver's suit plainly does not challenge the validity of any federal law. Instead, the [r]eceiver merely contends that the various federal statutes and regulations [defendant] has identified do not provide a defense to the [r]eceiver's claims." *Id.*

Kalshi attempts to distinguish *Veneruso* on the grounds that "the defendant[] argued only that [its] actions were ***permitted*** by federal law, not that federal law ***required*** a step inconsistent with the relief the plaintiff sought." (Opp'n 22 (emphasis in original).) "[T]his argument fails to demonstrate an understanding of the distinction between permitting an activity and guaranteeing a right to that activity. The federal commodities regulations cited by the CFTC may permit DCMs to offer event contracts, but they do not guarantee a right to offer such contracts or require DCMs to offer them, nor do they prohibit states from banning them altogether."[5] *United States*

[5] In particular, 17 C.F.R. § 38.151(b), cited by Kalshi, (Opp'n 23), does not guarantee Kalshi the right to operate in New York. Rather, it exists merely "to prevent DCMs from having certain discriminatory access requirements for their platform." *Williams*, 2026 WL 2017466, at *8 (citing 17 C.F.R. § 38.151(b) (providing for "[a]ccess criteria that are impartial, transparent, and applied in a non-discriminatory manner" and "[c]omparable fee structures for members . . . receiving equal access")); Core Principles and Other Requirements for Designated Contract Markets, 75 Fed. Reg. 80572, 80579 (proposed Dec. 22, 2010) (to be codified at 17 C.F.R. pts. 1, 16, and 38) ("The purpose of the proposed impartial access requirements is to prevent DCMs from using discriminatory access requirements as a competitive tool against certain participants."); *contra* Opp'n 23.

*v. Wisconsin*, No. 26-C-749, 2026 WL 2474512, at *12 (E.D. Wis. July 29, 2026); *contra* Opp'n 22 (claiming that the CEA "require[s] that DCMs operate as nationwide markets").[6]

The CEA subjects Kalshi to a host of federal regulations pertaining to the event contracts it offers. *See* 7 U.S.C. § 7(d). However, Plaintiff brought this action alleging that Kalshi's event contracts are "illegal" under Executive Law § 63(12). (*See* Pet. ¶¶ 99–150.) Plaintiff "does not challenge the legal force of the CEA, seek invalidation of any CEA provision, or ask the state court to revoke [Kalshi's] federal status." *Willis v. Kalshi, Inc.*, No. 26-CV-722, 2026 WL 2641826, at *5 (N.D. Ala. Sept. 8, 2026) (remanding action removed pursuant to § 1442(a)(2) on similar facts). Thus, the CEA's relationship with this action is limited to Kalshi's defense that it acted under the authority of its CFTC-issued license and consistent with the CEA. "[S]uch defensive matters do not supply removal jurisdiction under § 1442(a)(2)." *See Town of Stratford v. City of Bridgeport*, 434 F. Supp. 712, 715 (D. Conn. 1977); *see also Veneruso*, 586 F. App'x at 608; *Willis*, 2026 WL 2641826, at *5–6.

**2. 28 U.S.C. § 1442(a)(1)**

Kalshi also argues removal is appropriate under § 1442(a)(1), which authorizes the removal of an action against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under the color of such office . . ." (Opp'n 23–25.) However, Kalshi does not claim it is a federal agency or is "acting under" a federal officer. Instead, Kalshi argues that the CFTC is a necessary party to this action, and had Plaintiff named the CFTC, "this action would be removable under [§ 1442(a)(1)]." (*Id.* at 23.) The CFTC has

[6] Moreover, Kalshi's claim that Plaintiff's requested relief would "require different treatment for New York users" contrary to federal law, (Opp'n 23), is contradicted by Kalshi's statements elsewhere in its briefing that the suit seeks to "shut down Kalshi's exchange altogether, including in states other than New York," (Opp'n 13; *see also id.* at 5, 14; Doc. 1 ¶¶ 21, 31).

not sought to intervene in this action, despite successfully doing so in at least one other action concerning a state's regulation of Kalshi. *See* Motion to Intervene filed by U.S. Commodity Futures Trading Commission, *KalshiEx LLC v. Mark Furcolo et al.*, Doc. 19, No. 26-CV-327 (D.R.I. May 28, 2026).[7]

I agree with Plaintiff that "[t]he appropriate remedy for failing to join a necessary party 'would be to compel joinder in state court, not to assert a right to removal.'" (Reply 7 (quoting *Washington v. KalshiEX, LLC*, Doc. 19.1, No. 26-3106 (9th Cir. May 21, 2026)).) The federal officer removal statute states that an action "against or directed to" a federal agency "may be removed by them." 28 U.S.C. § 1442(a)(1). Plaintiff is the "master of its complaint," and "was thus free to draft its complaint to avoid" naming the CFTC as a defendant. *New York v. Early Warning Servs., LLC*, No. 25-CV-07601, 2026 WL 570793, at *4 (S.D.N.Y. Feb. 26, 2026) (quoting *Viacom Int'l., Inc. v. Kearney*, 212 F.3d 721, 727 (2d Cir. 2000)). However, even if Plaintiff's failure to join the CFTC was contrary to New York law, "Defendant fails to provide the Court with authority for the proposition that a failure to join a necessary [] party, in and of itself, triggers § 1442(a)(1) removal authority if that party is the United States or its agency. . . . Nor is the Court aware of such authority." *Washington*, 2026 WL 1217743, at *2.

Therefore, I hold that the federal officer removal statute does not provide Kalshi with a basis for federal jurisdiction.

### B. *The Gunn-Grable Test*

Kalshi argues that whether it violated the Wire Act (a predicate offense to the Eighth Cause of Action), and whether its conduct was "illegal" under New York Executive Law §

[7] The CFTC's motion was consented to by Kalshi and the State of Rhode Island did not oppose intervention. Joint Response, *KalshiEx LLC v. Mark Furcolo et al.*, Doc. 28, No. 26-CV-00327 (D.R.I. June 5, 2026). The court granted the motion by text order on June 26, 2026.

63(12) (the statutory basis for the First through Eighth Causes of Action), are each federal questions justifying removal. (Opp'n 7–18.) "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *See Gunn*, 568 U.S. at 258 (summarizing *Grable*'s jurisdictional test); *see also NASDAQ OMX Grp. v. UBS Sec., LLC*, 770 F.3d 1010, 1020 (2d Cir. 2014) (applying the "*Gunn*-*Grable* test").

**1. Necessarily Raised**

The first element of the *Gunn*-*Grable* test is that the "federal issue [must be] . . . necessarily raised." *Gunn*, 568 U.S. at 258. "A state law claim necessarily raises federal questions where the claim is affirmatively premised on a violation of federal law." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016). Conversely, "if a court could resolve the case without reaching the federal issues, then the claims do not necessarily raise a federal issue." *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 140 (2d Cir. 2023) (internal quotations omitted and alterations adopted).

The Eighth Cause of Action is clearly predicated on a violation of federal law. *New York by James v. Sirius XM Radio Inc.*, 735 F. Supp. 3d 272, 277 (S.D.N.Y. 2024); *see* Pet. ¶¶ 147, 150 ("Respondent engaged in repeated illegal acts by violating the Federal Interstate Wire Act . . . Respondent's violations of 18 U.S.C. § 1084(a) constitute repeated and persistent illegal conduct in violation of Executive Law § 63(12)"). "A court therefore could not resolve [the Eighth Cause of Action] without reaching the federal issue of whether [Kalshi's] alleged conduct is proscribed by the [Wire Act]." *New York By James v. DailyPay, Inc.*, No. 25-CV-3439, 2025 WL 2695712, at *5 (S.D.N.Y. Sept. 19, 2025); *see id.* at *4 ("In this Circuit, courts have

uniformly characterized claims arising from state law that predicate liability on the application of federal law as state-law claims that necessarily raise federal questions." (internal quotations omitted and alterations adopted)). Moreover, Plaintiff declined to contest this issue in its briefing and has thus abandoned any argument that the Eighth Cause of Action does not "necessarily raise" the federal issue of Wire Act liability. *Islas Durand v. Imperial Parking (U.S.), LLC*, No. 25-CV-01887, 2026 WL 2859780, at *6 n.6 (S.D.N.Y. Sept. 23, 2026) ("[E]ven if Plaintiff's position were meritorious, the Court would find that Plaintiff's failure to provide argument on this point at issue constitutes abandonment of the issue." (internal quotations omitted and alterations adopted)).

The First through Seventh Causes of Action, by contrast, are predicated on state law violations. (*See* Pet. ¶¶ 99–145.) Nevertheless, Kalshi argues they "require[e] construction of federal law" because, to determine whether Kalshi's conduct is "gambling" under Art. 1, § 9 of the New York State Constitution and New York Penal Law § 225.20, "unlawful" under New York Penal Law § 225.05 and § 225.10, or "wagering" under New York Racing Law § 1367—and therefore "illegal" under Executive Law § 63(12)—a court must determine the conduct is not "specifically authorized under the CEA." (Opp'n 11.) The law does not support Kalshi's theory with regard to the First through Seventh Causes of Action.

"For a federal issue to be necessarily raised, the mere *presence* of a federal issue in a state cause of action is insufficient; the pertinent question of federal law must be a *necessary element* of one of the well-pleaded state claims." *Exxon Mobil*, 83 F.4th at 140 (internal quotations omitted and emphasis in original). None of the predicate state statutes Plaintiff accuses Kalshi of violating contain a statutory carveout for conduct "specifically authorized under the CEA" or otherwise condition liability on a violation of federal law. Nor do they incorporate federal law

definitions. *Cf. New York v. Arm or Ally, LLC*, 644 F. Supp. 3d 70, 78 (S.D.N.Y. 2022) (state statute defining term "as having the same meaning as defined in" federal law necessarily raised federal question). Thus, to the extent Kalshi argues that "[w]ere the State to prevail, [its] conduct would be simultaneously lawful under federal law . . . and unlawful under New York's gambling laws," (Opp'n 16), it is asserting an affirmative defense, which is not a basis for removal. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense"); *City of New York v. Exxon Mobil Corp.*, 733 F. Supp. 3d 296, 314 (S.D.N.Y. 2024) ("The fact that Defendants may have a [federal] defense . . . is not adequate to establish the *Grable* exception"); *see also supra* at § IV(A)(1).[8]

Although I find that the Eighth Cause of Action necessarily raises a federal issue, namely whether Kalshi violated the Wire Act, the First through Seventh Causes of Action do not. Accordingly, I cabin the remainder of my *Gunn*-*Grable* analysis to the Eighth Cause of Action.

### 2. Actually Disputed

The second element of the *Gunn*-*Grable* test is that the parties have a "dispute respecting the effect of federal law." *Gunn*, 568 U.S. at 259 (quoting *Grable*, 545 U.S., at 313). Plaintiff alleges that Kalshi violated the Wire Act, which prohibits the "transmission in interstate commerce of . . . bets or wagers." Pet. ¶¶ 148–49; *see United States v. Ross*, No. 98-CR-1174-1, 1999 WL 782749, at *2 (S.D.N.Y. Sept. 16, 1999) (setting out the elements of the Wire Act). "Kalshi strongly disputes [Plaintiff's] contention." (Doc. 1 ¶ 20.) Specifically, the parties

[8] *Georgia Gambling Recovery LLC v. Kalshi Inc.*, No. 25-CV-310, 2026 WL 279375, (M.D. Ga. Feb. 3, 2026) (cited by Kalshi at Opp'n 13) is accordingly inapposite. In determining that a Georgia law governing illegal gambling contracts necessarily raised the issue of whether the contracts were specifically authorized by the CEA, the court relied on a Georgia Supreme Court holding that illegality under that law "c[ould] not be determined by reference to Georgia law alone." *Id.* at *3.

disagree over whether Kalshi's event contracts are "bets" or "wagers" as defined by the Wire Act. (*Compare id. with* Pet. ¶¶ 8 ("Respondent . . . offer[s] what is quintessentially wagering under the guise of 'event contracts'").) This is sufficient to meet the "actually disputed" element. *New York by James v. MoneyLion Inc.*, No. 25-CV-4093, 2025 WL 3154497, at *4 (S.D.N.Y. Nov. 12, 2025) (holding that issue is actually disputed when "it requires a court to adjudicate the meaning of" a term under a federal statute "and determine whether that term applies to [Defendant's] alleged conduct"); *DailyPay*, 2025 WL 2695712, at *6 (same); *New York by James v. Nat'l Gen. Holdings Corp.*, No. 25-CV-3608, 2025 WL 3085244, at *5 (S.D.N.Y. Aug. 4, 2025) (issue was "actually disputed" because "the parties actually dispute whether or not Defendants complied with federal law"), *report and recommendation adopted*, No. 25-CV-3608, 2025 WL 3013095 (S.D.N.Y. Oct. 28, 2025).

**3. Substantial**

The third element of the *Gunn-Grable* test is that the federal issue is "substantial." *Gunn*, 568 U.S. at 258. "A substantial federal issue typically exists only in those exceptional cases that go beyond the application of some federal law raised in connection with state-law claims and instead implicate broad consequences to the federal system or the nation as a whole." *Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 115 (2d Cir. 2024). There is no "bright-line analysis"; "[r]ather, substantiality must be determined based on a careful, case-by-case judgment." *NASDAQ OMX Grp*, 770 F.3d at 1028. Factors include whether "the state-law claim would yield an interpretation of federal law that would be 'controlling in numerous other cases'" or "when it challenges the 'action of any federal department, agency, or service.'" *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 39 (2d Cir. 2025) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700

(2006)). However, "the mere possibility of a state court ruling at odds with federal law" is insufficient to meet the substantial element of the test. *Link Motion Inc. v. DLA Piper LLP*, 103 F.4th 905, 914–15 (2d Cir. 2024).

Kalshi does not argue that the Wire Act's definition of "bets" or "wagers" is, in itself, a substantial federal issue. Instead, Kalshi adopts a circuitous theory of substantiality: the Wire Act issue necessarily raises another issue—whether the Wire Act incorporates the definitions of "bets" and "wagers" in a different federal statute, the Unlawful Internet Gambling Enforcement Act ("UIGEA"), which excludes "any transaction conducted on or subject to the rules of a registered entity . . . under the [CEA]," 31 U.S.C. §§ 5362(1)(E)(ii)—which necessarily raises a third, substantial issue: "whether Kalshi's event contracts are bona fide swaps under the CEA subject to the CFTC's exclusive jurisdiction." (Opp'n 9.) Although the attenuated nature of Kalshi's theory itself supports rejecting it on that basis alone, Kalshi's theory also fails because, regardless of the substantiality of issues related to the UIGEA and the CEA, those issues are not the ones necessarily raised here.

The Wire Act was enacted in 1961 "to assist various States and the District of Columbia in the enforcement of their laws pertaining to gambling, bookmaking, and like offenses and to aid in the suppression of organized gambling activities by prohibiting the use of wire communication facilities which are or will be used for the transmission of bets or wagers and gambling information in interstate and foreign commerce." H.R. Rep. No. 87-967, at 1–2 (1961). Its avowed legislative purpose, as well as its safe-harbor provision exempting the "transmission of information assisting in the placing of bets or wagers on a sporting event or contest from a State . . . where betting on that sporting event or contest is legal into a State . . . in which such betting is legal," 18 U.S.C. § 1084(b), from conduct prohibited by the statute, make

clear that a violation of the Wire Act turns on the application of state law.[9] *See also KalshiEX LLC v. Martin*, 793 F. Supp. 3d 667, 683 (D. Md. 2025) ("[T]he Wire Act criminalize[s] engaging in 'betting or wagering' . . . where such wagering is illegal under state law"), *aff'd per curiam*, --- F.4th ---, 2026 WL 3544548 (4th Cir. 2026). The Wire Act thus appears to foreclose an interpretation of "bets" and "wagers" based upon another federal statute.

In any event, the plain text of the UIGEA expressly rejects the role Kalshi wants it to play in adjudicating Plaintiff's Wire Act claim. The UIGEA states that "[n]o provision of this subchapter shall be construed as altering, limiting, or extending any Federal or State law . . . prohibiting, permitting, or regulating gambling within the United States," such as the Wire Act. 31 U.S.C. § 5361(b); *see KalshiEX, LLC v. Assad*, No. 25-7516, 190 F.4th 1098, at 1113 n.4 (9th Cir. Aug. 28, 2026) ("[T]he UIGEA definitions are not meant to alter or limit other laws," including the Wire Act (internal quotations omitted)); *Ho-Chunk Nation v. Kalshi Inc.*, 25-CV-698, 2026 WL 1284077, at *8 (W.D. Wis. May 11, 2026) ("[J]ust because Kalshi's conduct is not prohibited by the UIGEA, does not make its offering of sports betting contracts legal anywhere"), *motion to certify appeal granted sub nom.*, No. 25-CV-698, 2026 WL 2676018 (W.D. Wis. Sept. 11, 2026).

Thus, even if the question of whether Kalshi's event contracts are permitted by the UIGEA is "the subject of great debate in ongoing litigation," (Opp'n 16–17), and acknowledging that "[t]he federal interest in regulating nationwide derivatives markets" through the CEA "is undoubtedly strong," (*id.* at 15), those issues, even if substantial, are not the issues necessarily raised here. The issue that is raised does not "go beyond the application of" the Wire Act to

---

[9] Nor does the Wire Act expressly incorporate the UIGEA's or any other federal statute's definitions of "bets" or "wagers." *Cf. New York v. Arm or Ally*, 644 F. Supp. 3d at 79. Instead, as noted, the Wire Act's safe-harbor provision expressly incorporates state law.

Kalshi's actions in New York. *See Sunvestment Energy*, 116 F.4th at 115, and therefore is not substantial.

### 4. Federal-State Court Balance

The fourth element of the *Gunn-Grable* test is that the issue is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. I find that this factor is an independent reason to grant the motion to remand.

"The scope of laws regulating gambling and lotteries is clearly a matter of predominantly state concern." *Chun v. State of N.Y.*, 807 F. Supp. 288, 292 (S.D.N.Y. 1992); *see KalshiEX LLC v. Schuler*, No. 26-3196, 2026 WL 2884087, at *19 (6th Cir. Sept. 25, 2026) ("There is a long history of states regulating intrastate gambling, and a history of federal gambling regulations tying federal illegality to state law."); *Marvin v. Trout*, 199 U.S. 212, 224 (1905) ("The power of the state to enact laws to suppress gambling cannot be doubted"); *Ah Sin v. Wittman*, 198 U.S. 500, 505–06 (1905) ("The suppression of gambling is concededly within the police powers of a state"); *see also Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 486 (2018) ("[E]ach State is free to act on its own" to "regulate sports gambling"). Although the CEA vests "exclusive jurisdiction" with respect to "transactions involving swaps" to the CFTC, it specifies that it shall not "supersede or limit the jurisdiction at any time conferred on . . . other regulatory authorities under the laws of the United States or of any State." 7 U.S.C. § 2(a)(1)(A). The *Williams* court held that "[t]his provision evinces Congress' intent to leave room for states to regulate certain activities that may have otherwise been covered by the CEA." 2026 WL 2017466, at *7. I agree. The *Williams* court's interpretation of the "other regulatory authorities" provision as protecting historical state police powers is consistent with the structure of the CEA; namely, a neighboring provision specifying that the CEA shall not "supersede or limit the

jurisdiction conferred on courts of the United States or any State" that courts have read as a "savings clause" "preserv[ing] . . . at least some state law causes of action." *Jarvis v. N. Am. Globex Fund, L.P.*, 823 F. Supp. 2d 161, 165 (E.D.N.Y. 2011) (quoting *Am. Agric. Movement, Inc. v. Bd. of Trade of City of Chicago*, 977 F.2d 1147, 1155 (7th Cir. 1992) (collecting cases holding the same)); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 661 F. Supp. 2d 1172, 1177 (D. Nev. 2009) ("[T]he CEA does not foreclose the application of other state and federal law") (collecting cases holding the same). Furthermore, because Plaintiff, representing the State of New York, brings this suit pursuant to Executive Law § 63(12), a statute that permits the New York Attorney General to seek injunctive relief in a summary proceeding, "not only would exercising federal jurisdiction disrupt the State's chosen forum for litigating this type of case, but it would also force the State to forgo the procedural mechanisms that are uniquely available to it in a special proceeding in a state forum to obtain 'expeditious' relief."[10] *Sirius XM Radio*, 735 F. Supp. 3d at 281; *see also MoneyLion*, 2025 WL 3154497, at *4 (holding that the exercise of federal jurisdiction in an Executive Law § 63(12) case would disrupt the federal-state balance); *DailyPay*, 2025 WL 2695712, at *6 (same). Thus, this element of the *Gunn-Grable* test, like the substantiality requirement, is not met.

Accordingly, because the Petition does not meet the substantiality or federal-state balance requirements of the *Gunn-Grable* test, it does not "arise under" federal law and I must remand the case to state court, where jurisdiction is proper.

### C. *Plaintiff's Request for Fees*

Plaintiff argues that "[t]he Court should award costs and attorneys' fees," (Mem. 19–21), which I may do pursuant to 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may

---

[10] *Cf. Georgia Gambling Recovery*, 2026 WL 279375, at *1 (plaintiff was a private party, not a state actor).

award attorneys' fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *see also* Mem. 19–20 (acknowledging the standard).

I cannot conclude Kalshi lacked an objectively reasonable basis for seeking removal. Kalshi raised "colorable argument[s]" that removal was proper, *New York ex rel. Elder v. JP Morgan Chase Bank, N.A.*, No. 23-CV-3130, 2024 WL 20935, at *3 (S.D.N.Y. Jan. 2, 2024), that at least one federal court has sided with, *see Georgia Gambling Recovery*, 2026 WL 279375, at *3. Furthermore, this case does not present any of the "unusual circumstances" cited in Plaintiff's authorities that would independently justify a fee award. *Cf. City of New York v. Exxon Mobil Corp.*, 154 F.4th 36, 48 (2d Cir. 2025) (defendants presented "sill[y]," "ridiculous," and "objectively absurd" arguments); *State v. Unitedhealthcare of New York, Inc.*, No. 25-CV-87, 2026 U.S. Dist. LEXIS 69381, at *51 (N.D.N.Y. Mar. 31, 2026) ("Defendants . . . repeatedly submitted selective excerpts [of contracts] and inaccurately characterized many of those excerpts."). Accordingly, I deny Plaintiff's fee request. *Accord Kentucky Gambling Recovery LLC v. Kalshi Inc.*, No. 25-CV-54, 2026 WL 596107, at *10 (E.D. Ky. Mar. 4, 2026); *Ohio Gambling Recovery, LLC v. Kalshi Inc.*, No. 25-CV-1573, 2026 WL 865788, at *10 (N.D. Ohio Mar. 30, 2026); *Washington*, 2026 WL 1217743, at *2.

### D. *Kalshi's Motion for a Protective Order*

On October 30, 2026, the parties submitted a joint letter in which Kalshi moved for a protective order under Federal Rule of Civil Procedure 26(c) or, alternatively, under the All Writs Act, barring Plaintiff from seeking discovery about the claims in this action using an investigative subpoena. (Doc. 23.) On November 4, 2026, Kalshi reiterated its request for a protective order. (Doc. 24.) "[A]s the Court lacks subject matter jurisdiction in this case it

cannot decide the motion for a protective order." *Elsis v. Hertz Corp.*, 581 F. Supp. 604, 608 (E.D.N.Y. 1984); *Somaxon Pharms., Inc. v. Actavis Elizabeth LLC*, No. 22-MC-162, 2022 WL 3577904, at *2–3 (S.D.N.Y. Aug. 18, 2022) (a court that lacks subject-matter jurisdiction lacks the ability to decide a discovery motion).

## V. Conclusion

For the foregoing reasons, Plaintiff's motion to remand is GRANTED and its request for attorneys' fees and costs is DENIED. Because I lack subject-matter jurisdiction, I cannot decide Kalshi's motion for a protective order. The Clerk of Court is respectfully directed to terminate the pending motions at Doc. 16 and Doc. 23 and to effect immediate remand to the Supreme Court of New York, New York County.

SO ORDERED.

Dated: November 19, 2026
New York, New York

Vernon Broderick

Vernon S. Broderick
United States District Judge